| | |
|---|---|
| SOUTHERN TRUST MORTGAGE, LLC<br><br>Plaintiff,<br><br>v.<br><br>MOVEMENT MORTGAGE, LLC<br><br>Defendant. | Case No. 2:24-cv-00653 |

**DEFENDANT MOVEMENT MORTGAGE, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF SOUTHERN TRUST MORTGAGE, LLC'S COMPLAINT**

Defendant Movement Mortgage, LLC ("Movement") submits this Memorandum in Support of its Motion to Dismiss Plaintiff Southern Trust Mortgage, LLC ("Southern Trust" or "Plaintiff") Complaint. In support, Movement states as follows:

## I. Introduction

Southern Trust claims that Movement aided and abetted Grace White ("Ms. White") in her breach of fiduciary duties owed to Southern Trust (Count V), that Movement tortiously interfered with Southern Trust's business expectancies (Count VI), and that Movement conspired with Ms. White under Virginia and common law to harm Southern Trust's interests (Counts VII and VIII). However, these claims must fail.

Neither the common law nor any Virginia statute recognizes a tort for aiding and abetting a breach of fiduciary duty. As the Supreme Court of Virginia has never recognized that such cause of action exists under Virginia law, this claim must be dismissed. Southern Trust also fails to

adequately allege a claim of tortious interference with business expectancies because the Complaint (1) says nothing about whether Southern Trust entered into any contracts with its purported customers or whether there was a reasonably certain likelihood that any of these contracts would be executed, and (2) fails to identify an improper method employed by Movement, as all improper methods alleged were carried out by Ms. White. Finally, Southern Trust cannot maintain a conspiracy claim where there is no actionable claim for the underlying wrong alleged. As Southern Trust has dismissed all claims against Ms. White and Movement argues that the remaining claims must be dismissed as well, Southern Trust's conspiracy claims must also fail. Even if Southern Trust's conspiracy claims could survive this hurdle, Southern Trust improperly relies on conclusory allegations to show an agreement between Movement and Ms. White to commit unlawful acts, rendering its statutory business conspiracy and common law conspiracy claims deficient.

For these reasons, Movement asks this Court to grant its Motion and dismiss Southern Trust's Complaint.

## II.     Statement of Facts

On or about February 15, 2022, Ms. White began working as a loan officer at Southern Trust's Virginia Beach, Virginia location. Compl. ¶ 21. Upon her hiring, Ms. White entered into several agreements with Southern Trust. Compl. ¶ 22. In doing so, Ms. White agreed to refrain from disclosing Southern Trust's confidential information; soliciting Southern Trust's employees, customers, and potential customers; and competing with Southern Trust in the same market. Compl. ¶¶ 22–37; Compl. Exs. A–B. On or about October 16, 2024, Ms. White resigned from her position at Southern Trust to accept employment with Movement. Compl. ¶ 55. Southern Trust

and Movement are both in the "mortgage industry," Compl. ¶ 57, and Ms. White was hired by Movement to work as a loan officer in its Virginia Beach, Virginia location, Compl. ¶ 55.

After Ms. White resigned, Southern Trust reviewed her company email account and allegedly found evidence of her soliciting several "Southern Trust prospects and/or customers to apply for loans at her new employer, Movement, while she was still employed by, and accepting a salary from, Southern Trust." Compl. ¶ 61. Southern Trust alleges that Ms. White contacted customers who had active loans with Southern Trust and otherwise withheld customer leads. Compl. ¶ 63. Ms. White instead purportedly directed these "prospective customer[s] to apply with Movement." Compl. ¶ 63. Indeed, Southern Trust asserts that Ms. White emailed these customers to request that they complete applications with Movement through Ms. White's new supervisor, Reggie Register ("Mr. Register"), who was allegedly "aware that [Ms. White was] sending [them] over." Compl. ¶¶ 61–66; Compl. Ex. C. Ms. White additionally told the customers in these emails not to "worry about any documents because [she had] them saved and w[ould] upload them to [their] new application." Compl. ¶¶ 61–66; Compl. Ex. C. To do this, Southern Trust alleges that Ms. White downloaded files from her company-issued computer onto an external USB drive while still employed at the company and retained the drive after resigning. Compl. ¶ 67.

On or about October 18, 2024, Southern Trust issued cease-and-desist letters to Ms. White and Movement regarding Ms. White's actions and her employment with Movement. Compl. ¶ 82; Compl. Ex. D. Upon receiving its letter, Movement instructed Ms. White to immediately return the USB drive to Southern Trust, and Ms. White did so. *See* Compl. ¶ 68. Southern Trust asserts that the USB drive contained "5,109 total files on the thumb drive, including confidential documents on loan programs, training materials, appraisals, custom forms, templates, marketing

materials, Southern Trust's income calculator for self-employed borrowers, and White's customer leads." Compl. ¶ 68.

Southern Trust further alleges that, even after receiving the cease-and-desist letter, Ms. White has continued to contact Southern Trust's customers. Compl. ¶¶ 82–83. This view is based on a Southern Trust customer emailing Ms. White on or about October 23, 2024, "at her Southern Trust email address [in response] to a communication from [Ms.] White." Compl. ¶ 84. Southern Trust claims that Ms. White contacted this customer after her resignation from Southern Trust to request that she submit a loan application with Movement. Compl. ¶¶ 83–85. As such, Southern Trust asserts that Ms. White "diverted borrowers who applied and/or inquired about a mortgage" and "diverted at least three loan applications from Southern Trust to Movement" while still employed at Southern Trust with "the help of Mr. Register." Compl. ¶¶ 75, 77. Southern Trust alleges that it would have had "the opportunity" to close those loans if not for Ms. White and Movement's interference, as "it is possible … those customers would otherwise have applied with Southern Trust." Compl. ¶¶ 76–77. Southern Trust further claims that Movement, through Mr. Register, was aware that the applications received from Ms. White were Southern Trust's current customers and that Ms. White was engaging in conduct that violated the terms of her employment with Southern Trust. Compl. ¶ 81.

Southern Trust filed this action on November 4, 2024, alleging that Ms. White and Movement's actions "reveal the[ir] intention … to compete with Southern Trust by using Southern Trust's Confidential Information and trade secrets to aggressively solicit and divert Southern Trust's business." Compl. ¶ 91. Southern Trust claims that these actions have resulted in "the loss of potential customers, and, generally, lost profits." Compl. ¶ 92. Accordingly, Southern Trust asserted (1) breach of contract, misappropriation of trade secrets, and breach of fiduciary duty

claims against Ms. White; (2) an aiding and abetting breach of fiduciary duty claim against Movement; and (3) tortious interference with business expectancy and conspiracy claims against both Ms. White and Movement. However, on or about January 6, 2025, Southern Trust voluntarily dismissed the claims against Ms. White in its Complaint with prejudice. *See* ECF No. 16. In response to the Complaint, Movement now moves to dismiss the Complaint for failure to state a claim upon which relief can be granted.

## III.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet the plausibility standard, the allegations in the complaint "must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Where a plaintiff pleads facts that are only "consistent with a defendant's liability," the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Thus, a reviewing court must make the "context-specific" determination of whether a complaint states a plausible claim for relief by "draw[ing] on its judicial experience and common sense." *Id.* at 679. In doing so, the court need not accept unsupported legal conclusions or legal conclusions couched as factual allegations. *Id.* at 678–79; *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). These sorts of conclusory allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678–79. Any complaint that fails to state a plausible claim for relief must be dismissed. *Id.*

**IV.     Legal Argument**

In the Complaint, Southern Trust brings claims against Movement for aiding and abetting Ms. White's breach of her fiduciary duties to Southern Trust, tortiously interfering with Southern Trust's business expectancies, and conspiring with Ms. White to interfere with Southern Trust's business and otherwise violate Ms. White's fiduciary duties to Southern Trust. However, for the reasons below, these claims have no merit and the Court should dismiss this matter.

**A.     Virginia law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty.**

Southern Trust first claims that Movement aided and abetted Ms. White's breach of her fiduciary duties to Southern Trust by "participating in the diversion of Southern Trust's customers for the use and benefit of Movement." Compl. ¶ 153. To support this claim, Southern Trust avers that Mr. Register was acting as Movement's agent when he allegedly collaborated with Ms. White to solicit Southern Trust's clients during her employment with Southern Trust. Compl. ¶¶ 153–54. While Southern Trust argues that the Supreme Court of Virginia has "establish[ed] the elements" of aiding and abetting a breach of fiduciary duty, Compl. ¶ 152, that court has only "assumed *arguendo*" that such a cause of action is recognized under Virginia law. *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 659–60 (2004) (cleaned up); *see Uplinger v. Alexandria Overlook Condo. Council of Co-Owners*, 2018 Va. Unpub. LEXIS 14, at *4 (Va. 2018). Because the Supreme Court of Virginia has not, in fact, recognized this cause of action, courts within the Eastern District of Virginia consistently dismiss such claims, and this Court should follow suit.

In Virginia, "[n]either the common law nor any statutes establish a separate cause of action for aiding and abetting a breach of fiduciary duty." *Keil v. Seth Corp.*, No. 3:21cv153, 2021 U.S. Dist. LEXIS 212042, at *39 (E.D. Va. Nov. 2, 2021). As the Fourth Circuit has held, federal courts are called to "apply state law, not … to participate in an effort to change it." *Burris Chem. v. USX*

*Corp.*, 10 F.3d 243, 247 (4th Cir. 1993). Accordingly, "[b]ecause neither the Supreme Court of Virginia nor the Virginia General Assembly has adopted an independent cause of action for aiding and abetting a tort," a plaintiff's claim for "aiding and abetting breach of fiduciary duty … must be dismissed." *Infinity Tech., LLC v. Burney*, Civil Action No. 1:19-cv-1507, 2020 U.S. Dist. LEXIS 206604, at *15–16 (E.D. Va. June 4, 2020); *see also Keil*, 2021 U.S. Dist. LEXIS 212042, at *44 (declining to recognize cause of action for aiding and abetting breach of fiduciary duty); *Microstrategy Servs. Corp. v. OpenRisk, LLC*, 2015 U.S. Dist. LEXIS 32719, 2015 WL 1221263, at *3 (E.D. Va. March 17, 2015) (same); *Calderon v. Aurora Loan Serv.*, 2010 U.S. Dist. LEXIS 55602, 2010 WL 2306343, at *6 (E.D. Va. June 3, 2010) (same).

For these reasons, the Court should dismiss Southern Trust's claim against Movement for aiding and abetting Ms. White's alleged breach of her fiduciary duty.

**B.    Southern Trust does not adequately plead tortious interference with its business expectancies.**

Southern Trust next brings a cause of action for tortious interference with business expectancies against Movement. Compl. ¶¶ 156–64. Southern Trust first contends that it had "a reasonable expectancy that it would receive business from [Ms.] White in her role as a Loan Officer," Compl. ¶ 158, and that Movement and Ms. White "knew that Southern Trust expected to benefit from … all transactions that [Ms.] White oversaw in her role as a Loan Officer for Southern Trust," Compl. ¶ 159. Southern Trust claims that Movement and Ms. White intentionally interfered with these business expectancies by "scheming to divert customers from Southern Trust to Movement," Compl. ¶ 160, and that, absent this interference, "Southern Trust would have continued in the business relationships with these prospective customers and would have realized its expectancy of business and economic gain from these relationships," Compl. ¶ 161. Even accepting these allegations as true, Southern Trust fails to plead a viable cause of action for tortious

interference with its business expectancies.

To establish a claim for tortious interference with a business or contract expectancy under Virginia law, a plaintiff must plead:

(1) the "existence of a business relationship or expectancy with a probability of future economic benefit to plaintiff";

(2) the "defendant's knowledge of the relationship or expectancy";

(3) "a reasonable certainty" that the plaintiff "would have continued in the relationship or realized the expectancy absent defendant's intentional misconduct";

(4) "interference by improper methods"; and

(5) "damages resulting from that interference."

*Goulmamine v. CVS Pharmacy*, 138 F. Supp. 3d 652, 672 (E.D. Va. 2015). Southern Trust pleads neither the existence of a business expectancy with a probability of future economic benefit nor any facts showing a reasonable certainty that the expectancy would have been realized absent Ms. White and Movement's actions.

"[T]he Supreme Court of Virginia has made clear that 'mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action[;]' rather, the proof must establish a 'probability' not a 'possibility' of future economic benefit." *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1019 (E.D. Va. 2018) (quoting *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301 (1997)). In *Northstar Aviation, LLC*, another court in this District concluded that the plaintiffs' allegation of interference with a "potential sale of helicopters" was not a "reasonably certain expectancy as required to state a claim for tortious interference with business expectancy." 332 F. Supp. 3d at 1019. The court noted that the complaint lacked any allegations of plaintiffs entering into a contract or a "reasonably certain likelihood that any such contract would go through." *Id.* The court accordingly held that "plaintiffs

have failed to state a claim of tortious interference with business expectancy." *Id.*

Here, Southern Trust admits that the alleged business expectancies were uncertain—that it "would have otherwise *had the opportunity to underwrite and close* but for the interference" Ms. White and Movement. Compl. ¶ 76 (emphasis added); *see also* Compl. ¶ 77 ("[B]ut for [Ms.] White's actions and improper concealment of Southern Trust's leads, it is possible that those customers would otherwise have applied with Southern Trust."); Compl. ¶ 92 ("The unlawful conduct detailed above has damaged Southern Trust, causing the loss of potential customers."); Compl. ¶ 160 ("Defendants intentionally and tortiously interfered with Southern Trust's business relationships with its prospective customers by scheming to divert customers from Southern Trust to Movement."); Compl. ¶ 161 ("Upon information and belief, absent Defendants' intentional misconduct, Southern Trust would have continued in the business relationships with these prospective customers and would have realized its expectancy of business and economic gain from these relationships."). Southern Trust does not allege that it entered into any contracts with its so-called customers or that there was any "reasonably certain likelihood that any such contract would go through." *Northstar Aviation*, 332 F. Supp. 3d at 1019. Accordingly, Southern Trust fails to adequately plead the first and third elements of its claim.

In addition to this, Southern Trust must plead "interference by improper methods" to allege a valid claim of tortious interference with business expectancies. *Goulmamine*, 138 F. Supp. 3d at 672. Southern Trust alleges that Ms. White and Movement interfered with its business expectancies by diverting prospective customers from Southern Trust to Movement and "by working for the benefit of a direct competitor of Southern Trust." Compl. ¶¶ 160, 162. However, both these alleged actions were taken by Ms. White, not by Movement. Indeed, Southern Trust does not identify any improper method employed by Movement in its Complaint. As such,

Southern Trust has also failed to adequately plead this element of its tortious-interference claim against Movement.

Because Southern Trust does not plead a valid claim of tortious interference with business expectancies, this claim must be dismissed.

**C.    Southern Trust does not adequately plead its statutory business conspiracy and common law conspiracy claims.**

Southern Trust additionally brings common law and statutory business conspiracy claims against Movement. Southern Trust alleges that Ms. White and Movement "had an agreement, express or implied, to undertake the acts of solicitation, breaching [Ms.] White's fiduciary duties, [ ] tortiously interfering with Southern Trust's business," and misusing Southern Trust's confidential information and trade secrets. Compl. ¶¶ 168–69; *see* Compl. ¶ 175. To prevail "in a civil conspiracy action both under the common law and under Virginia Code § 18.2-499, a plaintiff must establish that at least one member of the conspiracy, in agreement with another member, committed an act that was itself wrongful or tortious, and that such act damaged the plaintiff." *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 92 (4th Cir. 2019). For a statutory business conspiracy claim, a plaintiff must also allege "legal malice," meaning that the "defendant acted intentionally, purposefully, and without lawful justification" where "at least one of the purposes of the conspiracy" is "to injure the plaintiff's reputation, trade, or business." *Schlegel v. Bank of America, N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) (emphasis omitted).

To begin, Southern Trust has failed to allege that any of the unlawful acts used as the basis for its conspiracy claims were actually committed by Movement. While Southern Trust initially asserted claims against Ms. White for breach of contract, misappropriation of trade secrets, breach of fiduciary duties, tortious interference with business expectancies, statutory business conspiracy, and common law conspiracy, it has since dismissed these claims. *See* ECF No. 16. As argued

above, Southern Trust also fails to state any valid claim for aiding and abetting breach of fiduciary duty and tortious interference with business expectancies against Movement. "[W]here there is no actionable claim for the underlying alleged wrong, plaintiff cannot maintain a claim for civil conspiracy." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007); *see also Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317–18 (Va. 2014) ("[C]onspiracy allegations … do not set forth an independent cause of action; instead, such allegations are sustainable only after an underlying tort claim has been established."). Accordingly, if this Court dismisses the aiding and abetting breach of fiduciary duty and tortious interference with business expectancies claims against Movement, the Court must also dismiss the remaining conspiracy claims.

In addition to this, Southern Trust fails to adequately allege an agreement between Ms. White and Movement to commit the alleged unlawful acts. For both common law conspiracy and statutory business conspiracy claims, a plaintiff must prove concerted action by showing that defendants "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp.2d 483, 499 (E.D. Va. 2003) (internal quotation marks omitted). "Conspiracy is not established simpl[y] by lumping the defendants altogether because the heart of conspiracy is an agreement and a conscious decision by each defendant to join it." *Jaggars v. Sandy Spring Bank*, No. 6:14-CV-15, 2014 U.S. Dist. LEXIS 119875, at *3 (W.D. Va. Aug. 28, 2014). "'[M]ere conclusory language' is insufficient to state a claim for common law conspiracy." *Moschetti v. Nixon Peabody, LLP*, Civil Action No. 3:23-cv-389, 2024 U.S. Dist. LEXIS 95757, at *36 (E.D. Va. May 29, 2024).

While Southern Trust claims in conclusory fashion that Ms. White and Movement formed an agreement to commit the unlawful acts alleged, nowhere does it allege facts showing an agreement between the two parties. At most, Southern Trust alleges that Mr. Register was "aware"

that Ms. White would be referring individuals to him. Compl. ¶¶ 64–66; Compl. Ex. C. But Virginia law instead requires a plaintiff to allege "some details of time and place and the alleged effect of the conspiracy." *Firestone*, 485 F. Supp. 2d at 704. "Where … there are only vague, conclusory allegations of conspiracy, the claim fails at the threshold." *Id.* As alleged, Mr. Register made no agreement to commit unlawful acts and his actions do not show "a conscious decision" to join any common law conspiracy or a specific intent to injure Southern Trust's business "willfully and maliciously." Va. Code § 18.2-499. Southern Trust thus has not adequately alleged an agreement between Ms. White and Movement to commit any unlawful acts.

Southern Trust therefore fails to state a valid conspiracy claim and such claims must be dismissed.

## V. Conclusion

For all these reasons, Movement respectfully requests that the Court grant its Motion to Dismiss.

Dated: January 6, 2025

Respectfully submitted,

**MOVEMENT MORTGAGE, LLC**

By: _____/s/_____
Kristina H. Vaquera, Esq. (VSB No. 43655)
William B. Jackson, Esq. (VSB No. 84012)
Gabrielle Bohannon, Esq. (VSB No. 98106)
Jackson Lewis, P.C.
500 E. Main Street, Suite 800
Norfolk, Virginia 23510
Telephone: (757) 648-1445
Facsimile: (757) 648-1418
kristina.vaquera@jacksonlewis.com
billy.jackson@jacksonlewis.com
gabrielle.bohannon@jacksonlewis.com
*Counsel for Defendant Movement Mortgage, LLC*

## CERTIFICATE OF SERVICE

I certify that on this 6th day of January, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all

counsel of record.

/s/
Kristina H. Vaquera, Esq. (VSB No. 43655)
William B. Jackson, Esq. (VSB No. 84012)
Gabrielle Bohannon, Esq. (VSB No. 98106)
Jackson Lewis, P.C.
500 E. Main Street, Suite 800
Norfolk, Virginia 23510
Telephone: (757) 648-1445
Facsimile: (757) 648-1418
kristina.vaquera@jacksonlewis.com
billy.jackson@jacksonlewis.com
gabrielle.bohannon@jacksonlewis.com
*Counsel for Defendant Movement Mortgage, LLC*
