# EXHIBIT A

# LOAN OFFICER
# EMPLOYMENT AGREEMENT

This **Loan Officer Employment Agreement** (this "Agreement") is made this 15th day of February, 2022 (the "Effective Date") between Southern Trust Mortgage, LLC, a Virginia limited liability company (herein referred to as "STM") and Grace White (herein referred to as "Loan Officer").

## ARTICLE I
## EMPLOYMENT

**1.1** **Employment**. Loan Officer is employed to originate mortgage loans in approved STM states. Employment is "at will" with termination by either Loan Officer or STM at any time for any reason.

## ARTICLE II
## RESPONSIBILITIES OF THE LOAN OFFICER

**2.1** **General Duties**.

(a)   The loan officer should coordinate with Mortgage Processors, Underwriters, Closers, Secondary Marketing and Post Closers to ensure that each of the Loan Officers' loans is processed, approved and closed in a timely manner. Loan Officer is also responsible for ensuring loans conform to STM terms and commitments. The Loan Officer shall lock loans in accordance with STM lock policies and lock with STM's secondary marketing department the same program, rate and price that were committed to the customer. Loan Officer shall perform any other duties that are assigned by STM from time to time or that are contained in the Loan Officer Compensation Plan.

(b)   Loan Officer shall comply with all duties and requirements imposed on Loan Officer, as set forth in the company policies.

(c)   While employed by STM, the Loan Officer agrees to devote full-time attention to the position, subject to STM direction and control. The Loan Officer shall use his/her best efforts in the performance of his/her duties for and on behalf of STM. The Loan Officer shall assist and work for only STM and no other employer, lender, broker, or other entity, and shall not engage in any way in any mortgage lending or brokering, loan processing or underwriting services, loan modification services, real estate sales or acquisition, closing, settlement or title-related services, credit repair, credit counseling, borrower assistance or other business or service of the same or similar nature, unless approved by STM in writing. Additionally, the Loan Officer may not own an interest in any entity engaging in any such activities.

(d)   STM's marketing department and compliance department must approve all marketing materials, including advertisements, social media, websites, and marketing agreements. The Loan Officer must adhere to the policies and procedures outlined in the social media and marketing policy.

(e)     It is the responsibility of the Loan Officer to collect all third-party fees including, but not limited to, the appraisal fee.  Failure to collect all applicable third-party fees is a willful violation of STM policy and the Loan Officer's commissions will be adjusted for any uncollected fees on canceled loans and denied loans.

## ARTICLE III
## REGULATORY COMPLIANCE

**3.1     Regulatory Compliance.**

(a)     The Loan Officer is familiar with and shall comply with STM policies, and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines and other requirements pertaining to the mortgage banking industry, to the business of STM, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of STM, including but not limited to the Equal Credit Opportunity Act, Gramm-Leach-Bliley Act, Truth in Lending Act, Real Estate Settlement Procedures Act, USA PATRIOT Act, Home Mortgage Disclosure Act, Federal Trade Commission Act, Telemarketing and Consumer Fraud and Abuse Prevention Act, Fair Credit Reporting Act, Fair Housing Act, Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (the "SAFE Act"), Dodd-Frank Wall Street Reform and Consumer Protection Act and all related regulations to the foregoing Acts, and all similar federal, state and local laws, rules, regulations and requirements, federal and state telemarketing and do-not-call laws, rules and regulations, and all applicable guidelines and requirements of the United States Department of Housing and Urban Development ("HUD"), Department of Veterans Affairs ("VA"), Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), Federal National Mortgage Association ("FNMA" or "Fannie Mae"), Government National Mortgage Association ("GNMA" or "Ginnie Mae"), United States Department of Agriculture ("USDA") and all other applicable agencies, investors and insurers (altogether, STM policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Applicable Requirements"), in each case as amended from time to time.

(b)     STM is committed to treating all consumers fairly, consistently, and equitably in its lending practices.  Loan Officer acknowledges and shall comply with STM's policy to comply with all applicable fair lending laws and to treatment of all credit applicants equally and without regard to race, color, religion, national origin, age, gender (including pregnancy, childbirth and related medical conditions) gender identity, marital status (including same sex), sexual orientation, disability, income derived from any public assistance program, status as a protected veteran, or other applicable legally protected characteristics.

(c)     Loan Officer will not charge any consumer any fees in excess of that permitted under Applicable Requirements;

(d)     Loan Officer will comply with the provisions of the final rule revising Regulation Z regarding loan officer compensation.

## ARTICLE IV
## LOAN OFFICER COMPENSATION PLAN

**4.1    Loan Officer Compensation Plan**. Attached hereto and incorporated herein as Appendix A is the Loan Officer Compensation Plan. Loan Officer has reviewed the Loan Officer Compensation Plan.

**4.2    Loan Officer Benefits**. Full-time Loan Officers are entitled to participate in the STM benefit plans in accordance with the Southern Trust Mortgage Employee Handbook. Benefits are subject to change from time to time within the sole discretion of STM.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES

**5.1    Loan Officer Representations and Warranties**.

(a)    The Loan Officer acknowledges that the use of any private or proprietary information obtained from other business entities in the mortgage banking industry, whether through the course of previous employment or otherwise, is strictly prohibited by STM. Such prohibited private or proprietary information shall include, but is not limited to (i) trade secrets, (ii) patented, trademarked, or copyrighted materials, (iii) confidential client information, (iv) private company records, (v) work-product, and (vi) other non-public information. The Loan Officer represents and warrants that he or she will not use any such prohibited private or proprietary information in conducting any activity related to his or her employment or affiliation with STM.

(b)    The Loan Officer represents and warrants that he or she is not a party to any agreement whatsoever which would in any way prohibit or restrict his or her ability to work as a loan officer for STM.

(c)    Should the Loan Officer breach either of the foregoing representations and warranties, the Loan Officer agrees to indemnify and hold harmless STM against any and all actions for recovery arising from such breach. Any breach of the foregoing representations and warranties shall also be grounds for termination of the Loan Officer's employment or affiliation with STM.

## ARTICLE VI
## COMPENSATION UPON TERMINATION

**6.1    Compensation**. The Loan Officer will be entitled to fifty percent (50%) of the compensation as determined by the originator of record for Eligible Loans closed and funded within thirty (30) days of the termination date. The loan must be in conditional approval and locked as of the termination date in order for compensation to be paid. No compensation will be paid for Eligible Loans closed and funded after thirty (30) days of termination.

**6.2    Payment**. Payment of any compensation due will be made on the regular scheduled commission payday after final calculation of the commissions due but not later than sixty (60)

days after termination. An employee must be in current active employment status on the payout date to receive any relevant incentive or bonus.

**6.3** **Repayable Obligation**. If the Loan Officer leaves STM before completing twelve full months, any Compensations to include increased tiers, signing bonus and forgivable draws previously advanced to the Loan Officer during his/her initial employment period will be repayable and will be deducted from any commissions earned and not yet paid. STM will not require repayment if total compensation for forgivable draws, increased tiers and signing bonus's total less than $10,000.

## ARTICLE VII
## MORTGAGE LOAN OFFICER RESPONSIBILITY AND ATTESTATION UNDER THE SAFE ACT

7.1 **SAFE Act**. STM Loan officers will need to be registered on Nationwide Mortgage Licensing System. The following are a list of responsibilities for the Loan Officer. After reviewing, you must sign and date this document indicating acknowledgement and receipt of the SAFE Act registration requirements and Loan Officer responsibilities.

(a) Provide all required Employee Information to the SAFE Act Officer (Human Resources). This includes full name, social security number, date of birth and date of hire.

(b) Loan officers who have a Nationwide Multistate Licensing System ("NMLS") number must transfer that number to STM before acting as a Loan Officer for STM.

(c) Authorize the NMLS Registry and STM to obtain information related to sanctions or findings in any administrative, civil or criminal actions, to which the employee is a party, made by any governmental jurisdiction

(d) Obtain Fingerprints (Fingerprints already on file with NMLS less than three (3) years old may be re-used)

(e) Attest to the correctness of all required information submitted into the NMLS system.

(f) Authorize the NMLS Registry to make available to the public information as required by law.

(g) Must provide your unique identifier to consumers upon request, before acting as a Loan Officer and through ANY communication with the consumer whether on paper or electronically.

(h) Renew the registration during the annual renewal period.

(i) Confirm that the information originally sent remains accurate and complete.

(j)     Update the registration within thirty (30) days if any of the information required becomes inaccurate, incomplete, or out-of-date.

In the event of any changes in the licensing requirements under any applicable law, the Loan Officer shall comply with them.

### ARTICLE VIII
### CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT

**8.1     Confidentiality and Restrictive Covenant Agreement**.  Simultaneous with the execution of this Agreement, Loan Officer shall enter into a separate Confidentiality and Restrictive Covenant Agreement, a copy of which is attached hereto as <u>Appendix B</u>.

### ARTICLE IX
### MISCELLANEOUS

**9.1     Loan Officer Assistant**. If volume warrants and production management approves a Loan Officer Assistant a separate addendum to this contract will be completed. This agreement will include terms of the Loan Officers responsibilities for payment to the Loan Officer Assistant.

**9.2     Entire Agreement**. This Agreement, together with all other documents signed or delivered in connection with this Agreement, contain the complete understanding between the parties concerning this subject matter and supersede all prior agreements, arrangements, understandings, letters of intent, conversations and negotiations, whether oral or written, with respect to their subject matter. The parties stipulate that there are no representations with respect to the subject matter of this Agreement except those representations specifically set forth in this Agreement and the documents signed or delivered in connection with this Agreement.

**9.3     Severability**. Each clause, paragraph and provision of this Agreement is entirely independent and severable from every other clause, paragraph, and provision. If any judicial authority or state or federal regulatory agency or authority determines that any portion of this Agreement is invalid or unenforceable or unlawful, such determination will affect only the specific portion determined to be invalid or unenforceable or unlawful and will not affect any other portion of this Agreement which will remain and continue in full force and effect. In all other respects all provisions of this Agreement will be interpreted in a manner which favors their validity and enforceability and which gives effect to the substantive intent of the parties.

**9.4     Specific Enforceability**. The parties may enforce or prevent violations of the provisions of this Agreement through any and all rights and remedies existing in their favor whether at law or in equity including specific performance and injunctive relief. The parties agree that the subject matter of this Agreement is unique and that money damages may not be an adequate remedy for any violation of the provisions of this Agreement and that any party may apply for legal or equitable relief and will be entitled to specific performance and/or injunctive relief in order to enforce or prevent any violations of this Agreement.

**9.5     No Waiver**. The terms, covenants, representations, warranties or conditions of this Agreement may be waived only by a written instrument executed by the party waiving compliance. The failure or delay of any party to this Agreement at any time to demand performance, to enforce

any provision of this Agreement or to exercise any right or power granted under this Agreement will not be construed as a waiver of such provision and will not affect the right of any party to this Agreement to enforce each and every provision of this Agreement in accordance with its terms. Any waiver of a breach of any part of this Agreement will not operate as or be construed as a waiver of any subsequent breach or of any rights which any party may have otherwise.

       **9.6**     **Amendments**. This Agreement may not be changed or amended other than with the written consent of all parties to this Agreement.

       **9.7**     **Paragraph Headings**. The paragraph headings contained in this Agreement are for the convenience of the parties only and shall in no manner be construed as a part of this Agreement or used in the construction or interpretation hereof.

       **9.8**     **Counterparts**. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and which together shall constitute one and the same agreement.

       **9.9**     **Electronic or Facsimile Signatures**. Any party may effect the execution and delivery of this Agreement and related documents by signing the same and sending a copy thereof by e-mail or by facsimile transmission. Facsimile signatures or electronically imaged signatures, including but not limited to .pdf files, shall be treated in all respects as an original instrument bearing an original signature, and shall be a valid and binding Agreement fully admissible under state and federal rules of evidence. The parties hereto agree that the possession of an executed and delivered electronic version of this Agreement or any other document shall constitute possession of this Agreement.

       **9.10**    **Governing Law**. This Agreement shall be interpreted and construed and governed in accordance with the laws of the Commonwealth of Virginia, without giving effect to principles of conflicts of laws.

       **9.11**    **Notices**. Any notices or other communications required or permitted under this Agreement must be in writing and shall be sufficiently given if addressed to the address set forth below the signatures hereto or such other address as shall be furnished in writing by any such party. This notice or communication shall be deemed to have been given:

       (a)     upon delivery, if personally delivered to a party;

       (b)     one (1) business day after the date of dispatch, if by facsimile or other electronic transmission;

       (c)     one (1) business day after deposit, if delivered by a nationally recognized courier service offering guaranteed, overnight delivery; or

       (d)     three (3) business days after deposit in the United States mail, certified mail, postage prepaid, return receipt requested at the addresses appearing below.

       **9.12**    **Costs and Expenses**. In the event STM pursues any action at law or equity to enforce any obligation of Loan Officer under this Agreement, and STM substantially prevails, all STM costs and expenses of such litigation, including reasonable attorney fees, shall be reimbursed by the Loan Officer.

**9.13     Choice of Forum and Venue.** With respect to any controversy, argument or claim arising out of or relating to this Agreement, or any breach thereof (including, but not limited to, a request for emergency relief) or any tort claim among the parties, the parties hereby consent to the sole and exclusive jurisdiction and venue of the Circuit Courts of the Cities of Virginia Beach and Norfolk, Virginia and the U.S. District Court for the Eastern District of Virginia, Norfolk Division, and waive personal service of any and all process upon them and consent that all such service of process made by registered or certified mail directed to them at the address stated herein and service so made shall be deemed to be completed five (5) days after mailing. The parties waive trial by jury and waive any objection to jurisdiction, venue or inconvenient forum of any action instituted hereunder and agree not to assert any defense based on lack of jurisdiction, venue or forum.

**9.14     Successors.** This Agreement binds and inures to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

**9.15     Assignment.** Loan Officer may not assign this Agreement or any of its rights or interests under this Agreement, or any of its obligations or liabilities under this Agreement. Any such purported assignment by Loan Officer is void. STM shall have the right to assign this Agreement.

*[Signature page follows.]*

By signing below, the Loan Officer certifies that they have read the 2022 Southern Trust Mortgage Loan Officer Compensation Plan.

*Grace White*
_____
Loan Officer
Address: 311 37th St
_____
          Norfolk, VA 23508
_____

_____

 Grace White
_____
Printed Name


**SOUTHERN TRUST MORTGAGE, LLC**


_____
President
Address: 295 Bendix Rd.
_____
          Suite 400
_____
          Va. Beach, VA 23452
_____