# EXHIBIT D



fisherphillips.com

**Washington**
8200 Greensboro Drive
Suite 900
McLean VA 22102

(703) 682-7096 Tel
(610) 230-2151 Fax

**Writer's Direct Dial:**
7036827095

**Writer's E-mail:**
tconnolly@fisherphillips.com

October 18, 2024

*VIA ELECTRONIC & OVERNIGHT MAIL*

Grace White
311 W 37th St
Norfolk, VA 23508
gmwteacher@gmail.com

### Re: Cease and Desist Improper Solicitation

Dear Ms. White:

This firm represents Southern Trust Mortgage, LCC ("Southern Trust") with regard to employment issues. You recently left the employ of Southern Trust on Wednesday, October 16 to join a competitor to provide competitive services. A review of your email account revealed that prior to leaving you actively directed current Southern Trust customers to apply for loans at your new employer. Your actions were inappropriate and violated a number of legal obligations owed by you to Southern Trust. Given this known solicitation of at least seven Southern Trust customers, it is fair to conclude that you are engaging in these wrongful acts with the intent to do harm. Your harmful conduct must stop immediately.

As you may know, you are restricted from working for a competitor to provide competitive services and from soliciting Southern Trust customers for a period of twelve months. This restriction is found in your employment agreement which you signed on or about February 15, 2022, a copy of which is attached. Despite these binding contractual obligations pursuant to which you were trained and highly compensated, you actively solicited Southern Trust customers on behalf of a competing entity while still employed by Southern Trust knowing that you intended to work for that competitor to provide services competitive to Southern Trust.

**You are hereby put on notice of these improper actions and we demand the following immediate action to ensure that Southern Trust is not further damaged:**

1. Ensure that you will refrain from soliciting customers, business referral partners, or employees on behalf of any other entity;
2. Identify all Southern Trust customers, business referral partners, and/or

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

FP 45713896.1

employees who have been contacted and contact these customers to indicate that you are not permitted to do business with them at this time on behalf of Movement Mortgage;

3. Immediately provide additional information to us as to the role you have accepted with Movement Mortgage, the services you have and will provide and how that role complies with your contract with Southern Trust;

4. Immediately inform Movement Mortgage of this letter and of your misconduct. We will be notifying Movement Mortgage of this letter to you;

5. Refrain from contacting, seeking to hire and/or hiring Southern Trust employees in violation of existing contracts; and

6. Return any Southern Trust confidential information in your possession and indicate whether any information has been shared or used by anyone to benefit Movement Mortgage.

Please provide this information in a timely fashion. Southern Trust intends to take swift and decisive action, including but not limited to, seeking immediate injunctive relief and monetary damages as necessary to protect its business. We trust that you understand that the possession and use of Southern Trust's confidential information and/or continuing solicitation of Southern Trust customers to benefit Movement Mortgage will also expose you and possibly your new employer to additional damages exceeding those already caused.

## Obligation To Preserve All Evidence

**You are hereby put on notice that given the potential for legal action, you must preserve any documentation in its possession or control, whether electronic or otherwise, that relates in any way to this matter, and that such documentation should be preserved in a secure location and not be destroyed or otherwise tampered with or altered. Under applicable law, the destruction or alteration of evidence could subject your organization to legal claims for spoliation of evidence.**

You have a legal obligation to preserve any and all potential evidence related to a potential lawsuit against you related to your misconduct. Specifically, you and any of your agents, wo-workers, or individuals acting on your behalf, have an obligation to preserve in an unaltered and forensically sound form any documents and information related to your employment with Movement Mortgage, your solicitation of Southern Trust customers prior to leaving its employ and thereafter including without limitation all evidence of electronic activities and communications that relate in any way to Southern Trust or the solicitation of Southern Trust customers by you and anyone else at Movement Mortgage.

Therefore, you are hereby placed on notice of your obligation not to destroy, conceal or alter any paper or electronic files and other data generated by and/or stored on any computer or electronic device used (personal, business, or otherwise), including Internet use and networking sites/applications – including but not limited to all Facebook, Facebook Messenger, LinkedIn,

Drobox, Evernote, Twitter, WhatsApp, and/or Instagram data, pages, posts, messages or conversations, any related storage media (e.g., hard drives, servers, cloud accounts, thumb, zip or other peripheral drives), cell phone, smart phone, mobile electronic communication devices, including but not limited to iPhone, iPad, or other devices, as well as any other electronic data, such as voice mail, email, and/or text messages.  You are also required to turn off any functions on a device or account that cause the automatic deletion of messages or other electronic information.  The failure to comply with this notice may result in severe sanctions being imposed in Court for spoliation of evidence or potential evidence.

With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not to be destroyed and you are required to take whatever steps are appropriate to avoid destruction of evidence.  Notably, you should instruct your new employer that it is put on notice through you that it should not freeze or delete any personal or business email addresses/accounts as well as other accounts and/or applications (including but not limited to any and all personal email accounts, cloud based storage accounts, other document sharing accounts, and social media or networking accounts).  In order to assure that Movement Mortgage's obligation to preserve documents and things will be met, please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter.

We trust you understand the seriousness of this situation and take all necessary actions to comply with the applicable legal obligations.  Should you have any questions or concerns, please do not hesitate to contact me directly.  Thank you for your attention and anticipated cooperation.

Please confirm to me in writing by **Noon on Thursday, October 24, 2024** that you will ensure that you honor your contractual and other legal obligations to Southern Trust going forward.  Additionally, by that same date, we expect you to respond to the immediate action items as set forth above.

I look forward to your prompt response.

Sincerely,

Theresa M. Connolly
Partner
FISHER & PHILLIPS LLP

**LOAN OFFICER CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT**


THIS LOAN OFFICER CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT (the "Agreement") is made effective on February 15th, 2022 between **Southern Trust Mortgage, LLC** (the "Company") and **Grace White** ("Loan Officer").

WHEREAS, Loan Officer acknowledges that Company incurs significant expense in recruiting and training its Loan Officers; and

WHEREAS, Loan Officer acknowledges that Loan Officer will learn Confidential Information of the Company during employment; and

WHEREAS, the Company wishes to obtain reasonable protection of its Confidential Information which it has developed, acquired and/or is or may be developed or acquired by the Company at substantial expense; and

WHEREAS, the Company wishes to obtain reasonable protection against unfair competition during the Loan Officer's employment by the Company and following cessation of the Loan Officer's employment with Company; and therefore, the Company desires to have Loan Officer execute this Agreement; and

WHEREAS, the Loan Officer is willing to execute this Agreement and grant the Company the benefits of the restrictive covenants contained herein; and

WHEREAS, the Loan Officer agrees to the terms of this Agreement;

NOW, THEREFORE, in consideration of the foregoing, the promises and covenants set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Employment.  Loan Officer agrees to the terms and covenants in this Agreement in consideration of employment and acknowledges that Loan Officer reviewed this Agreement prior to signing it and understands it becomes effective simultaneous with Employment.

2.      Confidential Information.  As used herein, "Confidential Information" shall mean any information which is disclosed by Company to Loan Officer or developed or obtained by Loan Officer while employed in connection with Loan Officer's job responsibilities in any form, manner or media unless excluded below.  All information related orally shall be understood to be included in the category of Confidential Information unless specifically identified as being non-confidential.  Confidential Information shall include, but is not limited to, information regarding customers, employees, referral sources, financial, business and marketing strategies, business ideas, pricing, trade secrets, records, files, plans, and documents, the process developed and used by Company for training employees and any other Company information.

Confidential Information shall not include any information that (a) was in the public domain at the time of Company's communication of the information to Loan Officer through no fault or wrongful act of Loan Officer; or (b) entered the public domain through no fault or action of the Loan Officer subsequent to the time of Company's communication thereof to Loan Officer.

3.      Covenant Not to Divulge Company Confidential Information.  Loan Officer acknowledges and agrees that Company is entitled to prevent the disclosure of Company Confidential Information.  Loan Officer agrees at all times during the term of this Agreement and during the Confidentiality Period (defined below) to hold in strictest confidence and not to disclose to any person, firm or entity, other than to Company's officers, directors, or other authorized representatives, and not to use or allow others to use it except in the support of the business of the Company, any Confidential Information, without the prior written consent of the Company, unless such disclosure is required by subpoena, in which case Loan Officer shall give reasonable prior written notice thereof to the Company and provide the Company with the opportunity to contest such disclosure. For the purposes of this Agreement, the "Confidentiality Period" shall mean (i) as to confidential information that does not constitute a trade secret under applicable law, for a period of five (5) years following termination of Loan Officer's employment with the Company at any time and for any reason, or (ii) as to confidential information that constitutes a trade secret under applicable law, for so long as such confidential information constitutes a trade secret.

4.      Protection of Property.  Loan Officer acknowledges and agrees that:  (a) all documents, agreements, plans, specifications, forms, notes, reports, memoranda, studies, data, calculations, compilations of information, records, files (including electronic), manuals, contacts, price lists, vendor lists, forms, letters, e-mails or other materials generated (whether by Company, Loan Officer or other Loan Officers of Company) and all copies, abstracts and summaries of the foregoing; and (b) all supplies, computer programs, credit cards, keys, beepers, cell phones and other communication or electronic equipment furnished by Company shall be and remain the property of Company and shall be held and used by Loan Officer solely in connection with the performance of Loan Officer's services to or on behalf of Company hereunder and for its sole and exclusive benefit. Upon cessation of employment or at any other time upon Company's request, Loan Officer shall promptly deliver to Company all Company Confidential Information, which Loan Officer may possess or have under Loan Officer's control, including electronic information.

5.      Non-Solicitation of Employees Covenant.  The Loan Officer specifically agrees that during the Loan Officer's employment with the Company and for a period of twelve (12) months after Loan Officer's employment with the Company ceases, for whatever reason, Loan Officer shall not, on Loan Officer's own behalf or on behalf of any other person or entity, solicit or hire or assist in soliciting or hiring for employment that is competitive to Company any other employee that worked for Company at any time during the six (6) month period prior to Loan Officer's cessation of employment with Company.

6. <u>Non-Solicitation of Customers Covenant</u>.  The Loan Officer specifically agrees that during the Loan Officer's employment with the Company and for a period of twelve (12) months after Loan Officer's employment with the Company ceases, for whatever reason, with or without cause, and voluntarily or involuntarily, Loan Officer shall not on Loan Officer's own behalf or on behalf of any other person or entity, solicit or assist in soliciting Competitive Business from a Restricted Customer.  For purposes of this Paragraph 6, "Competitive Business" shall mean the provision of products and/or services competitive with the products and/or services provided by Loan Officer on behalf of Company when the Loan Officer's employment ended.  For purposes of this Paragraph 6, "Restricted Customer" shall mean any person or entity who or which was a customer of Company at any time during Loan Officer's final twelve (12) months of employment to whom Loan Officer provided Company products or services. This restriction in Paragraph 6 shall only apply within a 25-mile radius of any office where Loan Officer worked during Loan Officer's final twelve (12) months of employment with Company.

7. <u>Non-Solicitation of Potential Customers Covenant</u>.  The Loan Officer specifically agrees that during the Loan Officer's employment with the Company and for a period of twelve (12) months after Loan Officer's employment with the Company ceases, for whatever reason, with or without cause, Loan Officer shall not on Loan Officer's own behalf or on behalf of any other person or entity, solicit or assist in soliciting Competitive Business from a Restricted Potential Customer.  For purposes of this Paragraph 7, "Competitive Business" shall mean the provision of products and/or services competitive with the products and/or services provided by Loan Officer on behalf of Company when the Loan Officer's employment ended.  For purposes of this Paragraph 7, "Restricted Potential Customer" shall mean any person or entity with whom Loan Officer had contact in connection with prospective business for Company at any time during Loan Officer's final twelve (12) months of employment. This restriction in Paragraph 7 shall only apply within a 25-mile radius of any office where Loan Officer worked during Loan Officer's final twelve (12) months of employment with Company.

8. <u>Non-Compete</u>.  During Loan Officer's employment under this Agreement and for a period of twelve (12) months following the cessation of Loan Officer's employment for whatever reason, with or without cause, Loan Officer shall not, on Loan Officer's own behalf or on behalf of any other person or entity, compete with Company in the Restricted Area by engaging, in a competitive capacity, in any Competitive Business. For the purposes of this Paragraph 8, "Competitive Business" shall mean the provision of products and/or services competitive with products and/or services provided by Loan Officer on behalf of Company when Loan Officer's employment with Company ceases.  For the purposes of this Paragraph 8, "Restricted Area" shall be defined as a 25-mile radius from any office where Loan Officer worked on behalf of Company within twelve (12) months prior to cessation of employment.  This restriction will not prohibit Loan Officer's ownership in a corporation or entity which has its stock traded publicly on a national exchange or similar means of publicly trading stock.

9. <u>Injunction</u>.  The Loan Officer acknowledges that a violation on Loan Officer's part of any restrictive covenants in Paragraphs 3, 5, 6, 7, 8 and 10 of this Agreement will cause such damage to Company as will be irreparable and the exact amount of which will be impossible to ascertain, and for that reason, the Loan Officer further acknowledges that Company shall be entitled, as a matter of course, to an injunction out of any Court of competent jurisdiction, restraining any further violation of the covenant by the Loan Officer, and, pending the hearing and decision on the application for such injunction, Company shall be entitled to a Temporary Restraining Order, and waives any request for a bond, or the equivalent thereof, without prejudice to any other remedies available to it.  The Loan Officer particularly agrees to the immediate issuance of such Temporary Restraining Order and hereby waives any requirements of notice or objection whatsoever to the issuance of such an Order.

10. <u>Non-Disparagement</u>.  Loan Officer agrees that, both during Loan Officer's employment with the Company and thereafter, Loan Officer will not make any disparaging or defamatory statements about the Company or any of its owners, officers, managers, Loan Officers or agents nor will Loan Officer authorize, encourage or participate with anyone on Loan Officer's behalf to make such statements.

11. <u>Reasonableness</u>.  Loan Officer agrees that the restrictions in this Agreement are each reasonable and appropriate considering all of the circumstances surrounding the business of Company and Loan Officer's relationship to that business and that this Agreement, being fair and just, may be enforced in a court of law or equity, if necessary, to accomplish compliance with the terms hereof by Loan Officer.  Loan Officer agrees that such restrictions will not prevent Loan Officer from the ability to earn a living.

12. <u>Court Modifications</u>.  If any provision of this paragraph relating to the time period or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope, as applicable, that such court deems reasonable and enforceable, said time period or scope shall be deemed to be, and thereafter shall become, the maximum time period or greatest scope that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

13. <u>Entire Agreement</u>.  This Agreement, together with all other documents signed or delivered in connection with this Agreement, contain the complete understanding between the parties concerning this subject matter and supersede all prior agreements, arrangements, understandings, letters of intent, conversations and negotiations, whether oral or written, with respect to their subject matter.  The parties stipulate that there are no representations with respect to the subject matter of this Agreement except those representations specifically set forth in this Agreement and the documents signed or delivered in connection with this Agreement.

14. <u>Severability</u>.  Each clause, paragraph and provision of this Agreement is entirely independent and severable from every other clause, paragraph, and provision.  If any judicial authority or state or federal regulatory agency or authority determines that any portion of this Agreement is invalid or unenforceable or unlawful, such determination will affect only the specific portion determined to be invalid or unenforceable or unlawful and will not affect any other portion of this Agreement which will remain and continue in full force and effect.  In all other respects, all provisions of this Agreement will be interpreted in a manner which favors their validity and enforceability and which gives effect to the substantive intent of the parties.

15. <u>Specific Enforceability</u>. The parties may enforce or prevent violations of the provisions of this Agreement through any and all rights and remedies existing in their favor whether at law or in equity including specific performance and injunctive relief. The parties agree that the subject matter of this Agreement is unique and that money damages may not be an adequate remedy for any violation of the provisions of this Agreement and that any party may apply for legal or equitable relief and will be entitled to specific performance and/or injunctive relief in order to enforce or prevent any violations of this Agreement. Loan Officer agrees that any claim Loan Officer may have against Company shall not prevent or delay Company from enforcing the restrictive covenants in this Agreement.

16. <u>No Waiver</u>. The terms, covenants, representations, warranties or conditions of this Agreement may be waived only by a written instrument executed by the party waiving compliance. The failure or delay of any party to this Agreement at any time to demand performance, to enforce any provision of this Agreement or to exercise any right or power granted under this Agreement will not be construed as a waiver of such provision and will not affect the right of any party to this Agreement to enforce each and every provision of this Agreement in accordance with its terms. Any waiver of a breach of any part of this Agreement will not operate as or be construed as a waiver of any subsequent breach or of any rights which any party may have otherwise.

17. <u>Amendments</u>. This Agreement may not be changed or amended other than with the written consent of all parties to this Agreement.

18. <u>Paragraph Headings</u>. The paragraph headings contained in this Agreement are for the convenience of the parties only and shall in no manner be construed as a part of this Agreement or used in the construction or interpretation hereof.

19. <u>Counterparts</u>. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and which together shall constitute one and the same Agreement.

20. <u>Governing Law</u>. This Agreement shall be interpreted and construed and governed in accordance with the laws of the Commonwealth of Virginia, without giving effect to principles of conflicts of laws.

21. <u>Notices</u>. Any notices or other communications required or permitted under this Agreement must be in writing and shall be sufficiently given if addressed to the address set forth below the signatures hereto or such other address as shall be furnished in writing by any such party. This notice or communication shall be deemed to have been given:

(a)     upon delivery, if personally delivered to a party.

(b)     one (1) business day after the date of dispatch, if by facsimile transmission.

(c)     one (1) business day after deposit, if delivered by a nationally recognized courier service offering guaranteed, overnight delivery; or

(d)     three (3) business days after deposit in the United States mail, certified mail, postage prepaid, return receipt requested at the addresses appearing below.

22. <u>Choice of Forum and Venue</u>. With respect to any controversy, argument or claim arising out of or relating to this Agreement, or any breach thereof or any tort claim among the parties, the parties hereby consent to the exclusive jurisdiction, venue and forum of the Circuit Court of the City of Norfolk or Virginia Beach, Virginia and the U.S. District Court in the Eastern District of Virginia, Norfolk Division, and waive personal service of any and all process upon them and consent that all such service of process made by registered or certified mail directed to them at the address stated herein and service so made shall be deemed to be completed five (5) days after mailing. The parties waive trial by jury and waive any objection to jurisdiction, venue and forum of any action instituted hereunder, and agree not to assert any defense based on lack of jurisdiction, venue or inconvenient forum. Notwithstanding the foregoing, nothing prevents Company from seeking injunctive or other Company relief in any jurisdiction or venue where deemed necessary by Company.

23. <u>Successors</u>. The terms, covenants and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

24. <u>Non-Assignment</u>. Loan Officer shall not assign this Agreement without the written consent of Company. The parties agree that Company shall have the right to assign this Agreement in the event of a sale of substantial assets, sale of majority interests by its owners, merger, consolidation or other business combination, or change of control.

25. <u>Electronic or Facsimile Signatures</u>. Any party may effect the execution and delivery of this Agreement and related documents by signing the same and sending a copy thereof by e-mail or by facsimile transmission. Facsimile signatures or electronically imaged signatures, including but not limited to pdf files, shall be treated in all respects as an original instrument bearing an original signature, and shall be a valid and binding Agreement fully admissible under state and federal rules of evidence. The parties hereto agree that the possession of an executed and delivered electronic version of this Agreement or any other document shall constitute possession of this Agreement.

26. <u>Miscellaneous</u>.  The use of the singular herein shall be deemed to include the plural and the masculine gender shall include the feminine and the neuter.

27. <u>Extension of Time</u>.  In the event that Loan Officer is found by a court or other enforcement authority to have breached any of the restrictive covenants set forth in Paragraph 5, 6, 7 or 8, then the time periods set forth in such restrictions, if any, shall automatically be extended by the length of time which Loan Officer shall have been in breach of any of said provisions.

28. <u>Costs and Expenses</u>.  In the event Company pursues any action at law or equity to enforce any obligation of Loan Officer under this Agreement, and Company substantially prevails, all Company costs and expenses of such litigation, including reasonable attorney fees, shall be reimbursed by the Loan Officer.

29. <u>Survival</u>.  The parties agree that the provisions in Paragraphs 1-15, 20, 22, 23 and 27-30 shall survive the cessation of Loan Officer's employment with Company and termination of this Agreement.

30. <u>Claims Against Company</u>.  Loan Officer agrees that the existence of any claim or cause of action by Loan Officer against Company shall not constitute a defense to the enforcement by the Company of the covenants or restrictions in Paragraphs 3, 5, 6, 7, 8 and 10 of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused their duly authorized representatives to execute this Agreement as of the date first above written.

**SOUTHERN TRUST MORTGAGE, LLC**

By: Stephen Sager

Name: Stephen Sager

Title: Regional Manager

*Grace White*

Name: Grace White , Loan Officer

Address: 311 37th St

Norfolk, VA 23508



**Washington**
8200 Greensboro Drive
Suite 900
McLean VA 22102

(703) 682-7096 Tel
(610) 230-2151 Fax

**Writer's Direct Dial:**
7036827095

**Writer's E-mail:**
tconnolly@fisherphillips.com

fisherphillips.com

October 18, 2024

*VIA ELECTRONIC & OVERNIGHT MAIL*

Casey Crawford, CEO
Movement Mortgage, LLC
8024 Calvin Hall Road
Indian Land, SC 29707

### Re: Cease and Desist Improper Employment and Solicitation

Dear Mr. Crawford:

This firm represents Southern Trust Mortgage, LCC ("Southern Trust") with regard to employment issues. It has come to Southern Trust's attention that you have hired one of its former loan officers, Grace White, to join your company in a competitive role in Virginia Beach. A review of Ms. White's Southern Trust email account revealed that she diverted at least seven customers to your company prior to her leaving its employ. Obviously, Ms. White's actions were inappropriate and violated a number of legal obligations owed by her to Southern Trust. Given this known solicitation of at least seven Southern Trust customers, it is fair to conclude that Movement Mortgage had knowledge of this conduct and has inappropriately benefited. This harmful conduct must stop immediately, a full investigation of the harm must be determined and Southern Trust made whole for these violations.

As you may know, Ms. White is restricted from working for a competitor to provide competitive services and from soliciting Southern Trust customers, employees, and business referral partners for a period of twelve months following her exit from Southern Trust, which occurred on October 16, 2024. This restriction is found in her employment agreement which she signed on or about February 15, 2022, a copy of which is attached.

As set forth above, Ms. White actively solicited Southern Trust customers on your behalf while still employed by Southern Trust. **Movement Mortgage is hereby put on notice of these improper actions and we demand the following immediate action to ensure that Southern Trust is not further damaged:**

      1.     Ensure that Ms. White will refrain from soliciting Southern Trust's

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

FP 45713896.1

customers or employees in compliance of her employment agreement;

2. Identify all Southern Trust customers and/or employees who have been contacted by Ms. White on behalf of Movement Mortgage, determine the financial harm caused to Southern Trust and make it whole;

3. Immediately provide additional information to us as to the role Ms. White has accepted with Movement Mortgage, the services she has and will provide and how that role complies with her contractual obligations owed to Southern Trust;

4. Refrain from contacting, seeking to hire and/or hiring Southern Trust employees in violation of existing contracts; and

5. Return any Southern Trust confidential information in Movement Mortgage's possession and indicate whether any information has been shared by Ms. White or used by anyone to benefit Movement Mortgage.

Please provide this information no later than October 24, 2024. Southern Trust intends to take swift and decisive action, including but not limited to, seeking immediate injunctive relief and monetary damages as necessary to protect its business. We trust that you understand that the continuing violation of Ms. White's employment agreement, possession and use of Southern Trust's confidential information and/or continuing solicitation of Southern Trust customers to benefit Movement Mortgage will also expose the company to additional damages exceeding those already caused.

## Obligation To Preserve All Evidence

**Movement Mortgage is hereby put on notice that given the potential for legal action, it must preserve any documentation in its possession or control, whether electronic or otherwise, that relates in any way to this matter, and that such documentation should be preserved in a secure location and not be destroyed or otherwise tampered with or altered. Under applicable law, the destruction or alteration of evidence could subject your organization to legal claims for spoliation of evidence.**

Therefore, Movement Mortgage is hereby placed on notice of its obligation not to destroy, conceal or alter any paper or electronic files and other data generated by and/or stored on any computer or electronic device used (personal, business, or otherwise), including Internet use and networking sites/applications – including but not limited to all Facebook, Facebook Messenger, LinkedIn, Drobox, Evernote, Twitter, WhatsApp, and/or Instagram data, pages, posts, messages or conversations, any related storage media (e.g., hard drives, servers, cloud accounts, thumb, zip or other peripheral drives), cell phone, smart phone, mobile electronic communication devices, including but not limited to iPhone, iPad, or other devices, as well as any other electronic data, such as voice mail, email, and/or text messages. The Company is also required to turn off any functions on a device or account that cause the automatic deletion of messages or other electronic information. The failure to comply with this notice may result in severe sanctions being imposed in Court for spoliation of evidence or potential evidence.

FP 45713896.1

With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not to be destroyed and Movement Mortgage is required to take whatever steps are appropriate to avoid destruction of evidence. Notably, it should not freeze or delete any personal or business email addresses/accounts as well as other accounts and/or applications (including but not limited to any and all personal email accounts, cloud based storage accounts, other document sharing accounts, and social media or networking accounts).

We trust that Movement Mortgage understands the seriousness of this situation and takes all necessary actions to comply with the applicable legal obligations. Should you have any questions or concerns, please do not hesitate to contact me directly. Thank you for your attention and anticipated cooperation.

Please respond to my inquiry in writing by **<u>Noon on Thursday, October 24, 2024.</u>**

I look forward to your prompt response.

Sincerely,

Theresa M. Connolly
Partner
FISHER & PHILLIPS LLP