# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| SOUTHERN TRUST MORTGAGE, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>GRACE WHITE and MOVEMENT MORTGAGE, LLC<br><br>*Defendants.* | Civil Action No. 2:24-cv-00653 |

## <u>DECLARATION OF GRACE WHITE</u>

I, Grace White, being sworn according to law, state that the facts set forth below are true and correct to the best of my knowledge, information, and belief, and if called to do so, could testify truthfully thereto.

1. I worked for Southern Trust Mortgage, LLC ("Southern Trust") as a Loan Officer from on or about February 15, 2022 until I resigned on October 16, 2024.

2. On February 15, 2022, as a material term and as consideration for my employment with Southern Trust, I executed the Loan Officer Employment Agreement and Loan Officer Confidentiality and Restrictive Covenant Agreement (the "Confidentiality Agreement") with Southern Trust.

3. The Confidentiality Agreement contained certain restrictive covenants, including a: (1) Covenant Not to Divulge Company Confidential Information; (2) Non-Solicitation of Employees Covenant; (3) Non-Solicitation of Customers Covenant; (4) Non-Solicitation of Potential Customers Covenant; and (5) Non-Compete Covenant.

4.      On or around September 12, 2024, I began discussions with Katie Brinson from Movement Mortgage ("Movement") about the possibility of working there as a Loan Officer. I was thereafter introduced to Reggie Register, also from Movement, about the possibility of working for Movement.

5.      As part of these discussions, Mr. Register asked me if I had any "time commitments" with respect to Southern Trust.  My understanding is that Mr. Register was asking whether I had committed to working for Southern Trust for a certain number of years. I told him that I did not think so, but that I had signed a Confidentiality Agreement.  I also informed him that I had worked with Southern Trust for around two and a half years, and he said that was fine because most time commitments are two years. Neither Mr. Register nor anyone else at Movement asked me during the recruitment process if I had a non-compete agreement with Southern Trust.

6.      At Mr. Register's request, on September 19, 2024, I emailed Mr. Register a copy of the Confidentiality Agreement, my last paystub, and my W-2.  Mr. Register told me that they would take a look at my documents and get back to me. A true and correct copy of this email exchange is attached to this Declaration as **Exhibit A**.

7.      On or around the beginning of October 2024, I informed Mr. Register that I wanted to make the change to work for Movement.  I received an offer letter to work for Movement as a Loan Officer.  I executed the offer letter on October 15, 2024.

8.      That same day, I received approximately seven to ten emails containing links to an online portal to execute my onboarding documents.  No one at Movement discussed the onboarding documentation with me.

9.      I assumed that Movement and/or Mr. Register had reviewed my Confidentiality Agreement and did not see any issues with hiring me since they sent me an offer letter and then

2

hired me.  I believed that if they had any issues with the Confidentiality Agreement, then they would have told me.  No one from Movement brought up my Confidentiality Agreement to me until I received a demand letter from Southern Trust.  No one from Movement expressed any issues concerning my ability to work for Movement and they did not place any restrictions on my work for Movement.

10.      Movement hired me as a Loan Officer to do the same job I did for Southern Trust in the same territory.  I understood that I would be soliciting the same sources of business and would continue networking the same way I did with Southern Trust, just for a different company.

11.      On October 16, 2024, I knew that I would be resigning from Southern Trust. Because I would not have access to my Southern Trust documents and accounts, I rushed to download documents that I used daily during my job onto a thumb drive.  I included documents relating to the homebuying process in Virginia, personal documents, and some Southern Trust materials.

12.      Also on or around October 16, 2024, I asked Mr. Register what to tell my clients who had submitted applications with Southern Trust, but wanted to work with me after I started working at Movement.  I had never moved between mortgage companies before and was relying on him to provide me with guidance.  I requested advice from Mr. Register and followed what he told me to do.

13.      Mr. Register came up with the idea to divert those Southern Trust clients to Movement.  He suggested that, as long as the clients were not "triggered," then I could give them a link to his information at Movement.  Mr. Register explained that "triggered" referred to loans that were past the prequalification stage, and the client was under contract and moving forward with locking in an interest rate and prepping for underwriting.  Triggered loans would have to stay

with Southern Trust.  For the loans that were not triggered, Mr. Register would get the clients set up in the system at Movement, and when I started work, I could pick up the application process with those clients.

14.      Before I resigned from Southern Trust, I got a link for Mr. Register from Movement's website, emailed my Southern Trust clients, and directed them to submit their applications to Mr. Register at Movement.  I did not believe that I was doing anything wrong, because I was relying on the instructions I received from Mr. Register.

15.      At Mr. Register's direction, I solicited the following customers in an attempt to divert their business from Southern Trust to Movement:

   a.  Vipul Patel

   b.  Roshawnda Johnson

   c.  Jenna Jacob

   d.  Garth Van Syckle

   e.  Yarimar Machado

   f.  Myles Copeland

   g.  Kim Tracey

16.      On or around October 18, 2024, I received a cease-and-desist letter from Southern Trust's attorneys. I gave the letter to Mr. Register, who informed me to stop work.  I did not complete any more work for Movement after I received the letter.  I also immediately gave the thumb drive to Movement's legal department.

17.      Around a month after I received the cease and desist letter, Mr. Register informed me that Movement was terminating my employment.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS**

4

**TRUE AND CORRECT.**

Executed on: 01/06/2025

*Grace White*

Grace White

# EXHIBIT A

**From:** Grace White
**To:** ███████████
**Subject:** loan app with new company

HI ██████,

It was good speaking with you this morning. I would like to get your application moved over to the new company, Movement Mortgage. Would you please complete the application with the link below. This will go to my team lead until I get set up with them in the next couple of days.

https://apply.movement.com/#/milestones?referrerId=reggie%40movement.com

Reggie Register is the name of the loan officer that will be taking the application and is aware that I am sending you over. Don't worry about any documents because I have them saved will upload them to your new application. I appreciate your understanding and flexibility.

Kind regards,