# EXHIBIT E

SOUTHERN TRUST MORTGAGE, LLC

*Plaintiff,*

v.

GRACE WHITE and MOVEMENT
MORTGAGE, LLC

*Defendants.*

Civil Action No. 2:24-cv-00653

## <u>DECLARATION OF GRACE WHITE</u>

I, Grace White, being sworn according to law, state that the facts set forth below are true and correct to the best of my knowledge, information, and belief, and if called to do so, could testify truthfully thereto.

1.      I worked for Southern Trust Mortgage, LLC ("Southern Trust") as a Loan Officer from on or about February 15, 2022 until I resigned on October 16, 2024.

2.      On February 15, 2022, as a material term and as consideration for my employment with Southern Trust, I executed the Loan Officer Employment Agreement and Loan Officer Confidentiality and Restrictive Covenant Agreement (the "Confidentiality Agreement") with Southern Trust.

3.      The Confidentiality Agreement contained certain restrictive covenants, including a: (1) Covenant Not to Divulge Company Confidential Information; (2) Non-Solicitation of Employees Covenant; (3) Non-Solicitation of Customers Covenant; (4) Non-Solicitation of Potential Customers Covenant; and (5) Non-Compete Covenant.

4. On or around September 12, 2024, I began discussions with Katie Brinson from Movement Mortgage ("Movement") about the possibility of working there as a Loan Officer. I was thereafter introduced to Reggie Register, also from Movement, about the possibility of working for Movement.

5. As part of these discussions, Mr. Register asked me if I had any "time commitments" with respect to Southern Trust. My understanding is that Mr. Register was asking whether I had committed to working for Southern Trust for a certain number of years. I told him that I did not think so, but that I had signed a Confidentiality Agreement. I also informed him that I had worked with Southern Trust for around two and a half years, and he said that was fine because most time commitments are two years. Neither Mr. Register nor anyone else at Movement asked me during the recruitment process if I had a non-compete agreement with Southern Trust.

6. At Mr. Register's request, on September 19, 2024, I emailed Mr. Register a copy of the Confidentiality Agreement, my last paystub, and my W-2. Mr. Register told me that they would take a look at my documents and get back to me. A true and correct copy of this email exchange is attached to this Declaration as **Exhibit A**.

7. On or around the beginning of October 2024, I informed Mr. Register that I wanted to make the change to work for Movement. I received an offer letter to work for Movement as a Loan Officer. I executed the offer letter on October 15, 2024.

8. That same day, I received approximately seven to ten emails containing links to an online portal to execute my onboarding documents. No one at Movement discussed the onboarding documentation with me.

9. I assumed that Movement and/or Mr. Register had reviewed my Confidentiality Agreement and did not see any issues with hiring me since they sent me an offer letter and then

hired me. I believed that if they had any issues with the Confidentiality Agreement, then they would have told me. No one from Movement brought up my Confidentiality Agreement to me until I received a demand letter from Southern Trust. No one from Movement expressed any issues concerning my ability to work for Movement and they did not place any restrictions on my work for Movement.

10. Movement hired me as a Loan Officer to do the same job I did for Southern Trust in the same territory. I understood that I would be soliciting the same sources of business and would continue networking the same way I did with Southern Trust, just for a different company.

11. On October 16, 2024, I knew that I would be resigning from Southern Trust. Because I would not have access to my Southern Trust documents and accounts, I rushed to download documents that I used daily during my job onto a thumb drive. I included documents relating to the homebuying process in Virginia, personal documents, and some Southern Trust materials.

12. Also on or around October 16, 2024, I asked Mr. Register what to tell my clients who had submitted applications with Southern Trust, but wanted to work with me after I started working at Movement. I had never moved between mortgage companies before and was relying on him to provide me with guidance. I requested advice from Mr. Register and followed what he told me to do.

13. Mr. Register came up with the idea to divert those Southern Trust clients to Movement. He suggested that, as long as the clients were not "triggered," then I could give them a link to his information at Movement. Mr. Register explained that "triggered" referred to loans that were past the prequalification stage, and the client was under contract and moving forward with locking in an interest rate and prepping for underwriting. Triggered loans would have to stay

with Southern Trust. For the loans that were not triggered, Mr. Register would get the clients set up in the system at Movement, and when I started work, I could pick up the application process with those clients.

14. Before I resigned from Southern Trust, I got a link for Mr. Register from Movement's website, emailed my Southern Trust clients, and directed them to submit their applications to Mr. Register at Movement. I did not believe that I was doing anything wrong, because I was relying on the instructions I received from Mr. Register.

15. At Mr. Register's direction, I solicited the following customers in an attempt to divert their business from Southern Trust to Movement:



16. On or around October 18, 2024, I received a cease-and-desist letter from Southern Trust's attorneys. I gave the letter to Mr. Register, who informed me to stop work. I did not complete any more work for Movement after I received the letter. I also immediately gave the thumb drive to Movement's legal department.

17. Around a month after I received the cease and desist letter, Mr. Register informed me that Movement was terminating my employment.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS**

**TRUE AND CORRECT.**

Executed on: 01/06/2025

_Grace White_
Grace White

# EXHIBIT A

**Attachments:** White Grace_Loan Officer Employment Agreement and Addendum 2022-2.pdf
White Grace_Loan Officer Confidentiality Agreement 2022-2.pdf
White Grace_Loan Officer Compensation Plan and Addendum 2022-2.pdf
paystub Aug.pdf
2023 w-2.pdf



**From:** Grace White <gmwteacher@gmail.com>
**Sent:** Thursday, September 19, 2024 21:20
**To:** katie.brinson@movement.com <katie.brinson@movement.com>; reggie@movement.com <reggie@movement.com>
**Subject:** FW: HR docs

Hello there!
Here are the documents requested. Please let me know if you need anything else. I will be working on getting access to my database.

Thank you!

Sent from Mail for Windows

**From:** Grace White
**Sent:** Thursday, September 19, 2024 9:09 PM
**To:** gmwteacher@gmail.com
**Subject:** docs



# Grace White
Loan Officer

NMLS # 2236478

[%20]

*The Darien Pearce Team*

**Office** 757-704-4046
**Mobile** 757-403-0814
**eFax** 866-422-8458

Email me
My Website
My Reviews

**Location**

295 Bendix Road, Suite 400
Virginia Beach, VA 23452

### If we earned your TRUST, [%20]Tell A Friend!

Southern Trust Mortgage, LLC NMLS #2921 (http://www.nmlsconsumeraccess.org) lends in the following states: District of Columbia - #MLB-2921 | Delaware #036386 | Maryland | North Carolina #205483 | Pennsylvania #94064| South Carolina | Tennessee | West Virginia #ML-34191 | Virginia #MC7387 | Florida MLD #2151; Southern Trust Mortgage, LLC d/b/a Southern Residential Lending in the following states: Georgia #16579 | New Jersey Licensed by the N.J. Department of Banking and Insurance. By refinancing a consumers existing loan, the consumers total finance charges may be higher over the life of the loan.

## LOAN OFFICER
## EMPLOYMENT AGREEMENT

This **Loan Officer Employment Agreement** (this "Agreement") is made this 15th day of February, 2022 (the "Effective Date") between Southern Trust Mortgage, LLC, a Virginia limited liability company (herein referred to as "STM") and Grace White (herein referred to as "Loan Officer").

## ARTICLE I
## EMPLOYMENT

**1.1     Employment.** Loan Officer is employed to originate mortgage loans in approved STM states. Employment is "at will" with termination by either Loan Officer or STM at any time for any reason.

## ARTICLE II
## RESPONSIBILITIES OF THE LOAN OFFICER

**2.1     General Duties.**

(a)     The loan officer should coordinate with Mortgage Processors, Underwriters, Closers, Secondary Marketing and Post Closers to ensure that each of the Loan Officers' loans is processed, approved and closed in a timely manner. Loan Officer is also responsible for ensuring loans conform to STM terms and commitments. The Loan Officer shall lock loans in accordance with STM lock policies and lock with STM's secondary marketing department the same program, rate and price that were committed to the customer. Loan Officer shall perform any other duties that are assigned by STM from time to time or that are contained in the Loan Officer Compensation Plan.

(b)     Loan Officer shall comply with all duties and requirements imposed on Loan Officer, as set forth in the company policies.

(c)     While employed by STM, the Loan Officer agrees to devote full-time attention to the position, subject to STM direction and control. The Loan Officer shall use his/her best efforts in the performance of his/her duties for and on behalf of STM. The Loan Officer shall assist and work for only STM and no other employer, lender, broker, or other entity, and shall not engage in any way in any mortgage lending or brokering, loan processing or underwriting services, loan modification services, real estate sales or acquisition, closing, settlement or title-related services, credit repair, credit counseling, borrower assistance or other business or service of the same or similar nature, unless approved by STM in writing. Additionally, the Loan Officer may not own an interest in any entity engaging in any such activities.

(d)     STM's marketing department and compliance department must approve all marketing materials, including advertisements, social media, websites, and marketing agreements. The Loan Officer must adhere to the policies and procedures outlined in the social media and marketing policy.

(e)     It is the responsibility of the Loan Officer to collect all third-party fees including, but not limited to, the appraisal fee. Failure to collect all applicable third-party fees is a willful violation of STM policy and the Loan Officer's commissions will be adjusted for any uncollected fees on canceled loans and denied loans.

## ARTICLE III
## REGULATORY COMPLIANCE

### 3.1     Regulatory Compliance.

(a)     The Loan Officer is familiar with and shall comply with STM policies, and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines and other requirements pertaining to the mortgage banking industry, to the business of STM, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of STM, including but not limited to the Equal Credit Opportunity Act, Gramm-Leach-Bliley Act, Truth in Lending Act, Real Estate Settlement Procedures Act, USA PATRIOT Act, Home Mortgage Disclosure Act, Federal Trade Commission Act, Telemarketing and Consumer Fraud and Abuse Prevention Act, Fair Credit Reporting Act, Fair Housing Act, Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (the "SAFE Act"), Dodd-Frank Wall Street Reform and Consumer Protection Act and all related regulations to the foregoing Acts, and all similar federal, state and local laws, rules, regulations and requirements, federal and state telemarketing and do-not-call laws, rules and regulations, and all applicable guidelines and requirements of the United States Department of Housing and Urban Development ("HUD"), Department of Veterans Affairs ("VA"), Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), Federal National Mortgage Association ("FNMA" or "Fannie Mae"), Government National Mortgage Association ("GNMA" or "Ginnie Mae"), United States Department of Agriculture ("USDA") and all other applicable agencies, investors and insurers (altogether, STM policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Applicable Requirements"), in each case as amended from time to time.

(b)     STM is committed to treating all consumers fairly, consistently, and equitably in its lending practices. Loan Officer acknowledges and shall comply with STM's policy to comply with all applicable fair lending laws and to treatment of all credit applicants equally and without regard to race, color, religion, national origin, age, gender (including pregnancy, childbirth and related medical conditions) gender identity, marital status (including same sex), sexual orientation, disability, income derived from any public assistance program, status as a protected veteran, or other applicable legally protected characteristics.

(c)     Loan Officer will not charge any consumer any fees in excess of that permitted under Applicable Requirements;

(d)     Loan Officer will comply with the provisions of the final rule revising Regulation Z regarding loan officer compensation.

## ARTICLE IV
## LOAN OFFICER COMPENSATION PLAN

**4.1** **Loan Officer Compensation Plan**. Attached hereto and incorporated herein as Appendix A is the Loan Officer Compensation Plan. Loan Officer has reviewed the Loan Officer Compensation Plan.

**4.2** **Loan Officer Benefits**. Full-time Loan Officers are entitled to participate in the STM benefit plans in accordance with the Southern Trust Mortgage Employee Handbook. Benefits are subject to change from time to time within the sole discretion of STM.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES

**5.1** **Loan Officer Representations and Warranties**.

(a) The Loan Officer acknowledges that the use of any private or proprietary information obtained from other business entities in the mortgage banking industry, whether through the course of previous employment or otherwise, is strictly prohibited by STM. Such prohibited private or proprietary information shall include, but is not limited to (i) trade secrets, (ii) patented, trademarked, or copyrighted materials, (iii) confidential client information, (iv) private company records, (v) work-product, and (vi) other non-public information. The Loan Officer represents and warrants that he or she will not use any such prohibited private or proprietary information in conducting any activity related to his or her employment or affiliation with STM.

(b) The Loan Officer represents and warrants that he or she is not a party to any agreement whatsoever which would in any way prohibit or restrict his or her ability to work as a loan officer for STM.

(c) Should the Loan Officer breach either of the foregoing representations and warranties, the Loan Officer agrees to indemnify and hold harmless STM against any and all actions for recovery arising from such breach. Any breach of the foregoing representations and warranties shall also be grounds for termination of the Loan Officer's employment or affiliation with STM.

## ARTICLE VI
## COMPENSATION UPON TERMINATION

**6.1** **Compensation**. The Loan Officer will be entitled to fifty percent (50%) of the compensation as determined by the originator of record for Eligible Loans closed and funded within thirty (30) days of the termination date. The loan must be in conditional approval and locked as of the termination date in order for compensation to be paid. No compensation will be paid for Eligible Loans closed and funded after thirty (30) days of termination.

**6.2** **Payment**. Payment of any compensation due will be made on the regular scheduled commission payday after final calculation of the commissions due but not later than sixty (60)

days after termination. An employee must be in current active employment status on the payout date to receive any relevant incentive or bonus.

**6.3    Repayable Obligation**. If the Loan Officer leaves STM before completing twelve full months, any Compensations to include increased tiers, signing bonus and forgivable draws previously advanced to the Loan Officer during his/her initial employment period will be repayable and will be deducted from any commissions earned and not yet paid. STM will not require repayment if total compensation for forgivable draws, increased tiers and signing bonus's total less than $10,000.

**ARTICLE VII**
**MORTGAGE LOAN OFFICER RESPONSIBILITY AND ATTESTATION UNDER THE SAFE ACT**

7.1    **SAFE Act**. STM Loan officers will need to be registered on Nationwide Mortgage Licensing System. The following are a list of responsibilities for the Loan Officer. After reviewing, you must sign and date this document indicating acknowledgement and receipt of the SAFE Act registration requirements and Loan Officer responsibilities.

(a)    Provide all required Employee Information to the SAFE Act Officer (Human Resources). This includes full name, social security number, date of birth and date of hire.

(b)    Loan officers who have a Nationwide Multistate Licensing System ("NMLS") number must transfer that number to STM before acting as a Loan Officer for STM.

(c)    Authorize the NMLS Registry and STM to obtain information related to sanctions or findings in any administrative, civil or criminal actions, to which the employee is a party, made by any governmental jurisdiction

(d)    Obtain Fingerprints (Fingerprints already on file with NMLS less than three (3) years old may be re-used)

(e)    Attest to the correctness of all required information submitted into the NMLS system.

(f)    Authorize the NMLS Registry to make available to the public information as required by law.

(g)    Must provide your unique identifier to consumers upon request, before acting as a Loan Officer and through ANY communication with the consumer whether on paper or electronically.

(h)    Renew the registration during the annual renewal period.

(i)    Confirm that the information originally sent remains accurate and complete.

4

(j)      Update the registration within thirty (30) days if any of the information required becomes inaccurate, incomplete, or out-of-date.

In the event of any changes in the licensing requirements under any applicable law, the Loan Officer shall comply with them.

## ARTICLE VIII
## CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT

**8.1     Confidentiality and Restrictive Covenant Agreement.**  Simultaneous with the execution of this Agreement, Loan Officer shall enter into a separate Confidentiality and Restrictive Covenant Agreement, a copy of which is attached hereto as Appendix B.

## ARTICLE IX
## MISCELLANEOUS

**9.1     Loan Officer Assistant.**  If volume warrants and production management approves a Loan Officer Assistant a separate addendum to this contract will be completed. This agreement will include terms of the Loan Officers responsibilities for payment to the Loan Officer Assistant.

**9.2     Entire Agreement.**  This Agreement, together with all other documents signed or delivered in connection with this Agreement, contain the complete understanding between the parties concerning this subject matter and supersede all prior agreements, arrangements, understandings, letters of intent, conversations and negotiations, whether oral or written, with respect to their subject matter.  The parties stipulate that there are no representations with respect to the subject matter of this Agreement except those representations specifically set forth in this Agreement and the documents signed or delivered in connection with this Agreement.

**9.3     Severability.**  Each clause, paragraph and provision of this Agreement is entirely independent and severable from every other clause, paragraph, and provision.  If any judicial authority or state or federal regulatory agency or authority determines that any portion of this Agreement is invalid or unenforceable or unlawful, such determination will affect only the specific portion determined to be invalid or unenforceable or unlawful and will not affect any other portion of this Agreement which will remain and continue in full force and effect.  In all other respects all provisions of this Agreement will be interpreted in a manner which favors their validity and enforceability and which gives effect to the substantive intent of the parties.

**9.4     Specific Enforceability.**  The parties may enforce or prevent violations of the provisions of this Agreement through any and all rights and remedies existing in their favor whether at law or in equity including specific performance and injunctive relief.  The parties agree that the subject matter of this Agreement is unique and that money damages may not be an adequate remedy for any violation of the provisions of this Agreement and that any party may apply for legal or equitable relief and will be entitled to specific performance and/or injunctive relief in order to enforce or prevent any violations of this Agreement.

**9.5     No Waiver.**  The terms, covenants, representations, warranties or conditions of this Agreement may be waived only by a written instrument executed by the party waiving compliance. The failure or delay of any party to this Agreement at any time to demand performance, to enforce

5

any provision of this Agreement or to exercise any right or power granted under this Agreement will not be construed as a waiver of such provision and will not affect the right of any party to this Agreement to enforce each and every provision of this Agreement in accordance with its terms. Any waiver of a breach of any part of this Agreement will not operate as or be construed as a waiver of any subsequent breach or of any rights which any party may have otherwise.

**9.6     Amendments**.  This Agreement may not be changed or amended other than with the written consent of all parties to this Agreement.

**9.7     Paragraph Headings**.  The paragraph headings contained in this Agreement are for the convenience of the parties only and shall in no manner be construed as a part of this Agreement or used in the construction or interpretation hereof.

**9.8     Counterparts**.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and which together shall constitute one and the same agreement.

**9.9     Electronic or Facsimile Signatures**.  Any party may effect the execution and delivery of this Agreement and related documents by signing the same and sending a copy thereof by e-mail or by facsimile transmission.  Facsimile signatures or electronically imaged signatures, including but not limited to .pdf files, shall be treated in all respects as an original instrument bearing an original signature, and shall be a valid and binding Agreement fully admissible under state and federal rules of evidence.  The parties hereto agree that the possession of an executed and delivered electronic version of this Agreement or any other document shall constitute possession of this Agreement.

**9.10     Governing Law**.  This Agreement shall be interpreted and construed and governed in accordance with the laws of the Commonwealth of Virginia, without giving effect to principles of conflicts of laws.

**9.11     Notices**.  Any notices or other communications required or permitted under this Agreement must be in writing and shall be sufficiently given if addressed to the address set forth below the signatures hereto or such other address as shall be furnished in writing by any such party. This notice or communication shall be deemed to have been given:

(a)     upon delivery, if personally delivered to a party;

(b)     one (1) business day after the date of dispatch, if by facsimile or other electronic transmission;

(c)     one (1) business day after deposit, if delivered by a nationally recognized courier service offering guaranteed, overnight delivery; or

(d)     three (3) business days after deposit in the United States mail, certified mail, postage prepaid, return receipt requested at the addresses appearing below.

**9.12     Costs and Expenses**.  In the event STM pursues any action at law or equity to enforce any obligation of Loan Officer under this Agreement, and STM substantially prevails, all STM costs and expenses of such litigation, including reasonable attorney fees, shall be reimbursed by the Loan Officer.

**9.13 Choice of Forum and Venue.** With respect to any controversy, argument or claim arising out of or relating to this Agreement, or any breach thereof (including, but not limited to, a request for emergency relief) or any tort claim among the parties, the parties hereby consent to the sole and exclusive jurisdiction and venue of the Circuit Courts of the Cities of Virginia Beach and Norfolk, Virginia and the U.S. District Court for the Eastern District of Virginia, Norfolk Division, and waive personal service of any and all process upon them and consent that all such service of process made by registered or certified mail directed to them at the address stated herein and service so made shall be deemed to be completed five (5) days after mailing. The parties waive trial by jury and waive any objection to jurisdiction, venue or inconvenient forum of any action instituted hereunder and agree not to assert any defense based on lack of jurisdiction, venue or forum.

**9.14 Successors.** This Agreement binds and inures to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

**9.15 Assignment.** Loan Officer may not assign this Agreement or any of its rights or interests under this Agreement, or any of its obligations or liabilities under this Agreement. Any such purported assignment by Loan Officer is void. STM shall have the right to assign this Agreement.

[*Signature page follows.*]

By signing below, the Loan Officer certifies that they have read the 2022 Southern Trust Mortgage Loan Officer Compensation Plan.

*Grace White*
_____
Loan Officer
Address: 311 37th St _____

Norfolk, VA 23508 _____

_____

Grace White
_____
Printed Name

**SOUTHERN TRUST MORTGAGE, LLC**

_____
President
Address: _____

_____

_____

8

# LOAN OFFICER CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT

THIS LOAN OFFICER CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT (the "Agreement") is made effective on February 15th, 2022 between **Southern Trust Mortgage, LLC** (the "Company") and **Grace White** ("Loan Officer").

WHEREAS, Loan Officer acknowledges that Company incurs significant expense in recruiting and training its Loan Officers; and

WHEREAS, Loan Officer acknowledges that Loan Officer will learn Confidential Information of the Company during employment; and

WHEREAS, the Company wishes to obtain reasonable protection of its Confidential Information which it has developed, acquired and/or is or may be developed or acquired by the Company at substantial expense; and

WHEREAS, the Company wishes to obtain reasonable protection against unfair competition during the Loan Officer's employment by the Company and following cessation of the Loan Officer's employment with Company; and therefore, the Company desires to have Loan Officer execute this Agreement; and

WHEREAS, the Loan Officer is willing to execute this Agreement and grant the Company the benefits of the restrictive covenants contained herein; and

WHEREAS, the Loan Officer agrees to the terms of this Agreement;

NOW, THEREFORE, in consideration of the foregoing, the promises and covenants set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Employment.  Loan Officer agrees to the terms and covenants in this Agreement in consideration of employment and acknowledges that Loan Officer reviewed this Agreement prior to signing it and understands it becomes effective simultaneous with Employment.

2.      Confidential Information.  As used herein, "Confidential Information" shall mean any information which is disclosed by Company to Loan Officer or developed or obtained by Loan Officer while employed in connection with Loan Officer's job responsibilities in any form, manner or media unless excluded below.  All information related orally shall be understood to be included in the category of Confidential Information unless specifically identified as being non-confidential.  Confidential Information shall include, but is not limited to, information regarding customers, employees, referral sources, financial, business and marketing strategies, business ideas, pricing, trade secrets, records, files, plans, and documents, the process developed and used by Company for training employees and any other Company information.

Confidential Information shall not include any information that (a) was in the public domain at the time of Company's communication of the information to Loan Officer through no fault or wrongful act of Loan Officer; or (b) entered the public domain through no fault or action of the Loan Officer subsequent to the time of Company's communication thereof to Loan Officer.

3.      Covenant Not to Divulge Company Confidential Information.  Loan Officer acknowledges and agrees that Company is entitled to prevent the disclosure of Company Confidential Information.  Loan Officer agrees at all times during the term of this Agreement and during the Confidentiality Period (defined below) to hold in strictest confidence and not to disclose to any person, firm or entity, other than to Company's officers, directors, or other authorized representatives, and not to use or allow others to use it except in the support of the business of the Company, any Confidential Information, without the prior written consent of the Company, unless such disclosure is required by subpoena, in which case Loan Officer shall give reasonable prior written notice thereof to the Company and provide the Company with the opportunity to contest such disclosure. For the purposes of this Agreement, the "Confidentiality Period" shall mean (i) as to confidential information that does not constitute a trade secret under applicable law, for a period of five (5) years following termination of Loan Officer's employment with the Company at any time and for any reason, or (ii) as to confidential information that constitutes a trade secret under applicable law, for so long as such confidential information constitutes a trade secret.

4.      Protection of Property.  Loan Officer acknowledges and agrees that: (a) all documents, agreements, plans, specifications, forms, notes, reports, memoranda, studies, data, calculations, compilations of information, records, files (including electronic), manuals, contacts, price lists, vendor lists, forms, letters, e-mails or other materials generated (whether by Company, Loan Officer or other Loan Officers of Company) and all copies, abstracts and summaries of the foregoing; and (b) all supplies, computer programs, credit cards, keys, beepers, cell phones and other communication or electronic equipment furnished by Company shall be and remain the property of Company and shall be held and used by Loan Officer solely in connection with the performance of Loan Officer's services to or on behalf of Company hereunder and for its sole and exclusive benefit. Upon cessation of employment or at any other time upon Company's request, Loan Officer shall promptly deliver to Company all Company Confidential Information, which Loan Officer may possess or have under Loan Officer's control, including electronic information.

5.      Non-Solicitation of Employees Covenant.  The Loan Officer specifically agrees that during the Loan Officer's employment with the Company and for a period of twelve (12) months after Loan Officer's employment with the Company ceases, for whatever reason, Loan Officer shall not, on Loan Officer's own behalf or on behalf of any other person or entity, solicit or hire or assist in soliciting or hiring for employment that is competitive to Company any other employee that worked for Company at any time during the six (6) month period prior to Loan Officer's cessation of employment with Company.

6.     Non-Solicitation of Customers Covenant. The Loan Officer specifically agrees that during the Loan Officer's employment with the Company and for a period of twelve (12) months after Loan Officer's employment with the Company ceases, for whatever reason, with or without cause, and voluntarily or involuntarily, Loan Officer shall not on Loan Officer's own behalf or on behalf of any other person or entity, solicit or assist in soliciting Competitive Business from a Restricted Customer. For purposes of this Paragraph 6, "Competitive Business" shall mean the provision of products and/or services competitive with the products and/or services provided by Loan Officer on behalf of Company when the Loan Officer's employment ended. For purposes of this Paragraph 6, "Restricted Customer" shall mean any person or entity who or which was a customer of Company at any time during Loan Officer's final twelve (12) months of employment to whom Loan Officer provided Company products or services. This restriction in Paragraph 6 shall only apply within a 25-mile radius of any office where Loan Officer worked during Loan Officer's final twelve (12) months of employment with Company.

7.     Non-Solicitation of Potential Customers Covenant. The Loan Officer specifically agrees that during the Loan Officer's employment with the Company and for a period of twelve (12) months after Loan Officer's employment with the Company ceases, for whatever reason, with or without cause, Loan Officer shall not on Loan Officer's own behalf or on behalf of any other person or entity, solicit or assist in soliciting Competitive Business from a Restricted Potential Customer. For purposes of this Paragraph 7, "Competitive Business" shall mean the provision of products and/or services competitive with the products and/or services provided by Loan Officer on behalf of Company when the Loan Officer's employment ended. For purposes of this Paragraph 7, "Restricted Potential Customer" shall mean any person or entity with whom Loan Officer had contact in connection with prospective business for Company at any time during Loan Officer's final twelve (12) months of employment. This restriction in Paragraph 7 shall only apply within a 25-mile radius of any office where Loan Officer worked during Loan Officer's final twelve (12) months of employment with Company.

8.     Non-Compete. During Loan Officer's employment under this Agreement and for a period of twelve (12) months following the cessation of Loan Officer's employment for whatever reason, with or without cause, Loan Officer shall not, on Loan Officer's own behalf or on behalf of any other person or entity, compete with Company in the Restricted Area by engaging, in a competitive capacity, in any Competitive Business. For the purposes of this Paragraph 8, "Competitive Business" shall mean the provision of products and/or services competitive with products and/or services provided by Loan Officer on behalf of Company when Loan Officer's employment with Company ceases. For the purposes of this Paragraph 8, "Restricted Area" shall be defined as a 25-mile radius from any office where Loan Officer worked on behalf of Company within twelve (12) months prior to cessation of employment. This restriction will not prohibit Loan Officer's ownership in a corporation or entity which has its stock traded publicly on a national exchange or similar means of publicly trading stock.

9.     Injunction. The Loan Officer acknowledges that a violation on Loan Officer's part of any restrictive covenants in Paragraphs 3, 5, 6, 7, 8 and 10 of this Agreement will cause such damage to Company as will be irreparable and the exact amount of which will be impossible to ascertain, and for that reason, the Loan Officer further acknowledges that Company shall be entitled, as a matter of course, to an injunction out of any Court of competent jurisdiction, restraining any further violation of the covenant by the Loan Officer, and, pending the hearing and decision on the application for such injunction, Company shall be entitled to a Temporary Restraining Order, and waives any request for a bond, or the equivalent thereof, without prejudice to any other remedies available to it. The Loan Officer particularly agrees to the immediate issuance of such Temporary Restraining Order and hereby waives any requirements of notice or objection whatsoever to the issuance of such an Order.

10.     Non-Disparagement. Loan Officer agrees that, both during Loan Officer's employment with the Company and thereafter, Loan Officer will not make any disparaging or defamatory statements about the Company or any of its owners, officers, managers, Loan Officers or agents nor will Loan Officer authorize, encourage or participate with anyone on Loan Officer's behalf to make such statements.

11.     Reasonableness. Loan Officer agrees that the restrictions in this Agreement are each reasonable and appropriate considering all of the circumstances surrounding the business of Company and Loan Officer's relationship to that business and that this Agreement, being fair and just, may be enforced in a court of law or equity, if necessary, to accomplish compliance with the terms hereof by Loan Officer. Loan Officer agrees that such restrictions will not prevent Loan Officer from the ability to earn a living.

12.     Court Modifications. If any provision of this paragraph relating to the time period or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope, as applicable, that such court deems reasonable and enforceable, said time period or scope shall be deemed to be, and thereafter shall become, the maximum time period or greatest scope that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

13.     Entire Agreement. This Agreement, together with all other documents signed or delivered in connection with this Agreement, contain the complete understanding between the parties concerning this subject matter and supersede all prior agreements, arrangements, understandings, letters of intent, conversations and negotiations, whether oral or written, with respect to their subject matter. The parties stipulate that there are no representations with respect to the subject matter of this Agreement except those representations specifically set forth in this Agreement and the documents signed or delivered in connection with this Agreement.

14.     Severability. Each clause, paragraph and provision of this Agreement is entirely independent and severable from every other clause, paragraph, and provision. If any judicial authority or state or federal regulatory agency or authority determines that any portion of this Agreement is invalid or unenforceable or unlawful, such determination will affect only the specific portion determined to be invalid or unenforceable or unlawful and will not affect any other portion of this Agreement which will remain and continue in full force and effect. In all other respects, all provisions of this Agreement will be interpreted in a manner which favors their validity and enforceability and which gives effect to the substantive intent of the parties.

15.    Specific Enforceability.  The parties may enforce or prevent violations of the provisions of this Agreement through any and all rights and remedies existing in their favor whether at law or in equity including specific performance and injunctive relief.  The parties agree that the subject matter of this Agreement is unique and that money damages may not be an adequate remedy for any violation of the provisions of this Agreement and that any party may apply for legal or equitable relief and will be entitled to specific performance and/or injunctive relief in order to enforce or prevent any violations of this Agreement.  Loan Officer agrees that any claim Loan Officer may have against Company shall not prevent or delay Company from enforcing the restrictive covenants in this Agreement.

16.    No Waiver.  The terms, covenants, representations, warranties or conditions of this Agreement may be waived only by a written instrument executed by the party waiving compliance.  The failure or delay of any party to this Agreement at any time to demand performance, to enforce any provision of this Agreement or to exercise any right or power granted under this Agreement will not be construed as a waiver of such provision and will not affect the right of any party to this Agreement to enforce each and every provision of this Agreement in accordance with its terms.  Any waiver of a breach of any part of this Agreement will not operate as or be construed as a waiver of any subsequent breach or of any rights which any party may have otherwise.

17.    Amendments.  This Agreement may not be changed or amended other than with the written consent of all parties to this Agreement.

18.    Paragraph Headings.  The paragraph headings contained in this Agreement are for the convenience of the parties only and shall in no manner be construed as a part of this Agreement or used in the construction or interpretation hereof.

19.    Counterparts.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and which together shall constitute one and the same Agreement.

20.    Governing Law.  This Agreement shall be interpreted and construed and governed in accordance with the laws of the Commonwealth of Virginia, without giving effect to principles of conflicts of laws.

21.    Notices.  Any notices or other communications required or permitted under this Agreement must be in writing and shall be sufficiently given if addressed to the address set forth below the signatures hereto or such other address as shall be furnished in writing by any such party.  This notice or communication shall be deemed to have been given:

(a)    upon delivery, if personally delivered to a party.

(b)    one (1) business day after the date of dispatch, if by facsimile transmission.

(c)    one (1) business day after deposit, if delivered by a nationally recognized courier service offering guaranteed, overnight delivery; or

(d)    three (3) business days after deposit in the United States mail, certified mail, postage prepaid, return receipt requested at the addresses appearing below.

22.    Choice of Forum and Venue.  With respect to any controversy, argument or claim arising out of or relating to this Agreement, or any breach thereof or any tort claim among the parties, the parties hereby consent to the exclusive jurisdiction, venue and forum of the Circuit Court of the City of Norfolk or Virginia Beach, Virginia and the U.S. District Court in the Eastern District of Virginia, Norfolk Division, and waive personal service of any and all process upon them and consent that all such service of process made by registered or certified mail directed to them at the address stated herein and service so made shall be deemed to be completed five (5) days after mailing.  The parties waive trial by jury and waive any objection to jurisdiction, venue and forum of any action instituted hereunder, and agree not to assert any defense based on lack of jurisdiction, venue or inconvenient forum.  Notwithstanding the foregoing, nothing prevents Company from seeking injunctive or other Company relief in any jurisdiction or venue where deemed necessary by Company.

23.    Successors.  The terms, covenants and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

24.    Non-Assignment.  Loan Officer shall not assign this Agreement without the written consent of Company.  The parties agree that Company shall have the right to assign this Agreement in the event of a sale of substantial assets, sale of majority interests by its owners, merger, consolidation or other business combination, or change of control.

25.    Electronic or Facsimile Signatures.  Any party may effect the execution and delivery of this Agreement and related documents by signing the same and sending a copy thereof by e-mail or by facsimile transmission.  Facsimile signatures or electronically imaged signatures, including but not limited to pdf files, shall be treated in all respects as an original instrument bearing an original signature, and shall be a valid and binding Agreement fully admissible under state and federal rules of evidence.  The parties hereto agree that the possession of an executed and delivered electronic version of this Agreement or any other document shall constitute possession of this Agreement.

26.     Miscellaneous. The use of the singular herein shall be deemed to include the plural and the masculine gender shall include the feminine and the neuter.

27.     Extension of Time. In the event that Loan Officer is found by a court or other enforcement authority to have breached any of the restrictive covenants set forth in Paragraph 5, 6, 7 or 8, then the time periods set forth in such restrictions, if any, shall automatically be extended by the length of time which Loan Officer shall have been in breach of any of said provisions.

28.     Costs and Expenses. In the event Company pursues any action at law or equity to enforce any obligation of Loan Officer under this Agreement, and Company substantially prevails, all Company costs and expenses of such litigation, including reasonable attorney fees, shall be reimbursed by the Loan Officer.

29.     Survival. The parties agree that the provisions in Paragraphs 1-15, 20, 22, 23 and 27-30 shall survive the cessation of Loan Officer's employment with Company and termination of this Agreement.

30.     Claims Against Company. Loan Officer agrees that the existence of any claim or cause of action by Loan Officer against Company shall not constitute a defense to the enforcement by the Company of the covenants or restrictions in Paragraphs 3, 5, 6, 7, 8 and 10 of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused their duly authorized representatives to execute this Agreement as of the date first above written.

**SOUTHERN TRUST MORTGAGE, LLC**

By:_____

    Name:_____

    Title: _____

*Grace White*

Name: Grace White _____, Loan Officer

Address: 311 37th St _____

Norfolk, VA 23508

4

# LOAN OFFICER
# EMPLOYMENT AGREEMENT

This **Loan Officer Employment Agreement** (this "Agreement") is made this 15th day of February, 2022 (the "Effective Date") between Southern Trust Mortgage, LLC, a Virginia limited liability company (herein referred to as "STM") and Grace White (herein referred to as "Loan Officer").

## ARTICLE I
## EMPLOYMENT

**1.1** **Employment**. Loan Officer is employed to originate mortgage loans in approved STM states. Employment is "at will" with termination by either Loan Officer or STM at any time for any reason.

## ARTICLE II
## RESPONSIBILITIES OF THE LOAN OFFICER

**2.1** **General Duties**.

(a) The loan officer should coordinate with Mortgage Processors, Underwriters, Closers, Secondary Marketing and Post Closers to ensure that each of the Loan Officers' loans is processed, approved and closed in a timely manner. Loan Officer is also responsible for ensuring loans conform to STM terms and commitments. The Loan Officer shall lock loans in accordance with STM lock policies and lock with STM's secondary marketing department the same program, rate and price that were committed to the customer. Loan Officer shall perform any other duties that are assigned by STM from time to time or that are contained in the Loan Officer Compensation Plan.

(b) Loan Officer shall comply with all duties and requirements imposed on Loan Officer, as set forth in the company policies.

(c) While employed by STM, the Loan Officer agrees to devote full-time attention to the position, subject to STM direction and control. The Loan Officer shall use his/her best efforts in the performance of his/her duties for and on behalf of STM. The Loan Officer shall assist and work for only STM and no other employer, lender, broker, or other entity, and shall not engage in any way in any mortgage lending or brokering, loan processing or underwriting services, loan modification services, real estate sales or acquisition, closing, settlement or title-related services, credit repair, credit counseling, borrower assistance or other business or service of the same or similar nature, unless approved by STM in writing. Additionally, the Loan Officer may not own an interest in any entity engaging in any such activities.

(d) STM's marketing department and compliance department must approve all marketing materials, including advertisements, social media, websites, and marketing agreements. The Loan Officer must adhere to the policies and procedures outlined in the social media and marketing policy.

1

(e) It is the responsibility of the Loan Officer to collect all third-party fees including, but not limited to, the appraisal fee. Failure to collect all applicable third-party fees is a willful violation of STM policy and the Loan Officer's commissions will be adjusted for any uncollected fees on canceled loans and denied loans.

## ARTICLE III
## REGULATORY COMPLIANCE

**3.1 Regulatory Compliance.**

(a) The Loan Officer is familiar with and shall comply with STM policies, and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines and other requirements pertaining to the mortgage banking industry, to the business of STM, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of STM, including but not limited to the Equal Credit Opportunity Act, Gramm-Leach-Bliley Act, Truth in Lending Act, Real Estate Settlement Procedures Act, USA PATRIOT Act, Home Mortgage Disclosure Act, Federal Trade Commission Act, Telemarketing and Consumer Fraud and Abuse Prevention Act, Fair Credit Reporting Act, Fair Housing Act, Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (the "SAFE Act"), Dodd-Frank Wall Street Reform and Consumer Protection Act and all related regulations to the foregoing Acts, and all similar federal, state and local laws, rules, regulations and requirements, federal and state telemarketing and do-not-call laws, rules and regulations, and all applicable guidelines and requirements of the United States Department of Housing and Urban Development ("HUD"), Department of Veterans Affairs ("VA"), Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), Federal National Mortgage Association ("FNMA" or "Fannie Mae"), Government National Mortgage Association ("GNMA" or "Ginnie Mae"), United States Department of Agriculture ("USDA") and all other applicable agencies, investors and insurers (altogether, STM policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Applicable Requirements"), in each case as amended from time to time.

(b) STM is committed to treating all consumers fairly, consistently, and equitably in its lending practices. Loan Officer acknowledges and shall comply with STM's policy to comply with all applicable fair lending laws and to treatment of all credit applicants equally and without regard to race, color, religion, national origin, age, gender (including pregnancy, childbirth and related medical conditions) gender identity, marital status (including same sex), sexual orientation, disability, income derived from any public assistance program, status as a protected veteran, or other applicable legally protected characteristics.

(c) Loan Officer will not charge any consumer any fees in excess of that permitted under Applicable Requirements;

(d) Loan Officer will comply with the provisions of the final rule revising Regulation Z regarding loan officer compensation.

## ARTICLE IV
## LOAN OFFICER COMPENSATION PLAN

**4.1    Loan Officer Compensation Plan.** Attached hereto and incorporated herein as Appendix A is the Loan Officer Compensation Plan. Loan Officer has reviewed the Loan Officer Compensation Plan.

**4.2    Loan Officer Benefits.** Full-time Loan Officers are entitled to participate in the STM benefit plans in accordance with the Southern Trust Mortgage Employee Handbook. Benefits are subject to change from time to time within the sole discretion of STM.

### ARTICLE V
### REPRESENTATIONS AND WARRANTIES

5.1    **Loan Officer Representations and Warranties.**

(a)    The Loan Officer acknowledges that the use of any private or proprietary information obtained from other business entities in the mortgage banking industry, whether through the course of previous employment or otherwise, is strictly prohibited by STM. Such prohibited private or proprietary information shall include, but is not limited to (i) trade secrets, (ii) patented, trademarked, or copyrighted materials, (iii) confidential client information, (iv) private company records, (v) work-product, and (vi) other non-public information. The Loan Officer represents and warrants that he or she will not use any such prohibited private or proprietary information in conducting any activity related to his or her employment or affiliation with STM.

(b)    The Loan Officer represents and warrants that he or she is not a party to any agreement whatsoever which would in any way prohibit or restrict his or her ability to work as a loan officer for STM.

(c)    Should the Loan Officer breach either of the foregoing representations and warranties, the Loan Officer agrees to indemnify and hold harmless STM against any and all actions for recovery arising from such breach. Any breach of the foregoing representations and warranties shall also be grounds for termination of the Loan Officer's employment or affiliation with STM.

### ARTICLE VI
### COMPENSATION UPON TERMINATION

**6.1    Compensation.** The Loan Officer will be entitled to fifty percent (50%) of the compensation as determined by the originator of record for Eligible Loans closed and funded within thirty (30) days of the termination date. The loan must be in conditional approval and locked as of the termination date in order for compensation to be paid. No compensation will be paid for Eligible Loans closed and funded after thirty (30) days of termination.

**6.2    Payment.** Payment of any compensation due will be made on the regular scheduled commission payday after final calculation of the commissions due but not later than sixty (60)

3

days after termination. An employee must be in current active employment status on the payout date to receive any relevant incentive or bonus.

**6.3    Repayable Obligation**. If the Loan Officer leaves STM before completing twelve full months, any Compensations to include increased tiers, signing bonus and forgivable draws previously advanced to the Loan Officer during his/her initial employment period will be repayable and will be deducted from any commissions earned and not yet paid. STM will not require repayment if total compensation for forgivable draws, increased tiers and signing bonus's total less than $10,000.

## ARTICLE VII
## MORTGAGE LOAN OFFICER RESPONSIBILITY AND ATTESTATION UNDER THE SAFE ACT

7.1    **SAFE Act**. STM Loan officers will need to be registered on Nationwide Mortgage Licensing System. The following are a list of responsibilities for the Loan Officer. After reviewing, you must sign and date this document indicating acknowledgement and receipt of the SAFE Act registration requirements and Loan Officer responsibilities.

(a)    Provide all required Employee Information to the SAFE Act Officer (Human Resources). This includes full name, social security number, date of birth and date of hire.

(b)    Loan officers who have a Nationwide Multistate Licensing System ("NMLS") number must transfer that number to STM before acting as a Loan Officer for STM.

(c)    Authorize the NMLS Registry and STM to obtain information related to sanctions or findings in any administrative, civil or criminal actions, to which the employee is a party, made by any governmental jurisdiction

(d)    Obtain Fingerprints (Fingerprints already on file with NMLS less than three (3) years old may be re-used)

(e)    Attest to the correctness of all required information submitted into the NMLS system.

(f)    Authorize the NMLS Registry to make available to the public information as required by law.

(g)    Must provide your unique identifier to consumers upon request, before acting as a Loan Officer and through ANY communication with the consumer whether on paper or electronically.

(h)    Renew the registration during the annual renewal period.

(i)    Confirm that the information originally sent remains accurate and complete.

4

(j)     Update the registration within thirty (30) days if any of the information required becomes inaccurate, incomplete, or out-of-date.

In the event of any changes in the licensing requirements under any applicable law, the Loan Officer shall comply with them.

**ARTICLE VIII**
**CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT**

**8.1     Confidentiality and Restrictive Covenant Agreement**.  Simultaneous with the execution of this Agreement, Loan Officer shall enter into a separate Confidentiality and Restrictive Covenant Agreement, a copy of which is attached hereto as Appendix B.

**ARTICLE IX**
**MISCELLANEOUS**

**9.1     Loan Officer Assistant**.  If volume warrants and production management approves a Loan Officer Assistant a separate addendum to this contract will be completed. This agreement will include terms of the Loan Officers responsibilities for payment to the Loan Officer Assistant.

**9.2     Entire Agreement**.  This Agreement, together with all other documents signed or delivered in connection with this Agreement, contain the complete understanding between the parties concerning this subject matter and supersede all prior agreements, arrangements, understandings, letters of intent, conversations and negotiations, whether oral or written, with respect to their subject matter.  The parties stipulate that there are no representations with respect to the subject matter of this Agreement except those representations specifically set forth in this Agreement and the documents signed or delivered in connection with this Agreement.

**9.3     Severability**.  Each clause, paragraph and provision of this Agreement is entirely independent and severable from every other clause, paragraph, and provision.  If any judicial authority or state or federal regulatory agency or authority determines that any portion of this Agreement is invalid or unenforceable or unlawful, such determination will affect only the specific portion determined to be invalid or unenforceable or unlawful and will not affect any other portion of this Agreement which will remain and continue in full force and effect.  In all other respects all provisions of this Agreement will be interpreted in a manner which favors their validity and enforceability and which gives effect to the substantive intent of the parties.

**9.4     Specific Enforceability**.  The parties may enforce or prevent violations of the provisions of this Agreement through any and all rights and remedies existing in their favor whether at law or in equity including specific performance and injunctive relief.  The parties agree that the subject matter of this Agreement is unique and that money damages may not be an adequate remedy for any violation of the provisions of this Agreement and that any party may apply for legal or equitable relief and will be entitled to specific performance and/or injunctive relief in order to enforce or prevent any violations of this Agreement.

**9.5     No Waiver**.  The terms, covenants, representations, warranties or conditions of this Agreement may be waived only by a written instrument executed by the party waiving compliance. The failure or delay of any party to this Agreement at any time to demand performance, to enforce

5

any provision of this Agreement or to exercise any right or power granted under this Agreement will not be construed as a waiver of such provision and will not affect the right of any party to this Agreement to enforce each and every provision of this Agreement in accordance with its terms. Any waiver of a breach of any part of this Agreement will not operate as or be construed as a waiver of any subsequent breach or of any rights which any party may have otherwise.

**9.6    Amendments.** This Agreement may not be changed or amended other than with the written consent of all parties to this Agreement.

**9.7    Paragraph Headings.** The paragraph headings contained in this Agreement are for the convenience of the parties only and shall in no manner be construed as a part of this Agreement or used in the construction or interpretation hereof.

**9.8    Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and which together shall constitute one and the same agreement.

**9.9    Electronic or Facsimile Signatures.** Any party may effect the execution and delivery of this Agreement and related documents by signing the same and sending a copy thereof by e-mail or by facsimile transmission. Facsimile signatures or electronically imaged signatures, including but not limited to .pdf files, shall be treated in all respects as an original instrument bearing an original signature, and shall be a valid and binding Agreement fully admissible under state and federal rules of evidence. The parties hereto agree that the possession of an executed and delivered electronic version of this Agreement or any other document shall constitute possession of this Agreement.

**9.10    Governing Law.** This Agreement shall be interpreted and construed and governed in accordance with the laws of the Commonwealth of Virginia, without giving effect to principles of conflicts of laws.

**9.11    Notices.** Any notices or other communications required or permitted under this Agreement must be in writing and shall be sufficiently given if addressed to the address set forth below the signatures hereto or such other address as shall be furnished in writing by any such party. This notice or communication shall be deemed to have been given:

(a)    upon delivery, if personally delivered to a party;

(b)    one (1) business day after the date of dispatch, if by facsimile or other electronic transmission;

(c)    one (1) business day after deposit, if delivered by a nationally recognized courier service offering guaranteed, overnight delivery; or

(d)    three (3) business days after deposit in the United States mail, certified mail, postage prepaid, return receipt requested at the addresses appearing below.

**9.12    Costs and Expenses.** In the event STM pursues any action at law or equity to enforce any obligation of Loan Officer under this Agreement, and STM substantially prevails, all STM costs and expenses of such litigation, including reasonable attorney fees, shall be reimbursed by the Loan Officer.

**9.13 Choice of Forum and Venue.** With respect to any controversy, argument or claim arising out of or relating to this Agreement, or any breach thereof (including, but not limited to, a request for emergency relief) or any tort claim among the parties, the parties hereby consent to the sole and exclusive jurisdiction and venue of the Circuit Courts of the Cities of Virginia Beach and Norfolk, Virginia and the U.S. District Court for the Eastern District of Virginia, Norfolk Division, and waive personal service of any and all process upon them and consent that all such service of process made by registered or certified mail directed to them at the address stated herein and service so made shall be deemed to be completed five (5) days after mailing. The parties waive trial by jury and waive any objection to jurisdiction, venue or inconvenient forum of any action instituted hereunder and agree not to assert any defense based on lack of jurisdiction, venue or forum.

**9.14 Successors.** This Agreement binds and inures to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.

**9.15 Assignment.** Loan Officer may not assign this Agreement or any of its rights or interests under this Agreement, or any of its obligations or liabilities under this Agreement. Any such purported assignment by Loan Officer is void. STM shall have the right to assign this Agreement.

[*Signature page follows.*]

By signing below, the Loan Officer certifies that they have read the 2022 Southern Trust Mortgage Loan Officer Compensation Plan.

*Grace White*
_____
Loan Officer
Address: 311 37th St
_____
　　　　　Norfolk, VA 23508
_____

_____

 Grace White
_____
Printed Name


**SOUTHERN TRUST MORTGAGE, LLC**


_____
President
Address: 295 Bendix Rd.
_____
　　　　　Suite 400
_____
　　　　　Va. Beach, VA 23452
_____



████████████████████████████████████

**From:** Reggie Register <reggie@movement.com>
**Sent:** Friday, September 20, 2024 11:16:47 AM
**To:** Katie Brinson <katie.brinson@movement.com>; Grace White <gmwteacher@gmail.com>
**Subject:** RE: HR docs

Hi Grace,

Thank you so much for visiting with us yesterday. I have sent your check and W-2 to our financial analyst to see what we can offer you. I will let you know.



**Reggie Register** | Market Leader
NMLS: 92405

**Office** (757) 696-2166
**Mobile** (757) 696-2166
**Fax** (757) 214-6917

575 Lynnhaven Parkway, Suite 100, 101
Virginia Beach, Virginia 23452
https://movement.com/lo/Reggie-Register/



Have I made you a **raving fan** today? If so, please email ravingfans@movement.com.
Need to send me sensitive information via email? Click here.
Movement Mortgage has implemented Proofpoint Email Encryption Service. To learn more, click here.

VA-MLO-4272VA, NC-I-121292 | Movement Mortgage, LLC supports Equal Housing Opportunity. NMLS ID# 39179 (www.nmlsconsumeraccess.org) | 877-314-1499. Movement Mortgage, LLC is licensed by VA # MC-5112 and NC # L-142670. Interest rates and products are subject to change without notice and may or may not be available at the time of loan commitment or lock-in. Borrowers must qualify at closing for all benefits. "Movement Mortgage" is a registered trademark of the Movement Mortgage, LLC, a Delaware limited liability company. 8024 Calvin Hall Road, Indian Land, SC 29707.

Please be aware that e-mail is not a secured communication vehicle, and that others may in certain circumstances be able to view its contents. As a result, while we are happy to provide this information by e-mail, we do not conduct actual business transactions by e-mail. Please contact the sender directly if you have any concerns about this message. All loans subject to credit approval and property appraisal. This communication is confidential and propriety business communication. It is intended solely for the use of the designated recipients(s). If this communication is received in error, please contact the sender and delete this communication.



---

**From:** Katie Brinson <katie.brinson@movement.com>
**Sent:** Friday, September 20, 2024 11:15 AM
**To:** Grace White <gmwteacher@gmail.com>; Reggie Register <reggie@movement.com>
**Subject:** RE: HR docs

Thank you so much!! We will review these for you

Have an awesome weekend!

---

**From:** Grace White <gmwteacher@gmail.com>
**Sent:** Thursday, September 19, 2024 9:20 PM
**To:** Katie Brinson <katie.brinson@movement.com>; Reggie Register <reggie@movement.com>
**Subject:** FW: HR docs

Hello there!
Here are the documents requested. Please let me know if you need anything else. I will be working on getting access to my database.
Thank you!

Sent from Mail for Windows

---

**From:** Grace White
**Sent:** Thursday, September 19, 2024 9:09 PM
**To:** gmwteacher@gmail.com
**Subject:** docs





## The Darien Pearce Team

**Office** 757-704-4046
**Mobile** 757-403-0814
**eFax** 866-422-8458

[?] Email me
[?] My Website
[?] My Reviews

**Location**

295 Bendix Road, Suite 400
Virginia Beach, VA 23452





### If we earned your TRUST, [%20]Tell A Friend!

Southern Trust Mortgage, LLC NMLS #2921 (http://www.nmlsconsumeraccess.org) lends in the following states: District of Columbia - #MLB-2921 | Delaware #036386 | Maryland | North Carolina #205483 | Pennsylvania #94064| South Carolina | Tennessee | West Virginia #ML-34191 | Virginia #MC7387 | Florida MLD #2151; Southern Trust Mortgage, LLC d/b/a Southern Residential Lending in the following states: Georgia #16579 | New Jersey Licensed by the N.J. Department of Banking and Insurance. By refinancing a consumers existing loan, the consumers total finance charges may be higher over the life of the loan.