IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **SOUTHERN TRUST MORTGAGE, LLC**<br><br>　　　　　　**Plaintiff,**<br><br>v.<br><br>**MOVEMENT MORTGAGE, LLC**<br><br>　　　　　　**Defendant.** | Case No. 2:24-cv-00653 |

**DEFENDANT MOVEMENT MORTGAGE, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF SOUTHERN TRUST MORTGAGE, LLC'S AMENDED COMPLAINT**

　　　　Defendant Movement Mortgage, LLC ("Movement") submits this Memorandum in Support of its Motion to Dismiss Plaintiff Southern Trust Mortgage, LLC's ("Southern Trust") Amended Complaint. In support, Movement states as follows:

**I.　　Introduction**

　　　　Southern Trust claims that Movement misappropriated Southern Trust's trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA") and Virginia Uniform Trade Secrets Act ("VUTSA"), aided and abetted Grace White in her breach of fiduciary duties owed to Southern Trust, or in the alternative is jointly liable for that breach, tortiously interfered with Southern Trust's business expectancies, and conspired with Ms. White under Virginia and common law to harm Southern Trust's interests. However, these claims must fail.

　　　　To begin, Southern Trust fails to allege that Movement ever acquired, disclosed, or used the trade secrets Ms. White knew about. Southern Trust instead relies on Ms. White's use of this knowledge without ever alleging that Movement acquired the information. Southern Trust

therefore fails to sufficiently plead its misappropriation of trade secrets claims. Further, neither the common law nor any Virginia statute recognizes a tort for aiding and abetting a breach of fiduciary duty. As the Supreme Court of Virginia has never recognized that such cause of action exists under Virginia law, this claim must be dismissed. At the same time, Movement cannot be held jointly liable for a breach of Ms. White's fiduciary duty, as her employment contracts are the source of the duties allegedly violated.

Southern Trust also fails to adequately allege a claim of tortious interference with business expectancies because the Complaint says nothing about whether Southern Trust entered into any contracts with its purported customers or whether there was a reasonably certain likelihood that any of these contracts would be executed. Finally, Southern Trust cannot maintain a conspiracy claim where there is no actionable claim for the underlying wrong alleged. As Southern Trust has dismissed all claims against Ms. White and Movement argues that the remaining claims should be dismissed as well, Southern Trust's conspiracy claims also fail.

For these reasons, Movement asks this Court to grant its Motion and dismiss Southern Trust's Amended Complaint.

## II.     Statement of Facts

On or about February 15, 2022, Ms. White began working as a Loan Officer at Southern Trust's Virginia Beach, Virginia location. Am. Compl. ¶ 20. "As a material term and as consideration for employment with Southern Trust," Ms. White entered into both an Employment Agreement and Confidentiality Agreement with Southern Trust. Am. Compl. ¶ 21. In doing so, Ms. White agreed to refrain from disclosing Southern Trust's confidential information; soliciting Southern Trust's employees, customers, and potential customers; and competing with Southern Trust in the same market. Am. Compl. ¶¶ 21–36; Am. Compl. Exs. A–B. Southern Trust asserts

that "[b]ut for White having signed the Employment Agreement and Confidentiality Agreement," it would not have expended resources on training her or trusted her with the work of a Loan Officer. Am. Compl. ¶ 52.

On or about September 12, 2024, Ms. White began exploring employment opportunities at Movement. Am. Compl. ¶ 54. Southern Trust and Movement are competitors within the mortgage industry. Am. Compl. ¶¶ 63–64. During this process, Ms. White was asked to provide any relevant employment documents to Reggie Register, a Market Leader at Movement. Am. Compl. ¶¶ 54, 56. On or about September 19, 2024, Ms. White emailed her Employment and Confidentiality Agreements to Mr. Register, along with several other documents. Am. Compl. ¶ 54. On or about October 15, 2024, Movement extended an offer of employment as a Loan Officer in its Virginia Beach, Virginia location to Ms. White. Am. Compl. ¶¶ 58, 67.

On or about October 16, 2024, Ms. White asked Mr. Register "what to tell her current Southern Trust customers who had already filled out and submitted loan applications with Southern Trust." Am. Compl. ¶ 69. Mr. Register allegedly instructed Ms. White to share with her clients "that had not passed the underwriting phase a link to his information at Movement" so he could "get the[m] set up in the system at Movement," before Ms. White started her work there. Am. Compl. ¶ 70. However, this advice was limited to clients who were "not 'triggered,'" meaning that they were not yet under contract. Am. Compl. Ex. E, at 4–5. Before resigning from her position at Southern Trust on October 16, 2024, Ms. White emailed at least seven of these customers. Am. Compl. ¶¶ 61, 69, 71.

Southern Trust asserts that Ms. White emailed these customers to request that they complete applications with Movement through Mr. Register, who was allegedly "aware that [Ms. White was] sending [them] over," but was not included on the emails. Am. Compl. ¶¶ 73–75; Am.

3

Compl. Ex. C. She also told the customers in these emails not to "worry about any documents because [she had] them saved and w[ould] upload them to [their] new application." Am. Compl. ¶ 75; Am. Compl. Ex. C. Southern Trust alleges that, to do this, Ms. White downloaded files from her company-issued computer onto an external USB drive, which she retained after resigning. Am. Compl. ¶¶ 77–78.

On or about October 18, 2024, Southern Trust issued cease-and-desist letters to Ms. White and Movement regarding Ms. White's actions and her employment with Movement. Am. Compl. ¶¶ 77, 89. Upon receiving its letter, Movement instructed Ms. White to immediately return the USB drive to Southern Trust, which she did. Am. Compl. ¶¶ 77, 89. Southern Trust asserts that the USB drive contained "5,109 total files on the thumb drive, including confidential documents on loan programs, training materials, appraisals, custom forms, templates, marketing materials, Southern Trust's income calculator for self-employed borrowers, and White's customer leads." Am. Compl. ¶ 78.

Southern Trust further asserts that "Movement was aware of, requested, and facilitated White in using Southern Trust's trade secrets, at least in that Register asked her to direct Southern Trust customers to apply for a mortgage with him." Am. Compl. ¶ 83. Southern Trust alleges that "[t]hese are lost leads, loans, and potential loans that Southern Trust would have otherwise had the opportunity to underwrite and close but for the interference by Movement." Am. Compl. ¶ 86. Southern Trust also claims that Movement, through Mr. Register, was aware that any applications received due to Ms. White's communications would be from Southern Trust's current customers, and that Ms. White was engaging in conduct that violated the terms of her agreements with Southern Trust. Am. Compl. ¶ 87.

Southern Trust filed this action on November 4, 2024, alleging that Ms. White and Movement's actions "reveal[ed] the[ir] intention … to compete with Southern Trust by using Southern Trust's Confidential Information and trade secrets to aggressively solicit and divert Southern Trust's business." Compl. ¶ 91. Southern Trust claimed that these actions resulted in "the loss of potential customers, and, generally, lost profits." Compl. ¶ 92. Southern Trust accordingly asserted: (1) breach of contract, misappropriation of trade secrets, and breach of fiduciary duty claims against Ms. White; (2) an aiding and abetting breach of fiduciary duty claim against Movement; and (3) tortious interference with business expectancy and conspiracy claims against both Ms. White and Movement. On or about January 6, 2025, however, Southern Trust voluntarily dismissed its claims against Ms. White with prejudice. *See* ECF No. 16. On or about January 21, 2025, Southern Trust filed an Amended Complaint. *See* ECF No. 20. In response, Movement now moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

**III.  Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet the plausibility standard, the allegations in the complaint "must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Where a plaintiff pleads facts that are only "consistent with a defendant's liability," the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Thus, a reviewing court must make the "context-specific" determination of whether a complaint states a

5

plausible claim for relief by "draw[ing] on its judicial experience and common sense." *Id.* at 679. In doing so, the court need not accept unsupported legal conclusions or legal conclusions couched as factual allegations. *Id.* at 678–79; *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). These sorts of conclusory allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678–79. Any complaint that fails to state a plausible claim for relief must be dismissed. *Id.*

## IV.   Legal Argument

In the Amended Complaint, Southern Trust brings claims against Movement misappropriating Southern Trust's trade secrets under DTSA and VUTSA, aiding and abetting Ms. White's breach of her fiduciary duties to Southern Trust or, in the alternative, being jointly liable for such a breach, tortiously interfering with Southern Trust's business expectancies, and conspiring with Ms. White to interfere with Southern Trust's interests. However, for the reasons stated below, these claims have no merit and the Court should dismiss this matter.

### A.   Southern Trust fails to properly allege a misappropriation of trade secrets claim under federal or state law.

Southern Trust first claims that Movement misappropriated its trade secrets in violation of DTSA and VUTSA by "instruct[ing] White to use these trade secrets on its behalf with knowledge of its trade secret status," Am. Compl. ¶¶ 105, 120, but says nothing about whether Movement acquired, disclosed, or used that information. Because of this, Southern Trust has failed to properly allege its misappropriation of trade secrets claims.

To allege a claim under VUTSA, a plaintiff must prove: "(1) the existence of a 'trade secret,' and (2) the 'misappropriation' of that trade secret by the defendant." *Hampton Rds. Connector Partners v. Land to Sand Site Servs., Inc.*, No. 2:23cv174, 2023 U.S. Dist. LEXIS 222687, at *16 (E.D. Va. Oct. 17, 2023). Those same elements must be alleged to prove a violation of the DTSA, but a plaintiff must also show that "the trade secret implicates interstate or foreign

6

commerce." *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (citing 18 U.S.C. § 1836(b)(1)). The DTSA defines misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [ ] disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5). Similarly, misappropriation under VUTSA can only be alleged by pleading two elements: "(1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff." *Space Sys./Loral, LLC*, 306 F. Supp. 3d at 855. "While phrased differently, these standards are similar in effect: Defendants must have 'acquired,' 'disclosed,' or 'used' a trade secret, through 'improper means.'" *Hampton Rds. Connector Partners*, 2023 U.S. Dist. LEXIS 222687, at *28.

To support its trade secrets claims, Southern Trust asserts that Mr. Register instructed Ms. White to give her clients his link where they could apply for a loan with Movement "while she was still working at Southern Trust." Am. Compl. ¶ 70. In her communications with these applicants on October 16, 2024, Ms. White shared that Mr. Register was aware she was sending them over but did not include Mr. Register on those emails. Am. Compl. ¶¶ 73–75; Am. Compl. Ex. C. Ms. White further shared with her potential clients that she had saved all of their documents necessary for the application process. Am. Compl. ¶ 75; Am. Compl. Ex. C. Indeed, Ms. White retained several documents containing allegedly confidential information on a flash drive after her resignation. Am. Compl. ¶¶ 77–78. However, Ms. White returned this flash drive to Southern Trust

7

at Movement's direction as soon as Movement discovered its existence through the October 18, 2024 cease and desist letters. Am. Compl. ¶¶ 77, 89.

Notably, Southern Trust does not claim that Movement itself ever acquired, disclosed, or used the alleged trade secrets. Southern Trust instead relies on an assertion that Movement instructed *Ms. White* to use the alleged trade secrets on Movement's behalf. Am. Compl. ¶¶ 105, 120. But Southern Trust neglects to allege at any point in its Amended Complaint that the information used by Ms. White was actually disclosed to or used by Movement. Mr. Register was allegedly aware that Ms. White would be circulating his link but was not included on any of the emails to Ms. White's clients, and thus would not have known about any confidential customer information. Am. Compl. ¶¶ 73–75; Am. Compl. Ex. C. Further, Southern Trust does not allege that Movement ever accessed or used any of the confidential information or documents contained on Ms. White's flash drive. Southern Trust in fact admits that the flash drive was promptly returned after Movement was notified of its existence on October 18, 2024. Am. Compl. ¶¶ 77, 89. Finally, Southern Trust does not even allege that Movement actually received applications from those Ms. White spoke to before resigning from Southern Trust.

Southern Trust accordingly fails to properly allege a key element of its misappropriation claim: that Movement ever acquired, disclosed, or used any of Southern Trust's trade secrets. Southern Trust's claims for misappropriation of trade secrets under DTSA and VUTSA must therefore be dismissed.

### B. Virginia law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty.

Southern Trust next claims that Movement aided and abetted Ms. White's breach of her fiduciary duties to Southern Trust by "creating and participating in a plan to divert Southern Trust's customers for the use and benefit of Movement." Am. Compl. ¶ 130. To support its claim, Southern

8

Trust avers that Mr. Register was acting as Movement's agent when he allegedly collaborated with Ms. White to solicit Southern Trust's loan applicants during her employment with Southern Trust. Am. Compl. ¶¶ 130–31. However, aiding and abetting a breach of fiduciary duty is not a recognized claim in Virginia and should be dismissed.

While Southern Trust argues that the Supreme Court of Virginia has "establish[ed] the elements" of aiding and abetting a breach of fiduciary duty, Am. Compl. ¶ 125, that court has only "assumed *arguendo*" that such a cause of action is recognized under Virginia law. *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 409 (Va. 2004) (cleaned up); *see Uplinger v. Alexandria Overlook Condo. Council of Co-Owners*, 2018 Va. Unpub. LEXIS 14, at *4 (Va. 2018). Because the Supreme Court of Virginia has not, in fact, recognized this cause of action, courts within the Eastern District of Virginia consistently dismiss such claims, and this Court should follow suit.

In Virginia, "[n]either the common law nor any statutes establish a separate cause of action for aiding and abetting a breach of fiduciary duty." *Keil v. Seth Corp.*, No. 3:21cv153, 2021 U.S. Dist. LEXIS 212042, at *39 (E.D. Va. Nov. 2, 2021). As the Fourth Circuit has held, federal courts are called to "apply state law, not … to participate in an effort to change it." *Burris Chem. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993). Accordingly, "[b]ecause neither the Supreme Court of Virginia nor the Virginia General Assembly has adopted an independent cause of action for aiding and abetting a tort," a plaintiff's claim for "aiding and abetting breach of fiduciary duty … must be dismissed." *Infinity Tech., LLC v. Burney*, No. 1:19-cv-1507, 2020 U.S. Dist. LEXIS 206604, at *15–16 (E.D. Va. June 4, 2020); *see also Keil*, 2021 U.S. Dist. LEXIS 212042, at *44 (declining to recognize cause of action for aiding and abetting breach of fiduciary duty); *Microstrategy Servs. Corp. v. OpenRisk, LLC*, No. 1:14cv1244, 2015 U.S. Dist. LEXIS 32719, at *3 (E.D. Va. March

9

17, 2015) (same); *Calderon v. Aurora Loan Serv.*, No. 1:10cv129, 2010 U.S. Dist. LEXIS 55602, at *6 (E.D. Va. June 3, 2010) (same).

For these reasons, the Court should dismiss Southern Trust's claim against Movement for aiding and abetting Ms. White's alleged breach of her fiduciary duty.

> **C. Southern Trust cannot adequately plead breach of fiduciary duty against Movement as a joint tortfeasor because the source of the alleged duty arises from Ms. White's employment contract.**

In the alternative to its aiding and abetting theory, Southern Trust also claims that Movement is jointly liable for Ms. White's breach of her fiduciary duties to Southern Trust. Am. Compl. ¶ 125. While multiple courts have found that Virginia does not recognize "a separate tort for aiding and abetting a breach of fiduciary duty," several have held that Virginia law *does* "allow[] for joint tortfeasor liability." *See, e.g.*, *Keil*, 2021 U.S. Dist. LEXIS 212042, at *44-45. Indeed, plaintiffs may allege such a claim "if a defendant: (1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it." *All. Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12cv701, 2013 U.S. Dist. LEXIS 4708, at *16 (E.D. Va. Jan. 11, 2013). Accordingly, it is implicit within this cause of action that a breach of fiduciary duty must have occurred in the first place.

To establish a breach of fiduciary duty under Virginia law, a plaintiff must allege "(1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) subsequent damages attributable to the breach." *DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 586 (E.D. Va. 2014). "Without a legal duty there can be no cause of action for an injury," *Jeld-Wen, Inc. v. Gamble*, 501 S.E.2d 393, 396 (Va. 1998), and therefore Southern Trust must first show that Ms. White had such a duty to Southern Trust to adequately allege that Movement is jointly liable for the breach of Ms. White's fiduciary duties. Southern Trust attempts to do this by asserting that, as an employee, Ms. White owed the company a fiduciary duty of loyalty. Am. Compl. ¶ 126.

10

Southern Trust then alleges that Ms. White violated this duty "by secretly diverting Southern Trust's borrowers to Movement, misappropriating Southern Trust's Confidential Information and trade secrets, and by converting and disclosing confidential borrower information to Movement and by soliciting, either directly or indirectly, Southern Trust's borrowers away from Southern Trust and towards Movement, one of Southern Trust's competitors." Am. Compl. ¶ 127.

Southern Trust further asserts that Ms. White's actions violated her *contractual* obligations to Southern Trust as well. Am. Compl. ¶ 53. Under Virginia law, however, "tort liability cannot be imposed upon a contracting party for failing to do a contractual task," meaning that "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 82, 834 S.E.2d 244, 255 (2019). As such, "[t]o determine whether a claim is best heard in contract or tort, a court must determine the source of the duty violated." *1004 Palace Plaza, LLC v. Ebadom Food, LLC*, No. 1:18-cv-1376, 2019 U.S. Dist. LEXIS 118320, at *2 (E.D. Va. July 15, 2019).

In *Augusta Mut. Ins. Co. v. Mason*, the Supreme Court of Virginia held that a plaintiff failed to assert a valid claim for breach of fiduciary duty because "[a]ny fiduciary duty allegedly breached … existed solely because of the contractual relationship between [plaintiff] and [defendant], and in turn, [defendant]'s employee." 645 S.E.2d 290, 295 (Va. 2007). In doing so, that court determined that the duties "allegedly violated [we]re nothing more than the fiduciary duties an agent owe[d] to his or her principal," and that these duties were "incorporated in every contract between a fiduciary and his principal." *Id.* at 295 (internal quotation marks omitted). The court thus concluded that, "[b]ut for the existence of the Agency Agreement, neither [defendant's employee] nor [defendant] would have owed any fiduciary duty

11

to Augusta Mutual." *Id.* In applying *Augusta Mutual*'s reasoning, another Virginia court concluded that an employee's fiduciary duties to its employer arose "out of the contractual employer-employee relationship" because, "[i]n the absence of their employment … the defendants would have had none of the duties pleaded." *Norfolk Cmty. Servs. Bd. v. Berardi*, 84 Va. Cir. 310, 315 (2012). As a result, the court dismissed the asserted tort claims because the duties alleged instead arose from the contract between the parties. *See id.*

The Amended Complaint frames Ms. White's conduct as breaches of her fiduciary duties when they are, in reality, actions that Ms. White agreed not to take pursuant to her Employment and Confidentiality Agreements. *See* Am Compl. ¶ 53; Am. Compl. Exs. A–B. In signing these agreements, Ms. White expressly agreed "not to disclose" Southern Trust's "confidential information" or "trade secrets," "solicit" Southern Trust's "customers" and "potential customers," or otherwise "compete" with Southern Trust both during and after her employment ended. Am. Compl. Ex. B, at 1–2. Indeed, the Confidentiality Agreement notes that Ms. White agreed to such terms in consideration for her employment with Southern Trust. *See id.* Southern Trust further admits in the Amended Complaint that, "[b]ut for White having signed the Employment Agreement and Confidentiality Agreement, including the nondisclosure, non-solicitation and non-competition covenants," it would not have trusted her in as a Loan Officer. Am. Compl. ¶ 52. Because the alleged duties arose "out of the contractual employer-employee relationship" between Ms. White and Southern Trust and would not have been owed to Southern Trust "[i]n the absence of [Ms. White's] employment," the source of those duties is the Employment and Confidentiality Agreements. *See Berardi*, 84 Va. Cir. at 315.

As the true source of Ms. White's obligations to Southern Trust were her employment agreements and not the fiduciary duties alleged, *see Augusta Mutual*, 274 Va. at 208, Movement

12

cannot be held jointly liable for the breach of such duties. For these reasons, Southern Trust cannot state a valid claim against Movement for breach of fiduciary duty based on joint tortfeasor liability.

### D. Southern Trust does not adequately plead tortious interference with its business expectancies.

Southern Trust next brings a cause of action for tortious interference with business expectancies against Movement. Am. Compl. ¶¶ 133–41. Southern Trust first contends that it had "a reasonable expectancy that it would receive business from [Ms.] White in her role as a Loan Officer," Am. Compl. ¶ 135, and that Movement "knew that Southern Trust expected to benefit from … all transactions that [Ms.] White oversaw in her role as a Loan Officer for Southern Trust," Am. Compl. ¶ 136. The company claims that Movement intentionally interfered with these business expectancies by "scheming to divert customers from Southern Trust to Movement," Am. Compl. ¶ 137, and that, absent this interference, "Southern Trust would have continued in the business relationships with these prospective customers and would have realized its expectancy of business and economic gain from these relationships," Am. Compl. ¶ 138. Even accepting these allegations as true, Southern Trust fails to plead a viable cause of action for tortious interference with its business expectancies.

To establish a claim for tortious interference with a business or contract expectancy under Virginia law, a plaintiff must plead:

   (1) the "existence of a business relationship or expectancy with a probability of future economic benefit to plaintiff";

   (2) the "defendant's knowledge of the relationship or expectancy";

   (3) "a reasonable certainty" that the plaintiff "would have continued in the relationship or realized the expectancy absent defendant's intentional misconduct";

   (4) "interference by improper methods"; and

   (5) "damages resulting from that interference."

*Goulmamine v. CVS Pharmacy*, 138 F. Supp. 3d 652, 672 (E.D. Va. 2015). Southern Trust pleads neither the existence of a business expectancy with a probability of future economic benefit nor any facts showing a reasonable certainty that the expectancy would have been realized absent Movement's actions.

"[T]he Supreme Court of Virginia has made clear that 'mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action[;]' rather, the proof must establish a 'probability' not a 'possibility' of future economic benefit." *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1019 (E.D. Va. 2018) (alterations in original) (quoting *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 897 (1997)). In *Northstar Aviation*, another court in this District concluded that the plaintiffs' allegation of interference with a "potential sale of helicopters" was not a "reasonably certain expectancy as required to state a claim for tortious interference with business expectancy." 332 F. Supp. 3d at 1019. The court noted that the complaint lacked any allegations of plaintiffs entering into a contract or a "reasonably certain likelihood that any such contract would go through." *Id.* The court accordingly held that "plaintiffs have failed to state a claim of tortious interference with business expectancy." *Id.*

Here, Southern Trust spends the first half of the Amended Complaint referring to "customers," but later admits that the alleged business expectancies were uncertain—that it "would have otherwise *had the opportunity to underwrite and close* but for the interference" of Ms. White and Movement. Am. Compl. ¶ 86 (emphasis added); *see also* Am. Compl. ¶ 91 ("The unlawful conduct detailed above has damaged Southern Trust, causing the loss of potential customers."); Am. Compl. ¶ 137 ("Movement intentionally and tortiously interfered with Southern Trust's business relationships with its prospective customers by scheming to divert customers from

14

Southern Trust to Movement."); Am. Compl. ¶ 138 ("Upon information and belief, absent Movement's intentional misconduct, Southern Trust would have continued in the business relationships with these prospective customers and would have realized its expectancy of business and economic gain from these relationships."); Am. Compl. Ex. E at 3–4 ("Mr. Register came up with the idea to divert those Southern Trust clients to Movement. He suggested that, as long as the clients were not 'triggered,' then I could give them a link to his information at Movement. Mr. Register explained that 'triggered' referred to loans that were past the prequalification stage, and the client was under contract and moving forward with locking in an interest rate and prepping for underwriting. Triggered loans would have to stay with Southern Trust. For the loans that were not triggered, Mr. Register would get the clients set up in the system at Movement, and when I started work, I could pick up the application process with those clients.").

Southern Trust does not allege that it entered into any contracts with its so-called customers or that there was any "reasonably certain likelihood that any such contract would go through." *Northstar Aviation*, 332 F. Supp. 3d at 1019. Southern Trust thus fails to adequately plead the first and third elements of its claim. Because Southern Trust does not plead a valid claim of tortious interference with business expectancies, that claim must be dismissed.

> **E.  Southern Trust does not adequately plead its statutory business conspiracy and common law conspiracy claims.**

Southern Trust lastly brings common law and statutory business conspiracy claims against Movement, but these claims are similarly deficient. Am. Compl. ¶¶ 142–54. Southern Trust alleges that Ms. White and Movement "had an agreement, express or implied, to undertake the acts of solicitation, breaching [Ms.] White's fiduciary duties, [ ] tortiously interfering with Southern Trust's business," and misusing Southern Trust's confidential information and trade secrets. Am.

15

Compl. ¶¶ 145–46; *see* Am. Compl. ¶ 152.[1] To prevail "in a civil conspiracy action both under the common law and under Virginia Code § 18.2-499, a plaintiff must establish that at least one member of the conspiracy, in agreement with another member, committed an act that was itself wrongful or tortious, and that such act damaged the plaintiff." *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 92 (4th Cir. 2019). For a statutory business conspiracy claim, a plaintiff must also allege "legal malice," meaning that the "defendant acted intentionally, purposefully, and without lawful justification" where "at least one of the purposes of the conspiracy" is "to injure the plaintiff's reputation, trade, or business." *Schlegel v. Bank of America, N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) (emphasis omitted).

Southern Trust fails to allege that any of the unlawful acts used as the basis for its conspiracy claims were actually committed by Movement. While Southern Trust initially asserted claims against Ms. White for breach of contract, misappropriation of trade secrets, breach of fiduciary duties, tortious interference with business expectancies, statutory business conspiracy, and common law conspiracy, it has since dismissed these claims. *See* ECF No. 16. As argued above, Southern Trust also fails to state any valid claim for misappropriation of trade secrets, aiding and abetting breach of fiduciary duty, joint tortfeasor liability for breach of fiduciary duty, and tortious interference with business expectancies against Movement. "[W]here there is no actionable claim for the underlying alleged wrong, plaintiff cannot maintain a claim for civil conspiracy." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007); *see also Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317–18 (Va. 2014) ("[C]onspiracy allegations … do not set forth an independent cause of action; instead, such allegations are sustainable only

---

[1] Southern Trust's common law conspiracy claim additionally alleges an agreement to violate Ms. White's "contractual obligations." Am. Compl. ¶ 152.

after an underlying tort claim has been established.").[2] Accordingly, if this Court dismisses the claims against Movement in Counts I-IV, it must also dismiss the conspiracy claims brought by Southern Trust.

Southern Trust therefore fails to state a valid conspiracy claim, and those claims must be dismissed.

**V.      Conclusion**

For all these reasons, Movement respectfully requests that the Court grant its Motion to Dismiss.

Dated: February 4, 2025                                    Respectfully submitted,

                                                            **MOVEMENT MORTGAGE, LLC**

                                                            By: _____/s/_____
                                                            Kristina H. Vaquera, Esq. (VSB No. 43655)
                                                            William B. Jackson, Esq. (VSB No. 84012)
                                                            Gabrielle Bohannon, Esq. (VSB No. 98106)
                                                            Jackson Lewis, P.C.
                                                            500 E. Main Street, Suite 800
                                                            Norfolk, Virginia 23510
                                                            Telephone: (757) 648-1445
                                                            Facsimile: (757) 648-1418
                                                            kristina.vaquera@jacksonlewis.com
                                                            billy.jackson@jacksonlewis.com
                                                            gabrielle.bohannon@jacksonlewis.com
                                                            *Counsel for Defendant Movement Mortgage, LLC*

---

[2] Further, because Southern Trust no longer asserts a breach of contract claim against Ms. White, *see* ECF No. 16, the company cannot assert a conspiracy to violate her "contractual obligations," Am. Compl. ¶ 152.