**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

SOUTHERN TRUST MORTGAGE, LLC

      *Plaintiff,*

    v.

MOVEMENT MORTGAGE, LLC

      *Defendant.*

Civil Action No. 2:24-cv-000653

:

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Southern Trust Mortgage, LLC ("Southern Trust"), by and through its undersigned counsel, hereby files its Response in Opposition to Defendant Movement Mortgage LLC's ("Movement") Motion to Dismiss Plaintiff's Amended Complaint and states as follows:

**I.    INTRODUCTION**

Movement engaged in a calculated scheme to interfere with Southern Trust's business by directing Grace White ("White") a loan officer at Southern Trust, to solicit and divert Southern Trust's customers to Movement while White was still employed by Southern Trust. In so doing, Movement aided and abetted White in breaching both her fiduciary duties and her contractual obligations to Southern Trust, obligations of which Movement was fully aware because White had already provided her agreement to Movement. Following the instructions and with the full collaboration of Movement's Market Leader, Reggie Register ("Register"), White used trade secret and confidential information to direct customers who had already applied for mortgage loans with Southern Trust to move their applications to Register at Movement. White also secretly downloaded over 5,000 confidential Southern Trust documents onto a thumb drive without

consent, which she took with her to Movement after she resigned from Southern Trust. Southern Trust believes that Movement and Register then used that information to usurp Southern Trust's business opportunities with current and prospective loan customers.

Movement's challenges to the sufficiency of the Amended Complaint's claims are baseless. First, Movement's assertions that Southern Trust failed to allege that Movement acquired, used, or disclosed Southern Trust's trade secrets glosses over Movement's vicarious liability for the misappropriation conducted by its agents: Register and then White. Taking the allegations as true, Movement used White's information with the knowledge that she had acquired it using improper means, which is enough to state a claim for trade secret misappropriation.

Southern Trust's claim for aiding and abetting a breach of a fiduciary duty survives dismissal because Virginia courts have repeatedly recognized this cause of action. In the alternative, this claim should still move forward since Southern Trust has stated a claim for joint tortfeasor liability. Further, the tortious interference claim is sufficient as Southern Trust established that the mortgage loans and applications with the customers White solicited at Movement's behest constituted a business relationship with the probability of future economic benefit that Southern Trust had a reasonable certainty would have continued but for Movement's interference. Finally, Southern Trust has stated claims for business and civil conspiracy because it sufficiently pled that Movement committed the unlawful acts at the heart of the conspiracy, such as trade secret misappropriation, aiding and abetting, and tortious interference. For these reasons, Southern Trust respectfully requests that this Court deny Movement's motion to dismiss the Amended Complaint.

## II. FACTUAL BACKGROUND

### A. Grace White's Employment With Southern Trust.

Southern Trust was founded in 1997 and operates as a provider of real estate financing solutions, offering its customers a variety of mortgage products. (Am. Compl., at ¶ 11.) On or about February 15, 2022, Southern Trust hired White to work as a Loan Officer at its corporate headquarters in Virginia Beach, Virginia, with no prior mortgage experience. (*Id*. at ¶ 39.) As a material term and as consideration for employment with Southern Trust, on February 15, 2022, Southern Trust and White executed the Employment Agreement and the Confidentiality Agreement (the "Agreements"). (*Id*. at ¶ 21; Ex. A, B.) By signing the Employment Agreement, White agreed that, during her employment with Southern Trust, she would only work for the benefit of Southern Trust, and "no other employer, lender, broker, or other entity." (*See*, Am. Compl. at Ex. A, Art. II 2.1(c)). She also agreed to "not engage in any way in any mortgage lending or brokering, loan processing or underwriting services…or other business or service of the same or similar nature, unless approved by [Southern Trust] in writing." *Id*.

The Confidentiality Agreement also contains the following restrictive covenant provisions, aptly titled: (1) Covenant Not to Divulge Company Confidential Information; (2) Non-Solicitation of Employees Covenant; (3) Non-Solicitation of Customers Covenant; (4) Non-Solicitation of Potential Customers Covenant; and (5) Non-Compete. (Am. Compl., Ex. B at ¶¶ 3, 5-8.) The Covenant Not to Divulge Company Confidential Information requires White, during her employment and during the Confidentiality Period, "to hold in strictest confidence and not to disclose to any person, firm or entity…and not to use or allow others to use it except in the support of the business of the Company, any Confidential Information..." (Am. Compl., Ex. B at ¶ 3.)

**B.** **Southern Trust's Confidential Information and Trade Secrets.**

As a mortgage lender, Southern Trust obtains and stores substantial amounts of non-public, sensitive customer information, including, but not limited to, names, addresses, employment information, social security numbers, salary information, credit information, credit card and bank account numbers, assets, liabilities, loan approval, loan status and loan denial, credit scores, account balances and other financial information (collectively "Confidential Information"), to help provide mortgage lending services to its customers. (*Id.* at ¶ 13.) Southern Trust also derives independent economic value from its prospective and current customer lists, loan applications, loan product offerings, pricing information, and communications with clients. Southern Trust develops its prospective and current customer lists by expending significant resources on compiling and maintaining them. (*Id.* at ¶¶ 14-15.) As such, Southern Trust considers its prospective and current customer lists, loan applications, loan product offerings, pricing information, and communications with clients to be its trade secrets. (*Id.* at ¶ 15.) Movement would have been well aware of the trade secret status of this information. Indeed, Movement itself successfully argued that its "training materials, lead lists and leads, non-public borrower financial and personal information[,] and pipeline reports,…loan information on borrowers, loan details…could constitute trade secrets under the DTSA." (*Id.* at ¶ 82, quoting, *Movement Mortg. LLC v. Summit Funding, Inc.,* No. 3:23-CV-00633-RJC-DCK, 2024 WL 57341, at \*7 (W.D.N.C. Jan. 4, 2024) (finding that Movement demonstrated a likelihood of success on its trade secret misappropriation and tortious interference claims)).

**C.** **Movement and White Conspired to Breach Her Fiduciary Duties, Steal Trade Secrets, and Interfere With Southern Trust's Business Relationships.**

On or around September 12, 2024, White began discussions with Katie Brinson, a Loan Officer, and Register, a Market Leader, both working at Movement's Virginia Beach, Virginia

office, to discuss a job opportunity at Movement. (Am. Compl., at ¶ 54; Ex. E, Declaration of Grace White ("White Decl.") at ¶ 4.) At Register's request, on September 19, 2024, White emailed Register and Brinson a copy of the Agreements. (Am. Compl., at ¶ 56, Ex. A.) Brinson and Register told White that they would review her documents and get back to her. (*Id.*) Thus, Movement had the Employment Agreement and Confidentiality Agreement before hiring White and was aware of the restrictions contained within it and extended an offer of employment to her. (*Id.* at ¶ 58.) On or about October 16, 2024, White abruptly resigned her employment to work for Movement as a Loan Officer – the same position she held at Southern Trust. (*Id.* at ¶ 61.)

On October 16, 2024, before she resigned, White and Register concocted a scheme to divert Southern Trust's clients to Movement. (*Id.* at ¶¶ 70-71.) **At Register's express direction and suggestions**, White emailed at least seven of her customers from her Southern Trust email address while she was still working at Southern Trust. (*Id.* at ¶¶ 71, 76.) Each of these customers either had active loan applications with Southern Trust, had pre-qualified for a mortgage loan with the company, or was a lead generated by Southern Trust. (*Id.* at ¶¶ 72.) In the emails, White directed the customers to apply via a link she included for loans at her "new company" to get the customer's loan application moved over to Movement while she "get[s] set up with [Movement] in the next couple of days." (*Id.* at ¶ 74; Ex. C.) White informed the customers that Register, a loan officer at Movement, would be taking the application and "is aware that I am sending you over." (Am. Compl., ¶ 75; See, Exhibit C (emphasis added).) White also assured the customers not to "worry about any documents because I have them saved and will upload them to your new application" indicating that White had saved the customer's confidential loan applications and supporting documents to use at Movement. (*Id.* at ¶ 75.) In fact, the plan was for Register to use this information to get the clients set up in the system at Movement, so that when White started work,

she could pick up the application process with those clients. (*Id.* at ¶ 70.) These are lost loans that Southern Trust would have otherwise had the opportunity to underwrite and close, but for the interference by White and her new employer, Movement. (*Id.* at ¶ 86.)

White had, in fact, downloaded customer files from her Southern Trust computer onto an external USB drive while she was still working for Southern Trust. (*Id.* at ¶ 77.) White also retained that drive (and the Confidential Information and trade secrets contained within) after she resigned. (*Id.*) Southern Trust determined that there were 5,109 total files on the thumb drive, including confidential documents on loan programs, training materials, appraisals, custom forms, templates, marketing materials, Southern Trust's income calculator for self-employed borrowers, and White's customer leads. (*Id.* at ¶ 78.) Also included on the thumb drive were screenshots White took to exfiltrate information from Southern Trust where Southern Trust's systems blocked printing or downloading, indicating that she was sophisticated and intentional in her actions. (*Id.* at ¶ 80.) Many of the contents of the thumb drive represent non-public, sensitive customer information that is commercially valuable to Southern Trust and that it expends significant effort in maintaining secrecy. (*Id.* at ¶ 81.) White's comments and actions, along with the actions of Register and Movement, demonstrate White's clear intent to use Southern Trust's Confidential Information and trade secrets to unfairly compete with Southern Trust. (*Id.* at ¶ 80.)

In the Amended Complaint, Southern Trust brings six claims against Movement: (1) violation of the Defend Trade Secrets Act, (2) violation of the Virginia Uniform Trade Secrets Act, (3) aiding and abetting breach of White's fiduciary duty, (4) tortious interference with prospective business relationships, (5) statutory conspiracy, and (6) civil conspiracy. (ECF No. 20.) On February 4, 2024, Movement moved to Dismiss the Amended Complaint. (ECF No. 23.)

**III.** **ARGUMENT AND CITATION OF AUTHORITY**

**A.** **Legal Standard**

Under Federal Rule of Civil Procedure 8(a)(2), "[a] complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). *Khoshaba v. Stilwell*, No. 2:24CV237, 2024 WL 4194801, at *8 (E.D. Va. Sept. 13, 2024). To survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Because a motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, a district court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Khoshaba*, 2024 WL 4194801, at *9 (citing *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotations omitted)). Southern Trust's Amended Complaint plainly meets this standard.

**B.** **Southern Trust Has Stated a Claim for Misappropriation of Trade Secrets Under the DTSA and the VUTSA.**

Movement attempts to avoid liability for its misappropriation of Southern Trust's trade secrets by asserting that Southern Trust only asserts that Movement instructed *Ms. White* to use the trade secrets. (ECF No. 23, p. 8.) Movement does not (and cannot) dispute that White misappropriated Southern Trust's trade secrets by acquiring them through improper means or that it was aware of the improper acquisition. Instead, Movement insists that Southern Trust does not

allege that Movement *itself* ever acquired, disclosed, or used the alleged trade secrets. (ECF No. 23, p. 8.) Movement also asserts that the Amended Complaint does not contain allegations that the information used by White was disclosed to or used by Movement, or that Movement ever accessed or used the information on the USB drive. (*Id.*) Lastly, Movement claims that Southern Trust does not allege that Movement actually received the applications for the seven customers White and Register conspired to solicit and divert to Movement. (*Id.*) Each of these arguments falls flat.

Under the DTSA, misappropriation occurs "when a person either (1) acquires a trade secret while knowing, or having reason to know, that the trade secret was acquired by improper means, or (2) uses or discloses the trade secret after acquiring it through improper means." *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 515 (E.D. Va. 2021) (citing 18 U.S.C. § 1839(5)(A)). "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A). Similarly, misappropriation under the VUTSA occurs when a defendant (1) acquires, discloses, or uses plaintiff's trade secret through improper means (without express or implied consent); and (2) "knew or had reason to know that its knowledge of the trade secret ***was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff.***" *Variable Annuity Life Ins. Co.*, 535 F. Supp. 3d at 513 (internal citations and quotations omitted) (emphasis added). Even if the defendant did not acquire the trade secret using improper means, "misappropriation can still exist if the defendant disclosed or used that secret." *Id.* Misappropriation does not require "theft" as "it can occur when an employee formerly entrusted with trade secret information uses or discloses that information" after the employment relationship ends. *OROS, Inc. v. Dajani*, No. 119CV351LMBIDD, 2019 WL 2361047, at *5 (E.D. Va. June 4, 2019).

Taking the allegations in the Amended Complaint as true, White engaged in textbook improper acquisition of Southern Trust's trade secrets when, on her way out of the door to work for a competitor, she downloaded 5,109 files containing confidential documents on loan programs and retained that information on a thumb drive without Southern Trust's express or implied consent. (Am. Compl, at ¶¶ 77-78.) Movement had reason to know that White owed a duty to Southern Trust to maintain the secrecy of the information she used to solicit customers and the files she retained on the USB drive because it was aware of her contractual obligation not to use, disclose, or retain that information on behalf of a third party. (Am. Compl, at ¶ 57.) Movement was especially aware of the trade secret status of this information and that White would have had to use improper means to acquire and retain this information after she resigned ***because it considers the same categories of information to be trade secrets.*** *Movement Mortg. LLC*, 2024 WL 57341, at *7.

It is also reasonable to infer from the allegations that White disclosed the applications of the solicited customers and that Movement and White used those applications without Southern Trust's consent to solicit those same customers once White started working for Movement. (*Id*. at ¶¶ 73-75); *Movement Mortg. LLC*, 2024 WL 57341, at *6 (plaintiff sufficiently demonstrated misappropriation under the DTSA where it alleged that its former employees' new employer took trade secrets from plaintiff and that the new employer now uses those trade secrets without plaintiff's consent). Moreover, as Register's employer (and White's employer during some of her solicitous behavior), Movement can be held vicariously liable for their acts of trade secret misappropriation committed within the scope of their employment under the theory of *respondeat superior*. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.,* 299 F. Supp. 2d 565, 575 (E.D. Va. 2004) (denying in part motion to dismiss trade secret misappropriation claim against

9

former employee and his new employer where former employee took trade secret materials to his new employer in contravention of his duty not to reveal plaintiff's confidential information and it was reasonable to infer that the new employer knew or had reason to know of that duty). Simply put, White and Register were acting as agents of Movement (Register is a Movement Market Leader) when they used Southern Trust's trade secrets to divert at least seven pipeline customers to Movement. Movement is legally liable for those acts of misappropriation.

White's return of the trade secrets does not negate the fact that the trade secrets were acquired, used, or disclosed improperly. Just the act of extracting confidential information from an employer and retaining it post-employment amounts to textbook "improper acquisition." *OROS*, 2019 WL 2361047, at *5; *see also Marsteller v. ECS Fed., Inc.*, No. 1:13CV593, 2013 WL 4781786, at *5 (E.D. Va. Sept. 5, 2013) (improper acquisition when the defendant "transferred and retained internal documents belonging to [the employer]" post-employment); *Hampton Roads Connector Partners v. Land to Sand Site Servs., Inc.*, No. 2:23-cv-174, 2023 WL 8539536, at *9–10 (E.D. Va. Oct. 17, 2023) (improper acquisition when the defendant "secretly downloaded the files after they had stopped doing actual work on [a] [p]roject"); *Apollo Enter. Imaging Corp. v. Conyers*, No. 119-CV-1603LMBMSN, 2020 WL 1896706, *4 (E.D. Va. Jan. 10, 2020) (improper acquisition when the defendant failed to return confidential information in violation of confidentiality obligations). Because Southern Trust has put forth factual allegations sufficient to allow the Court to draw the reasonable inference that Movement or its agents used or disclosed trade secrets that it knew or had reason to know that White acquired by improper means, Movement's motion is without merit and should be denied.

**C.** **<u>Aiding and Abetting a Breach of Fiduciary Duty is a Viable Cause of Action in Virginia.</u>**

Virginia recognizes a claim for aiding and abetting a breach of fiduciary duty when the third party knowingly participated in the breach. "Under Virginia law, one who aids and abets a third party's breach of fiduciary duty may be held liable for providing such assistance." *Tysons Toyota, Inc. v. Globe Life Ins. Co.*, No. 93–1359, 1994 WL 717598, at *4 (4th Cir. Dec. 29, 1994) (internal citations omitted). A plaintiff asserting this cause of action must establish the defendant's "(1) actual knowledge of the underlying fiduciary duty and (2) actual knowledge of the breach of that fiduciary duty by the primary tortfeasor." *M Corp v. Infinitive, Inc.*, No. 1:24-CV-1823 (RDA/IDD), 2024 WL 4696132, at *5 (E.D. Va. Nov. 6, 2024) (internal quotations and citations omitted). Moreover, in addition to knowledge of the breach, a "plaintiff must assert that the defendant somehow recruited, enticed, or participated in the fiduciary's breach of its duty." *M Corp*, 2024 WL 4696132, at *5 (internal quotations omitted) (quoting *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 661 (2004).) Southern Trust establishes all of the factors.

Movement misconstrues the law when it argues for dismissal of Southern Trust's aiding and abetting of fiduciary duty claim because "it is not a recognized claim" under Virginia law. Accurately stated, the Virginia Supreme Court has not expressly recognized or expressly rejected the tort of aiding and abetting a breach of fiduciary duty as a stand-alone cause of action. *See, e.g., Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 604 S.E.2d 403, 411–12 (Va. 2004) (assuming *arguendo* for purposes of analysis that Virginia recognized such a cause of action); *All. Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12CV701-HEH, 2013 WL 143500, at *4–5 (E.D. Va. Jan. 11, 2013) (noting that the "Supreme Court of Virginia has refrained from either recognizing or rejecting a separate aiding and abetting [the breach of a fiduciary duty] tort"). Although the law is unsettled, courts in this district have recognized a cause of action for aiding and abetting a breach of fiduciary

duty. *See, e.g., In re Health Diagnostic Lab'y, Inc.*, No. 15-32919, 2018 WL 4676339, at *11 (Bankr. E.D. Va. Sept. 26, 2018) ("[a] cause of action for aiding and abetting a breach of fiduciary duty has been recognized by the Fourth Circuit and Virginia courts"); *AvalonBay Communities, Inc. v. Willden*, No. 1:08-CV-777, 2009 WL 2431571, at *11 (E.D. Va. Aug. 7, 2009) (finding third party liable for aiding and abetting in employee's breach of fiduciary duty of loyalty owed to the plaintiff where third party participated in the breach), *aff'd*, 392 F. App'x 209 (4th Cir. 2010).) Virginia courts also assume the existence of an aiding and abetting cause of action to evaluate whether a plaintiff had properly pled a claim. *All. Tech. Grp., LC v. Achieve 1, LLC*, No. 3:12CV701-HEH, 2013 WL 143500, at *5 (E.D. Va. Jan. 11, 2013) (cause of action exists and was sufficiently pled when a defendant knew about another's duty and breach, participated in it or directed its commission, and benefited from it).

Recently a court in the Eastern District of Virginia recognized and ruled on an aiding and abetting a breach of fiduciary duty in an analogous case. *M Corp*, 2024 WL 4696132, at *5. In *M Corp*, plaintiff M Corp alleged that its former employee solicited its clients to move to his new employer, defendant Infinitive. *Id*. Plaintiff alleged that Infinitive was aware that the employee was still working for plaintiff and owed it a fiduciary duty of loyalty at the time of the solicitation. *Id.* Further, plaintiff alleged that Infinitive aided and abetted the employee's solicitations by messaging with him about prospective clients that wanted to move forward once he joined Infinitive and providing him with an Infinitive email address before he joined so that he could contact his clients before leaving plaintiff. *Id*. at *3. The court ruled that plaintiff was likely to succeed on its aiding and abetting claim against Infinitive, noting that the facts conveyed that the employee engaged in subterfuge to hide his breaches of fiduciary duty with Infinitive's help. *Id*. at *5.

Similarly, Southern Trust has plausibly stated a claim that Movement aided and abetted White in the breach of her fiduciary duty owed to Southern Trust. First, during the time White worked for Southern Trust, she owed Southern Trust a fiduciary duty of loyalty. (Am. Comp., ¶ 126); *see M Corp*, 2024 WL 4696132, at *4 ("Virginia courts have long recognized that under common law an employee owes a fiduciary duty of loyalty to his employer during his employment"). Within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment. *Hilb, Rogal & Hamilton Co. of Richmond v. DePew*, 247 Va. 240, 249, 440 S.E.2d 918, 923 (1994). Register and/or Movement knew that, as an employee of Southern Trust, White owed Southern Trust a fiduciary duty of loyalty. (Am. Compl., ¶ 129.) White breached her fiduciary duties by (1) misappropriating Southern Trust's Confidential Information and trade secrets, (2) converting and disclosing confidential borrower information to solicit, either directly or indirectly, Southern Trust's borrowers away from Southern Trust and towards Movement, and (3) soliciting Southern Trust's borrowers to Movement, all while still employed by Southern Trust. (*Id.* at ¶ 127.) "Liability for breach of fiduciary duty has been imposed when the employees or directors misappropriated trade secrets, misused confidential information, and solicited an employer's clients…prior to termination of employment." *Feddeman & Co., C.P.A., P.C. v. Langan Assocs., P.C.*, 260 Va. 35, 42, 530 S.E.2d 668, 672 (2000). Here, White scored a hat trick, having committed each of these three prohibited actions.

Movement cannot dispute it had knowledge that White was breaching her fiduciary duty when she diverted her clients to apply for loans with Register. (Am. Compl., at ¶ 83.) In fact, Register and Movement were aware that the applications that they were receiving were from customers of Southern Trust *because Register instructed White to divert those applicants to Movement*. (*Id.* at ¶ 87.) Movement aided and abetted White's breach of fiduciary duty by creating

and participating in a plan to divert Southern Trust's customers for the use and benefit of Movement, as evidenced by Register's collaboration with White in her solicitation of Southern Trust clients and/or prospects on behalf of Movement while she was employed by Southern Trust. (Am. Compl., ¶¶ 71-92, 94-96, 130.) Movement's and White's competitive actions resulted in lost leads, loans, and potential loans that Southern Trust would have otherwise had the opportunity to underwrite and close but for the interference by Movement. (*Id.* at ¶ 86.) Since Virginia recognizes a cause of action for aiding and abetting a breach of fiduciary duty, and, taking the allegations in the Amended Complaint as true, Southern Trust plausibly alleges that Movement both knew of White's fiduciary duties and breaches of same. The Court should deny Movement's motion.

### D. Southern Trust States A Claim for Joint Tortfeasor Liability.

Even if this Court does not recognize aiding and abetting a breach of fiduciary duty as a separate cause of action, "the label is of little consequence." *See, BDO USA, P.C. v. Ankura Consulting Grp., LLC,* No. 3:24-CV-179–HEH, 2024 WL 3874221, at *8 (E.D. Va. Aug. 19, 2024). Rather than dismissing the claim, this Court should construe Southern Trust's allegations under the alternative theory of joint tortfeasor liability. *Khoshaba v. Stilwell*, No. 2:24CV237, 2024 WL 4194801, at *28, n.25 (E.D. Va. Sept. 13, 2024) 2021) (noting that defendants "overstate[d] Virginia law to the extent they insist that Plaintiff's aiding and abetting claim would necessarily fail under Virginia law as non-cognizable" because the Supreme Court of Virginia has assumed the existence of an aiding and abetting fiduciary duty claim to evaluate whether a plaintiff had properly pled a claim); *BDO USA, P.C.*, 2024 WL 3874221, at *8 (refusing to dismiss a proposed amended claim of aiding and abetting breach of fiduciary duty).

The elements of a joint tortfeasor liability claim and a claim for aiding and abetting a breach of fiduciary duty are virtually the same. *All. Tech. Grp., LLC*, 2013 WL 143500, at *5 (joint

tortfeasor liability requires that a defendant: (1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it). As explained above, Southern Trust satisfies the elements of a joint tortfeasor liability claim because Movement had knowledge of White's duty and breach, participated in that breach (in fact, Movement [through Register] suggested the breach in the first place), and benefited from the breach. (*See,* Section III.C.1.)

Movement argues that Southern Trust cannot establish joint liability because White did not owe it a fiduciary duty of loyalty. (ECF No. 23, p. 10.) Movement argues that the source of White's duties is the Agreements and not common law. (*Id.*, p. 11-12.) But the existence of an employment contract does not preclude an employer's cause of action for "breach of fiduciary duties ... that exist under the common law as a result of the parties' employment relationship." *Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 832 (W.D. Va. 2008).

In *Combined Ins. Co.*, the plaintiff employer sued its former employee for breaching defendant's employment contract, tortiously interfering with contractual and/or prospective business relations, breach of fiduciary duties, misappropriation of trade secrets, and conversion. 578 F. Supp. 2d at 827. The employee moved to dismiss, arguing that the tort claims, including the breach of fiduciary duty claims, were precluded under Virginia law, "because the only duties allegedly breached by the defendant exist solely by virtue of the Contract." *Id*. at 831. The court rejected this claim. *Id.* In so ruling, the court held that "the common law impose[d] a number of fiduciary duties on an employee as a result of the employee's relationship with his employer," such as a fiduciary duty of loyalty. *Id*. The court also noted that, "[w]hile the defendant's employment with [plaintiff] was subject to various agreements over the course of his employment" including the employment contract at issue in the case, "it was unable to conclude, at this stage of the

litigation, that the Contract was the sole source of any fiduciary duties allegedly owed to [plaintiff] by the defendant." *Id.,* n.3.

The same is true here. As explained above and alleged in the Amended Complaint, separate and distinct from any obligations in the Agreements, as its employee, White owed Southern Trust a common law fiduciary duty of loyalty. (Am. Compl., ¶¶ 126, 129); *see M Corp*, 2024 WL 4696132, at *4; *Hilb, Rogal & Hamilton Co.*, 247 Va. at 249. Even after her employment relationship with Southern Trust ended, White owed it a duty not to reveal Southern Trust's confidential information that obtained through her employment there. *Bull v. Logetronics, Inc.*, 323 F.Supp. 115, 133 (E.D. Va. 1971) ("a former employee has a duty not to reveal confidential information obtained through his employment, and not to use such confidential information after he has left his employment). These duties are based on common law, and not solely based on the language in her Agreements.

Movement's reliance on *Augusta Mut. Ins. Co. v. Mason* is misplaced. (*Id*., p. 11, citing *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 295 (Va. 2007).) The insurance agent in *Augusta* worked as an independent contractor to Augusta, subject to an agency agreement. *Augusta Mut.,* 645 S.E.2d at 292 n.2. The court held that, without the agency agreement, there was no fiduciary duty owed. *Id*. at 295. Here, White was a Southern Trust *employee* subject to the common law duties of loyalty and the duty not to compete with Southern Trust during her employment. *See Combined Ins. Co.,* 578 F. Supp. 2d at 833, n.3 (noting that the court was "cognizant" of the *Augusta* decision, but distinguishing it because the employees were only agents of Augusta and the defendant in *Combined Ins. Co.,* worked as an *employee* for plaintiff for over 21 years). Even if the allegations supporting the claims for the breach of the Agreements are similar or overlap with those supporting the breach of fiduciary duty claim, Southern Trust can bring both claims

simultaneously. *Gordon v. Blue Mountain Therapy, LLC*, No. 7:20CV00692, 2021 WL 2284446, at *4 (W.D. Va. June 4, 2021). The court in *Gordon* followed the logic of *Combined Ins. Co.* when it rejected an argument that a breach of an employment agreement claim and a breach of the common law duty of loyalty claim could not exist together. *Id.* It noted that:

> [b]ecause Virginia law recognizes the tort of breach of fiduciary duties in the employment context, and almost all employment relationships are founded on contract, the [*Combined*] court persuasively reasoned that it is abundantly clear that the Supreme Court of Virginia [in *Augusta*] did not intend to render the two causes of action mutually exclusive.

*Id.* at *4. Therefore, it would be premature at this time to dismiss Southern Trust's claim for breach of a fiduciary duty as Southern Trust "is not limited to pursuing contractual theories of relief for the defendant's alleged misconduct." *Combined Ins. Co.,* 578 F. Supp. 2d at 833 ("inasmuch as it is clear that Virginia law recognizes the tort of breach of fiduciary duties in the employment context, and inasmuch as it is clear that almost all employment relationships are founded on contract, it is abundantly clear that the Supreme Court of Virginia [*in Augusta*] did not intend to render the two causes of action mutually exclusive").

The other cases Movement cites to for support are also distinguishable. (ECF No. 23, p. 11-12.) *Tingler v. Graystone Homes, Inc.* involved a construction contract and defendant's failure to comply with its contractual obligations to construct and fix a home. 298 Va. 63, 82 (2019). The court determined that defendant's duties arose out of the construction contract and not from a common law duty. *Id*. Likewise, the duties of the defendant in *1004 Palace Plaza LLC v. Ebadom Food, LLC* arose solely from its obligations pursuant to a lease agreement, and not common law. Civil Action No. 1:18-cv-1376, 2019 WL 3084236, *2 (E.D. Va. July 15, 2019). Finally, in *Norfolk Cmty. Servs. Bd. v. Berardi*, the plaintiff sued its former employees for fraud and negligence for failing to perform certain duties under their employment contracts. 84 Va. Cir. 310 (2012). The

court determined that the duties defendants allegedly violated arose solely from their contractual employer-employee relationship because neither the common law nor a statute imposes any of those duties. *Id*. at 315. Here, Southern Trust is not alleging that White committed fraud or negligence. Southern Trust alleges that White breached its fiduciary duties that are widely recognized as entrenched in Virginia's common law. The holding is *Norfolk* is thus irrelevant and unpersuasive. For these reasons, the court should deny Movement's motion.

E.      **Southern Trust States a Claim That Movement Tortiously Interfered With its Business Relationships.**

Movement's motion fails with respect to Southern Trust's tortious interference with its business relationships because Southern Trust has sufficiently pled each of the required elements. To state a claim for tortious interference, a plaintiff must prove: (1) the existence of a business expectancy with a probability of future economic profit; (2) defendant's knowledge of the expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have realized the expectancy; and (4) damage. *Adnet, Inc. v. Soni*, 66 F.4th 510, 518–19 (4th Cir. 2023) (internal citations omitted); *M Corp,* 2024 WL 4696132, at *6 (same).

Movement argues that Southern Trust cannot meet the first and third elements of its claim because it fails to plead the existence of a business expectancy with a probability of future economic benefit or that Southern Trust had a reasonable certainty that the expectancy would have been realized absent Movement's actions. (ECF No. 23, p. 14.) Movement relies on distinguishable authority to support this claim. (*Id*., citing *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1019 (E.D. Va. 2018). The court in *Northstar* dismissed plaintiffs' tortious interference claim because the alleged business expectancy only amounted to the "potential sale of helicopters," and that plaintiffs had only pitched the sale. *Id*.

By contrast, Southern Trust's business relationships with the customers White solicited extended beyond the "pitch" stage. It alleges that it had entered into contracts – loan applications – with the customers and had gone through the pre-qualification stage with these customers. (Am. Compl., at ¶ 72.) Movement intentionally and tortiously interfered with Southern Trust's business relationships with its prospective customers by scheming to divert customers from Southern Trust to Movement. (*Id*. at ¶ 137.) White solicited at least seven of Southern Trust's customers, which included customers with active loan applications with Southern Trust, worked with Southern Trust to pre-qualify for a loan, or constituted a customer lead. (*Id.* at ¶¶ 71-72.) Southern Trust expected future economic profit from underwriting and closing these loans. (*Id.* at ¶ 86.) Register and Movement were aware that the applications received were from White's current Southern Trust customers at the time and that the information received because Register instructed White to divert those applicants to Movement. (*Id.* at ¶ 87.) Absent Movement and White's efforts to solicit and divert Southern Trust's customers and their loan applications, Southern Trust would have continued in the business relationships with these prospective customers and would have realized its expectancy of business and economic gain from these relationships. (*Id.* at ¶ 138.) Instead, Southern Trust, lost potential customers, and, generally, lost profits due to lost business and potential business. (*Id.* at ¶ 91.)

These facts are sufficient to state a claim for tortious interference with business relationships. *M Corp,* 2024 WL 4696132, at *7 (plaintiff likely to succeed on its tortious interference with business expectancies and/or contract relations claim because defendants used improper means to interfere with plaintiff's business relationships and plaintiff incurred the loss of current and prospective clients because of that interference); *Adnet, Inc.* 66 F.4th at 521 (reversing district court's grant of summary judgment to defendants on plaintiff's tortious interference with a

business relationship claim where there was "evidence of a reasonable certainty that but for Defendants' intentional misconduct—reaching out to [plaintiff's client] and then bidding for the subcontract while employed by [plaintiff]—[plaintiff] would have been awarded the subcontract"). Movement is welcome to argue about causation during and after discovery but those are issues appropriate for a jury, not for the motion to dismiss stage. As such, Movement's arguments for dismissal are unpersuasive and its motion to dismiss this claim fails as a matter of law.

F. **Southern Trust States a Claim for Business and Common Law Conspiracy.**

The elements of a claim under Virginia's Business Conspiracy Statute are: (1) a combination of two or more persons; (2) who cooperate for the purpose of willfully and maliciously injuring plaintiff in his business; and (3) resulting damage to plaintiff. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592 (1984); Va. Code Ann. § 18.2-499. Similarly, the elements of a common law conspiracy claim include: "(1) an agreement between two or more persons; (2) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; with (3) resulting damage to plaintiff." *Id.* (citing *William v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014)).

Movement argues that Southern Trust fails to allege any of the unlawful acts supporting its conspiracy claims were committed by Movement. (ECF No. 23, p. 16.) This argument misses the mark for the reasons set forth in Sections B-E above. At this stage of the proceedings, the Court must draw all reasonable inferences from the facts in favor of Southern Trust as the non-moving party. *Khoshaba*, 2024 WL 4194801, at *9. Taken as true, Southern Trust's allegations establish that Movement, through its agent, Register, agreed with White to commit one or more of the improper and unlawful acts described in the Amended Complaint, including misappropriating trade secrets, breaching fiduciary duties, and tortiously interfering with Southern Trust's business

20

relations. (*See, e.g.,* Am. Compl., at ¶¶ 144, 146.) As a result, Southern Trust suffered and will continue to suffer, competitive harm, irreparable injury, and significant damages. (*Id.* at ¶ 149.)

The Supreme Court of Virginia has held that tortious interference with contractual or business relationships may serve as the underlying unlawful act in a business conspiracy claim and in a common law conspiracy claim. *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 319 (Va. 2014); *Aimbridge Hosp., LLC v. Provident Grp. - Radford Properties*, LLC, No. 7:24-CV-00262, 2024 WL 3534150, at *9 (W.D. Va. July 24, 2024) (denying motion to dismiss where plaintiff stated a claim against defendant for tortious interference with the Agreement and that was a sufficient unlawful act for plaintiff's conspiracy claims against both defendants). *See also, CaterCorp, Inc. v. Catering Concepts, Inc.,* 246 Va. 22, 26 (1993) (reversing in part dismissal civil and statutory conspiracy claims where plaintiff sufficiently alleged tortious interference with contracts).

Additionally misappropriating trade secrets constitutes an unlawful act for the purposes of a conspiracy claim. *ClearOne Advantage, LLC v. Kersen*, No. CV JKB-23-03446, 2024 WL 4754051, at *9 (D. Md. Nov. 12, 2024) (granting summary judgment for the plaintiff on its civil conspiracy claim where the individual defendants agreed to misappropriate plaintiff's trade secrets and divert its confidential client leads for the benefit of an unknown competitor and solicited plaintiff's employees). Finally, Movement's actions of aiding and abetting White's breach of her fiduciary duties are also unlawful acts sufficient to establish a claim of civil or statutory conspiracy. *DePuy Synthes Sales, Inc. v. Jones*, No. 2:13CV392, 2013 WL 8118533, at *8 (E.D. Va. Nov. 5, 2013), *R&R adopted*, No. 2:13CV392, 2014 WL 1165852 (E.D. Va. Mar. 21, 2014). The court in *DePuy* noted that, while a conspiracy to breach an employment agreement alone may not sustain a business conspiracy claim, these alleged actions "overlap[] fiduciary duties inherent in the

21

employment relationship…the source of which are outside the employment contract."). *Id*. Since the source of White's duties is outside the employment contract, a conspiracy to breach them could sustain a claim of statutory conspiracy under Va. Code § 18.2–499. *Id*. Because Southern Trust has properly alleged that Movement committed the unlawful acts of trade secret misappropriation, aiding and abetting a breach of a fiduciary duty, and tortious interference with contract, Movement's motion fails.

## IV. <u>CONCLUSION</u>

For the above reasons, Southern Trust requests that this Court deny Movement's Motion to Dismiss the Amended Complaint in its entirety.

Dated: February 18, 2025.

Respectfully submitted,

/s/ *Theresa Connolly*
Theresa Connolly
Virginia Bar No. 46583
**FISHER PHILLIPS LLP**
2011 Crystal Drive, Suite 400
Arlington, Virginia 22201
Phone: (703) 682-7095
tconnolly@fisherphillips.com
Michael P. Elkon (admitted *pro hac vice*)
Georgia Bar No. 243355
FISHER & PHILLIPS LLP
1230 Peachtree Street, NE
Suite 3300
Atlanta, Georgia 30309
Phone (404) 231-1400
Facsimile (404) 240-4249
melkon@fisherphillips.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2025, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of the Court by using the CM/ECF System, which will cause a copy to be served on all parties of record.

*s/Theresa Connolly*
Theresa Connolly

*Counsel for Plaintiff*