IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| SOUTHERN TRUST MORTGAGE, LLC<br><br>Plaintiff,<br><br>v.<br><br>MOVEMENT MORTGAGE, LLC<br><br>Defendant. | Case No. 2:24-cv-653 |

**DEFENDANT MOVEMENT MORTGAGE, LLC'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF SOUTHERN TRUST MORTGAGE, LLC'S AMENDED COMPLAINT**

Defendant Movement Mortgage, LLC ("Movement") submits this Reply Memorandum in Support of its Motion to Dismiss Plaintiff Southern Trust Mortgage, LLC's ("Southern Trust") Amended Complaint. In support, Movement states as follows:

**I.    Legal Argument**

In its Response to Movement's Motion to Dismiss, Southern Trust argues that it has stated a valid cause of action for all of its alleged claims. For the reasons stated below, however, these claims have no merit and the Court should dismiss this matter.

**A.    Southern Trust fails to adequately state a misappropriation of trade secrets claim under federal or state law because the Amended Complaint does not allege that Movement acquired, disclosed, or used trade secrets.**

Southern Trust does not claim that Movement itself ever "acquired, disclosed, or used a trade secret through improper means"—a key element that must be pleaded to survive dismissal on its DTSA and VUTSA claims. *Hampton Rds. Connector Partners v. Land to Sand Site Servs.,*

*Inc.*, No. 2:23cv174, 2023 U.S. Dist. LEXIS 222687, at *16 (E.D. Va. Oct. 17, 2023). Southern Trust instead argues that White "engaged in textbook improper acquisition of Southern Trust's trade secrets when, on her way out of the door to work for a competitor, she downloaded 5,109 files containing confidential documents on loan programs and retained that information on a thumb drive without Southern Trust's express or implied consent." Resp. at 9. Southern Trust further contends that it is "reasonable to infer … that White disclosed the applications of the solicited customers and that Movement and White used those applications without Southern Trust's consent to solicit those same customers once White started working for Movement." Resp. at 9. Finally, Southern Trust argues that Movement, "as Register's employer (and White's employer during some of her solicitous behavior)," can be held vicariously liable for their acts of trade secret misappropriation. Resp. at 9. Despite these arguments to the contrary, Southern Trust has failed to properly allege its misappropriation of trade secrets claims.

The DTSA defines misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [ ] disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5). Misappropriation under VUTSA is plead by alleging "(1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff." *Space Sys./Loral, LLC*, 306 F. Supp. 3d at 855. "While phrased differently, these standards are similar in

effect: Defendants must have 'acquired,' 'disclosed,' or 'used' a trade secret, through 'improper means.'" *Hampton Rds. Connector Partners*, 2023 U.S. Dist. LEXIS 222687, at *28.

Southern Trust alleges that Mr. Register instructed Ms. White to give her clients his link where they could apply for a loan with Movement "while she was still working at Southern Trust." Am. Compl. ¶ 70. In her emails with these applicants on October 16, 2024, Ms. White shared that Mr. Register was aware she was sending them over, but did not include Mr. Register on those emails. Am. Compl. ¶¶ 73–75; Am. Compl. Ex. C. Ms. White further shared with her potential clients that she had saved all their documents necessary for the application process. Am. Compl. ¶ 75; Am. Compl. Ex. C. Indeed, she retained several documents containing allegedly confidential information on a flash drive after her resignation. Am. Compl. ¶¶ 77–78.

But Ms. White retained these documents on her own accord, before speaking with Mr. Register: "I knew that I would be resigning from Southern Trust. Because I would not have access to my Southern Trust documents and accounts, I rushed to download documents that I used daily during my job onto a thumb drive. I included documents relating to the homebuying process in Virginia, personal documents, and some Southern Trust materials." Am. Compl. Ex. E ¶¶ 11-14. On October 18, 2024, Ms. White received a cease-and-desist letter from Southern Trust and informed Movement of the letter. *See* Am. Compl. Ex. E, at ¶ 16. After that, she "did not complete any more work for Movement" and "immediately gave the thumb drive to Movement's legal department." *Id.* The flash drive was then returned to Southern Trust. Am. Compl. ¶¶ 77, 89. Notably, Ms. White does not say that she ever accessed or used these documents after beginning her employment with Movement. *See* Am. Compl. Ex. *See* Am. Compl. Ex. E As argued in the Memorandum in Support, Southern Trust does not claim that Movement itself ever acquired, disclosed, or used the alleged trade secrets. Southern Trust instead asserts that it is "reasonable to

3

infer from the allegations that White disclosed the applications of the solicited customers and that Movement and White used those applications without Southern Trust's consent to solicit those same customers once White started working for Movement." Resp. at 9.

Southern Trust's cited cases do not support this position. Indeed, those decisions concluded a reasonable inferences existed only where the complaint actually alleged that the defendant employer acquired, disclosed, or obtained trade secrets. In *Movement Mortgage LLC v. Summit Funding, Inc.*, Movement offered actual evidence that the defendant had knowingly possessed and utilized Movement's confidential information. No. 3:23-cv-633, 2024 U.S. Dist. LEXIS 2147, at *16 (W.D.N.C. Jan. 3, 2024). Similarly, in *Tao of System Integration v. Analytical Servs. & Materials, Inc.*, plaintiff alleged that "AS&M and Dr. Unnam 'used' the TDT flutter test materials by including them in the ETS Proposal." 299 F. Supp. 2d 565, 575 (E.D. Va. 2004). Because that plaintiff actually alleged the defendant's use of trade secrets, the court found it "reasonable to infer that, at the time of use, AS&M and Dr. Unnam either knew or had reason to know that Dr. Venkateswaran owed a duty to Tao to maintain the secrecy of the TDT flutter test materials." *Id.*

The Amended Complaint also fails to lay sufficient groundwork for vicarious liability. Southern Trust does not allege that Mr. Register or Movement were aware of the flash drive or its contents until Ms. White and Movement received cease-and-desist letters. Nor does Southern Trust plead that Ms. White, Mr. Register, or Movement ever accessed or used the information contained on the flash drive, particularly while Ms. White was employed at Movement. Instead, once Movement was made aware of the flash drive, it was promptly returned to Southern Trust. Southern Trust accordingly fails to allege that Movement should "be held vicariously liable for [Ms. White's] acts of trade secret misappropriation *committed within the scope of employment*." *Id.* (emphasis added).

Southern Trust's claims for misappropriation of trade secrets under DTSA and VUTSA must therefore be dismissed.

**B. Virginia law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty.**

Southern Trust next argues that, while "the Virginia Supreme Court has not expressly recognized or expressly rejected the tort of aiding and abetting a breach of fiduciary duty as a stand-alone cause of action," courts in this district have "recognized a cause of action for" such a claim, and Virginia courts "assume the existence of" the claim "to evaluate whether a plaintiff had properly pled a claim." Resp. at 9. Because of this, Southern Trust asserts that this claim should be allowed to move forward.

However, the Supreme Court of Virginia has never expressly recognized a cause of action for aiding and abetting a breach of fiduciary duty. *See Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 409 (Va. 2004) (cleaned up); *Uplinger v. Alexandria Overlook Condo. Council of Co-Owners*, 2018 Va. Unpub. LEXIS 14, at *4 (Va. 2018). Instead, the court has twice now assumed *arguendo* the existence of this cause of action to evaluate whether a plaintiff had properly pled a claim. *Halifax Corp.*, 604 S.E.2d at 409; *Uplinger*, 2018 Va. Unpub. LEXIS 14, at *4.

In a similar case where it was unclear whether the Supreme Court of South Carolina had created a tort for aiding and abetting fraud, the Fourth Circuit "decline[d] any suggestion by the plaintiffs that we expand South Carolina law by recognizing a cause of action for aiding and abetting common law fraud." *Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016). Indeed, as the Fourth Circuit has regularly held, federal courts are called to "apply state law, not … to participate in an effort to change it." *Burris Chem. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993).

Because the Supreme Court of Virginia has not, in fact, recognized this cause of action, this Court should dismiss this claim.

Several courts in this District have likewise concluded that aiding and abetting a breach of fiduciary duty does not exist under Virginia law. In one case, the court provided a comprehensive analysis of Virginia courts' treatment of the claim of aiding and abetting a breach of fiduciary duty. *Keil v. Seth Corp.*, No. 3:21cv153, 2021 U.S. Dist. LEXIS 212042, at *39–45 (E.D. Va. Nov. 2, 2021). The court first noted that "[n]either the common law nor any statutes establish a separate cause of action for aiding and abetting a breach of fiduciary duty." *Id.* at *39. Accordingly, it "endeavor[ed] to determine what rule the Supreme Court of Virginia would follow." *Id.* In discussing cases where such a cause of action was recognized, the Court found the *Uplinger* decision instructive because the Supreme Court of Virginia was given another chance to recognize aiding and abetting a breach of fiduciary duty and did not do so. *See id.* at *41–42 ("However, apart from *Health Diagnostic Laboratory*, these cases did not have the benefit of the Supreme Court of Virginia's ruling in *Uplinger*, which declined to recognize the cause of action for the second time."). The Court further considered the many decisions determining that aiding and abetting a breach of fiduciary duty was not a valid cause of action. *Id.* at *42–43 (collecting cases). The Court thus held that it would not "assess Plaintiff's claims as if the cause of action exists." *Id.* at *44.

Southern Trust's reliance on *M Corp. v. Infinitive, Inc.*, No. 1:24-CV-1823, 2024 U.S. Dist. LEXIS 202594, at *13–15 (E.D. Va. Nov. 6, 2024), is misplaced. Resp. at 11–13. That decision ruled on the plaintiff's motion for a temporary restraining order. *M Corp.*, 2024 U.S. Dist. LEXIS 202594, at *13–15. In its opposition to the motion, defendant did not argue that Virginia law failed to recognize a separate cause of action for aiding and abetting a breach of fiduciary duty. *M Corp.*

6

*v. Infinitive, Inc.*, No. 1:24-CV-1823, 2024 U.S. DIST. CT. MOTIONS LEXIS 237491, at 13 (Oct. 28, 2024). Had the court been presented with the argument that Movement makes here, it would likely have rejected the claim like the other courts in this district have done. *See Infinity Tech., LLC v. Burney*, No. 1:19-cv-1507, 2020 U.S. Dist. LEXIS 206604, at *15–16 (E.D. Va. June 4, 2020); *Keil*, 2021 U.S. Dist. LEXIS 212042, at *44; *Microstrategy Servs. Corp. v. OpenRisk, LLC*, No. 1:14cv1244, 2015 U.S. Dist. LEXIS 32719, at *3 (E.D. Va. March 17, 2015); *Calderon v. Aurora Loan Serv.*, No. 1:10cv129, 2010 U.S. Dist. LEXIS 55602, at *6 (E.D. Va. June 3, 2010).

As the other courts in this District have held, a separate cause of action for aiding and abetting a breach of fiduciary duty is not recognized under Virginia law. This Court should not seek to expand Virginia law by recognizing it as a valid cause of action when the Supreme Court of Virginia has declined to do so twice. For these reasons, the Court should dismiss Southern Trust's claim against Movement for aiding and abetting Ms. White's alleged breach of her fiduciary duty.

  **C.**  **Southern Trust cannot adequately plead breach of fiduciary duty against Movement as a joint tortfeasor because the source of the alleged duty expressly arises from Ms. White's employment contract.**

Southern Trust incorrectly argues that the source-of-duty rule is not applicable in this case. Resp. 15. "[I]n order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (2019). And "[t]o determine whether a claim is best heard in contract or tort, a court must determine the source of the duty violated." *1004 Palace Plaza, LLC v. Ebadom Food, LLC*, No. 1:18-cv-1376, 2019 U.S. Dist. LEXIS 118320, at *2 (E.D. Va. July 15, 2019). Because Ms. White's duty flows from her contractual agreements with Southern Trust, it cannot now rely on the common law to sue Movement for a breach of that duty.

Southern Trust alleges that Ms. White owed the company a fiduciary duty of loyalty as an

7

employee. Am. Compl. ¶ 126. It pleads that Ms. White violated this duty "by secretly diverting Southern Trust's borrowers to Movement, misappropriating Southern Trust's Confidential Information and trade secrets, and by converting and disclosing confidential borrower information to Movement and by soliciting, either directly or indirectly, Southern Trust's borrowers away from Southern Trust and towards Movement, one of Southern Trust's competitors." Am. Compl. ¶ 127. Southern Trust asserts, however, that Ms. White "violated her *contractual* obligations" to Southern Trust as well. Am. Compl. ¶ 53 (emphasis added).

Southern Trust tries to distinguish the seminal case on this point, which concluded that a plaintiff had failed to assert a valid claim for breach of fiduciary duty because "[a]ny fiduciary duty allegedly breached … existed solely because of the contractual relationship between [plaintiff] and [defendant], and in turn, [defendant]'s employee." *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 295 (Va. 2007). Citing out-of-district decisions, Southern Trust argues that *Augusta Mutual* does not apply here because "[t]he insurance agent in *Augusta* worked as an independent contractor to Augusta, subject to an agency agreement," while Ms. White was an employee. Resp. at 15–16 (citing *Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 833 (W.D. Va. 2008); *Gordon v. Blue Mountain Therapy, LLC*, No. 7:20-cv-692, 2021 U.S. Dist. LEXIS 105432, at *11 (W.D. Va. June 4, 2021)). Yet Virginia courts and federal courts within this Circuit have applied *Augusta Mutual*'s reasoning to employment contracts. *See, e.g.*, *Norfolk Cmty. Servs. Bd. v. Berardi*, 84 Va. Cir. 310, 315 (2012). As such, Southern Trust's attempt to distinguish these cases from the present matter fails.

To be sure, the *Augusta Mutual* decision "did not intend to render" claims of breach of fiduciary duty and breach of contract "mutually exclusive." Resp. at 15. Courts applying *Augusta Mutual* have recognized that the holding does not foreclose all breach of fiduciary duty actions

8

where a contract also exists, but instead bars those claims where the parties explicitly agreed to limit the relevant conduct in the contract. As one Western District of Virginia court explained, "[i]n *Augusta Mutual* the defendant failed to obtain accurate information regarding the condition of the home being insured thereby expressly violating the contract between the parties that 'specifically required due diligence in obtaining accurate information and making all necessary inspections required.'" *Three Rivers Landing of Gulfport, Ltd. P'ship v. Three Rivers Landing, LLC*, No. 7:11-cv-00025, 2012 U.S. Dist. LEXIS 62581, at *9–10 (W.D. Va. May 4, 2012) (quoting *Augusta Mutual*, 645 S.E.2d at 294). In Three Rivers Landing, however, "the Partnership Agreement contained no express provision that forbid the Former General Partner from paying the development fee early. Thus, unlike *Augusta Mutual* the Former General Partner did not violate an express contractual provision and the Plaintiffs' claim sounds in tort." *Id.*

Here, on the other hand, Ms. White agreed in her Employment and Confidentiality Agreements "not to disclose" Southern Trust's "confidential information" or "trade secrets," "solicit" Southern Trust's "customers" and "potential customers," or otherwise "compete" with Southern Trust both during and after her employment ended. Am. Compl. Ex. B at 1–2. That language mirrors Southern Trust's claim of breach of fiduciary duty, which alleges that Ms. White violated her duty "by secretly diverting Southern Trust's borrowers to Movement, misappropriating Southern Trust's Confidential Information and trade secrets, and by converting and disclosing confidential borrower information to Movement and by soliciting, either directly or indirectly, Southern Trust's borrowers away from Southern Trust and towards Movement, one of Southern Trust's competitors." Am. Compl. ¶ 127. Consistent with the Supreme Court of Virginia's commitment "to avoid turning every breach of contract into a tort," *Augusta Mutual*, 645 S.E.2d 290, 295, Movement cannot be held jointly liable for Ms. White's breach of her

fiduciary duties. That claim should accordingly be dismissed.

> **D. The Amended Complaint's contradictory claims show that Southern Trust had no business expectancy in the loan applications Ms. White referred to Mr. Register, dooming its tortious-interference claim.**

In defending its tortious-interference claim, Southern Trust argues that "it had entered into contracts – loan applications – with the customers and had gone through the pre-qualification stage with these customers" and thus "expected future economic profit from underwriting and closing these loans." Resp. at 19. However, Southern Trust's own allegations do not support this assertion.

To establish a claim for tortious interference with a business or contract expectancy under Virginia law, a plaintiff must plead:

(1) the "existence of a business relationship or expectancy with a probability of future economic benefit to plaintiff";

(2) the "defendant's knowledge of the relationship or expectancy";

(3) "a reasonable certainty" that the plaintiff "would have continued in the relationship or realized the expectancy absent defendant's intentional misconduct";

(4) "interference by improper methods"; and

(5) "damages resulting from that interference."

*Goulmamine v. CVS Pharmacy*, 138 F. Supp. 3d 652, 672 (E.D. Va. 2015). "[T]he Supreme Court of Virginia has made clear that 'mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action[;]' rather, the proof must establish a 'probability' not a 'possibility' of future economic benefit." *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1019 (E.D. Va. 2018) (alterations in original) (quoting *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 897 (1997)).

Southern Trust pleads neither the existence of a business expectancy with a probability of future economic benefit nor any facts showing a reasonable certainty that the expectancy would have been realized absent Movement's actions in its Amended Complaint. Indeed, in Ms. White's

Declaration, she specifically alleges that "Mr. Register . . . suggested that, as long as the clients were not 'triggered,' then I could give them a link to his information at Movement." Am. Compl. Ex. E, at ¶ 13. Further, "Mr. Register explained that 'triggered' referred to loans that *were past the prequalification stage, and the client was under contract* and moving forward with locking in an interest rate and prepping for underwriting." Am. Compl. Ex. E, at ¶ 13 (emphasis added). Such loans "would have to stay with Southern Trust," while Mr. Register set up the non-triggered loans in Movement's system. Am. Compl. Ex. E, at ¶ 13.

Southern Trust contends that its facts are distinguishable from *Northstar Aviation* because these loan applications were further along in the negotiating process, while plaintiffs in that case "had only pitched the sale." Resp. at 19. But Ms. White's declaration undermines this argument. As she explains, the non-triggered clients—the only ones she passed along to Movement—were not under contract or past the pre-qualification stage. Am. Compl. Ex. E ¶ 13. Those potential customers were still free to submit mortgage applications with other lenders and to choose which lenders best suited their needs. At best, Southern Trust had "pitched" its services to these non-triggered clients as did the *Northstar Aviation* plaintiffs, whose tortious-interference claim was dismissed because it failed to allege that they either entered into a contract or had a "reasonably certain likelihood that any such contract would go through." 332 F. Supp. 3d at 1019.

While Southern Trust now contradicts Ms. White by arguing that it had entered into contracts with these customers, Resp. at 19, the company attached her declaration to its Amended Complaint, and "in the event of conflict between the bare allegations of the complaint and any exhibit attached … the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

Southern Trust's own exhibit makes clear that the company had not entered into any

contracts with its so-called customers or that it was reasonably certain likelihood any contract would go through." *Northstar Aviation*, 332 F. Supp. 3d at 1019. Southern Trust thus fails to adequately plead the first and third elements of its claim. Because Southern Trust does not plead a valid claim of tortious interference with business expectancies, that claim should be dismissed.

> **E. Southern Trust does not adequately plead its statutory business conspiracy and common law conspiracy claims.**

Southern Trust lastly argues that "Southern Trust's allegations establish that Movement, through its agent, Register, agreed with White to commit one or more of the improper and unlawful acts described in the Amended Complaint, including misappropriating trade secrets, breaching fiduciary duties, and tortiously interfering with Southern Trust's business relations." Resp. at 20–21.

As argued above, Movement maintains that Southern Trust has failed to allege a cause of action for misappropriating trade secrets, breaching fiduciary duties, and tortiously interfering with Southern Trust's business expectancies. Because of this, Southern Trust has failed to allege that any of the unlawful acts used as the basis for its conspiracy claims were actually committed by Movement. Indeed, "where there is no actionable claim for the underlying alleged wrong, plaintiff cannot maintain a claim for civil conspiracy." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007); *see also Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317–18 (Va. 2014) ("[C]onspiracy allegations … do not set forth an independent cause of action; instead, such allegations are sustainable only after an underlying tort claim has been established."). Accordingly, if this Court dismisses the claims against Movement in Counts I-IV, it must also dismiss the conspiracy claims.

## II. Conclusion

For these reasons, as well as the reasons laid out in the Memorandum in Support of

Movement's Motion to Dismiss, the Court should grant the Motion to Dismiss.

Dated: February 24, 2025

Respectfully submitted,

**MOVEMENT MORTGAGE, LLC**

By: /s/
Kristina H. Vaquera, Esq. (VSB No. 43655)
William B. Jackson, Esq. (VSB No. 84012)
Gabrielle Bohannon, Esq. (VSB No. 98106)
Jackson Lewis, P.C.
500 E. Main Street, Suite 800
Norfolk, Virginia 23510
Telephone: (757) 648-1445
Facsimile: (757) 648-1418
kristina.vaquera@jacksonlewis.com
billy.jackson@jacksonlewis.com
gabrielle.bohannon@jacksonlewis.com
*Counsel for Defendant Movement Mortgage, LLC*