**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**SOUTHERN TRUST MORTGAGE, LLC,**

      **Plaintiff,**

    **v.**                                   **CIVIL NO. 2:24-cv-653**

**MOVEMENT MORTGAGE, LLC,**

      **Defendant.**

## OPINION

This matter comes before the court on Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim ("Motion to Dismiss Complaint"), ECF No. 17, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim ("Motion to Dismiss Amended Complaint" or "Motion"), ECF No. 22. For the following reasons, Defendant's Motion to Dismiss Complaint, ECF No. 17, is **MOOT**, and Defendant's Motion to Dismiss Amended Complaint, ECF No. 22, is **GRANTED on all counts.**

### I. PROCEDURAL HISTORY

Plaintiff filed its Complaint on November 4, 2024. ECF No. 1 (Complaint). Plaintiff's Complaint named Grace White and Movement Mortgage, LLC ("Movement") as defendants. Id. at 1. On January 6, 2025, Plaintiff dismissed Ms. White from the case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). See ECF No. 16 at 1 (Notice of Voluntary Dismissal of Defendant Grace

White). That same day, January 6, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint. ECF Nos. 17 (Motion), 18 (Memorandum in Support).

On January 21, 2025, Plaintiff filed an Amended Complaint which named only Movement as a Defendant. See ECF No. 20 at 1. Once filed, the Amended Complaint superseded the Complaint as the operative pleading in this action. See Young v. City of Mt. Ranier, 238 F.3d 567, 572 (4th Cir. 2001). Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 17, is **MOOT**. See Roudabush v. Mensah, 2017 WL 11713705, at *2 (E.D. Va. Sept. 11, 2017) (Smith, C.J.). Defendant then filed a Motion to Dismiss Plaintiff's Amended Complaint on February 4, 2025. ECF Nos. 22 (Motion), 23 (Memorandum in Support). Plaintiff filed a Response in Opposition on February 18, 2025. ECF No. 26. Shortly thereafter, on February 24, 2025, Defendant filed its Reply.[1] ECF No. 27. The matter is now ripe for judicial determination.

## II. RULE 12(b)(6) LEGAL STANDARD

A complaint must be dismissed if the plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To meet the pleading standard established in Rule 8 of the Federal Rules of Civil Procedure and survive a motion

---

[1] On March 4, 2025, Defendant sent the Clerk of Court a letter representing that it does not request a hearing on its Motion. See ECF No. 28.

to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

But while the court "must accept the factual allegations in the complaint as true, [it] need not accept a complaint's legal conclusions." ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 212 (4th Cir. 2019) (citing Iqbal, 556 U.S. at 678). As the Supreme Court has noted, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Courts may also consider documents that are either "explicitly incorporated into the complaint by reference" or "attached to the complaint as exhibits." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c)). The court may consider such documents "without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment." Spirito v. Peninsula Airport Comm'n, 350 F. Supp. 3d 471, 480 (E.D. Va. 2018) (Morgan, J.) (citing Pueschel

3

v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004)). However, "[a]t the motion-to-dismiss stage, 'in the event of a conflict between the bare allegations in the complaint and any exhibit attached, the exhibit prevails.'" Wells v. Fuentes, 126 F.4th 882, 896 (4th Cir. 2025) (quoting Goines, 822 F.3d at 166).

### III. FACTUAL BACKGROUND

The court draws the following facts from the Amended Complaint and exhibits attached thereto, which it accepts as true in ruling on Defendant's Motion. See supra Part II. Since 1997, Plaintiff has operated as a mortgage lender. ECF No. 20 ¶ 11. As part of its business, Plaintiff collects sensitive customer information. Id. ¶ 13. This includes things like customers' names, addresses, employment information, and social security numbers. Id. Plaintiff also compiles proprietary information. Id. ¶ 14. This includes its customer lists, loan applications, loan product offerings, pricing information, and communications with clients. Id. Plaintiff derives an independent economic benefit from this information and expends significant resources procuring and maintaining it. Id. ¶¶ 14-15. Because of this, Plaintiff alleges that its proprietary information constitutes trade secrets. Id. ¶ 16.

Plaintiff has several safeguards in place to protect its proprietary information. Some of these are technical, like encryption, two-factor authentication, and password protection. Id. ¶ 18. However, other safeguards are legal. For example,

4

Plaintiff requires that some of its employees sign confidentiality agreements. Id. ¶ 19. One such employee was Grace White. Id. ¶ 21.

On or around February 15, 2022, Plaintiff hired Ms. White as a loan officer in its Virginia Beach office. Id. ¶ 20. As a condition of her employment, Ms. White signed two agreements: a Loan Officer Employment Agreement ("Employment Agreement"), and a Confidentiality and Restrictive Covenant Agreement ("Confidentiality Agreement"). Id. ¶ 21. These agreements are attached to Plaintiff's Amended Complaint as exhibits. ECF Nos. 20-1 (Employment Agreement); 20-2 (Confidentiality Agreement). The Employment Agreement required that Ms. White, "comply with all duties and requirements imposed on [the] Loan Officer, as set forth in the company policies." ECF No. 20-1 at 2 (Article II, 2.1(b)). It also specified that: "While employed by [Plaintiff] . . . [t]he Loan Officer shall assist and work for only [Plaintiff] and no other employer, lender, broker, or other entity[.]" Id. (Article II, 2.1(c)).

Ms. White was required to sign the Confidentiality Agreement because her position as a loan officer gave her access to sensitive customer and proprietary information. ECF No. 20 ¶¶ 17, 19, 25, 40. The Confidentiality Agreement included several restrictive covenants: (1) Covenant Not to Divulge Company Confidential Information; (2) Non-Solicitation of Employees Covenant; (3) Non-Solicitation of Customers Covenant; (4) Non-Solicitation of

Potential Customers Covenant; and (5) a Non-Compete Covenant. ECF No. 20-2 at 2-3; see ECF No. 20 ¶¶ 27-31.

After Ms. White began her employment, Plaintiff enrolled her in its "Green LO" program. ECF No. 20 ¶ 38. The Green LO program provides enhanced training opportunities for promising new loan officers. Id. ¶¶ 39-49. As part of the program, Plaintiff devoted significant resources to Ms. White's development as a loan officer. Id. ¶ 41. Plaintiff provided Ms. White with written instructional materials, hands-on coaching, and mentorship from senior employees. Id. ¶¶ 41-49. Plaintiff also paid for Ms. White to obtain her loan officer license through the National Mortgage Licensing System, and to renew her license each year. Id. ¶ 48. This investment proved fruitful. In the two and a half years Ms. White worked for Plaintiff, she closed seventy-six (76) loans. Id. ¶ 51. This accounted for a total loan volume of $13,200,000, and $374,668 in gross revenue for Plaintiff. Id.

On or around September 12, 2024, Ms. White spoke with Katie Brinson, one of Defendant's employees, about working for Defendant. Id. ¶ 54; ECF No. 21-1 ¶ 4 (Corrected Declaration of Grace White).[2] Ms. White was then introduced to Reggie Register,

---

[2] On January 22, 2025, Plaintiff filed a "Notice of Corrected Exhibit E to Amended Complaint." ECF No. 21 (Notice). Exhibit E to the Amended Complaint contained Ms. White's declaration. See ECF No. 20-5 (Uncorrected Exhibit E). However, it appears that Plaintiff mistakenly failed to attach, as an exhibit to Ms. White's declaration, an email exchange between Ms. White and Defendant's

who was also employed with Defendant. ECF Nos. 20 ¶ 54; 21-1 ¶ 4. Mr. Register asked Ms. White whether she had any "time commitments" to Plaintiff. ECF Nos. 20 ¶ 55; 21-1 ¶ 5. Ms. White informed Mr. Register that she was not bound to work for Plaintiff for a certain period, but that she had signed the Confidentiality Agreement. ECF Nos. 20 ¶ 55; 21-1 ¶ 5. At Mr. Register's request, Ms. White sent Mr. Register and Ms. Brinson copies of the Confidentiality Agreement and Employment Agreement on September 19, 2024. ECF Nos. 20 ¶ 56; 21-1 at 8-9 (Email from Ms. White to Defendant's Employees), ¶ 6. She also sent a copy of her last paystub and W-2. ECF Nos. 20 ¶ 56; 21-1 ¶ 6. Throughout the recruitment process, nobody at Defendant asked Ms. White whether she had a non-compete agreement with Plaintiff. ECF No. 20 ¶ 55.

Around the beginning of October 2024, Defendant extended an offer letter to Ms. White, which she executed on October 15, 2024. ECF Nos. 20 ¶ 58; 21-1 ¶ 7. On or about October 16, 2024, Ms. White resigned from her position with Plaintiff. ECF No. 20 ¶ 61. However, before submitting her resignation, Ms. White downloaded company documents onto an external USB drive. ECF

---

employees. See ECF No. 20-5 ¶ 6 ("A true and correct copy of this email exchange is attached to this Declaration as Exhibit A."). Plaintiff then included this email exchange in its corrected version of Ms. White's declaration. See ECF No. 21-1 at 8-9, 44-46. The court will thus consider the corrected version of Exhibit E, ECF No. 21-1, in evaluating Defendant's Motion.

Nos. 20 ¶ 77; 21-1 ¶ 11. These documents contained confidential customer and proprietary information. ECF No. 20 ¶¶ 78, 81. Around this same time, October 16, 2024, Ms. White asked Mr. Register what to tell her clients who had already submitted loan applications with Plaintiff. ECF Nos. 20 ¶ 69; 21-1 ¶ 12. Mr. Register advised Ms. White that so long as the clients were not "triggered," she could send them a link so they could move their business to Defendant. ECF Nos. 20 ¶ 70; 21-1 ¶ 13. Mr. Register explained that "triggered" referred to "loans that were past the prequalification stage, and the client was under contract and moving forward with locking in an interest rate and prepping for underwriting." ECF No. 21-1 ¶ 13. Relying on Mr. Register's advice, Ms. White emailed several clients his link and encouraged them to move their business to Defendant. ECF Nos. 20 ¶¶ 71-75; 20-3 (Email from Ms. White to Client); 21-1 ¶¶ 13-15. Doing so deprived Plaintiff of potential loans and revenue. ECF No. 20 ¶ 86.

Very shortly after Ms. White left the company, Plaintiff learned that Ms. White had retained company documents and diverted customers to Defendant. Id. ¶ 89. Two days after Ms. White downloaded Plaintiff's documents, ECF No. 21-1 ¶ 11, on October 18, 2024, Plaintiff sent both Defendant and Ms. White cease and desist letters. ECF Nos. 20 ¶ 89; 20-4 (Cease and Desist Letters). The letters instructed Defendant and Ms. White to, inter alia,

8

stop soliciting Plaintiff's customers and return Plaintiff's company information. ECF No. 20-4 at 2-3, 9-10. Upon receiving the letter, Ms. White gave the external USB drive to Defendant's legal department, which then returned it to Plaintiff. ECF Nos. 20 ¶ 77; 21-1 ¶ 16. Defendant terminated Ms. White's employment roughly a month later. ECF No. 21-1 ¶ 17.

## IV. ANALYSIS

### A. Violation of the Defend Trade Secrets Act

Plaintiff alleges in Count One that Defendant violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 et seq. ECF No. 20 ¶¶ 93-110. To state a claim under the DTSA, a plaintiff must show that: "(i) it owns a trade secret; (ii) the trade secret was misappropriated; and (iii) the trade secret implicates interstate or foreign commerce." Am. Conservative Union v. Inst. for Legislative Analysis, 2025 WL 510236, at *7 (E.D. Va. Feb. 13, 2025) (Alston, J.) (citations omitted).

Defendant argues that Plaintiff failed to allege the "misappropriation" element of its DTSA claim. See ECF Nos. 23 at 6-8; 27 at 1-5. The DTSA defines misappropriation as: the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [] disclosure or use of a trade secret of another without express or implied consent." Hampton Roads Connector Partners v. Land to Sand Site Servs., Inc., 2023 WL

9

8539536, at *5 (E.D. Va. Oct. 17, 2023) (Allen, J.) (alteration in original) (quoting 18 U.S.C. § 1839(5)). In other words, "Defendants must have 'acquired,' 'disclosed,' or 'used' a trade secret, through 'improper means.'" Id. at *9.

Defendant concedes that Ms. White "retained" Plaintiff's documents. See ECF No. 23 at 7. However, Defendant disputes that this constituted "misappropriation." Defendant argues that Plaintiff "does not claim that [Defendant] itself ever acquired, disclosed, or used the alleged trade secrets," id. at 8, nor that Ms. White "ever accessed or used these documents after beginning her employment with [Defendant]," ECF No. 27 at 3. Plaintiff counters in its Response that it is "reasonable to infer from the allegations that [Ms.] White disclosed the applications of the solicited customers and that [Defendant] and [Ms.] White used those applications without [Plaintiff's] consent to solicit those same customers once [Ms.] White started working for [Defendant]." ECF No. 26 at 9 (citations omitted). Yet, Plaintiff alleges in its Amended Complaint that "[Defendant] was aware of, requested, and facilitated [Ms.] White in using [Plaintiff's] trade secrets, at least in that [Mr.] Register asked her to direct [Plaintiff's] customers to apply for a mortgage with him." ECF No. 20 ¶ 83. Plaintiff further states in its Response that: "[A]s [Mr.] Register's employer, (and [Ms.] White's employer during some of her solicitous behavior), [Defendant] can be held vicariously

10

liable for their acts of trade secret misappropriation committed within the scope of their employment under the theory of _respondeat superior_." ECF No. 26 at 9 (citing _Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc._, 299 F. Supp. 2d 565, 575 (E.D. Va. 2004) (Smith, J.)). The court will evaluate both of Plaintiff's responsive arguments.

### 1. Reasonable Inference

Under this theory, the court must infer that Ms. White "'acquired,' 'disclosed,' or 'used'" Plaintiff's trade secrets while employed with Defendant. _Hampton Roads Connector Partners_, 2023 WL 8539536, at *9. At this juncture, Plaintiff's allegations are insufficient to support this inference. While the court must "draw[] all reasonable inferences in favor of the plaintiff," _In re Marriott Int'l, Inc._, 31 F.4th 898, 901 (4th Cir. 2022) (citing _KBC Asset Mgmt. v. DXC Tech. Co._, 19 F.4th 601, 607 (4th Cir. 2021)), "legal conclusions pleaded as factual allegations, 'unwarranted inferences,' 'unreasonable conclusions,' and 'naked assertions devoid of further factual enhancement'[3] are not entitled

---

[3] Plaintiff's threadbare allegation that: "At [Mr.] Register's direction, [Ms.] White . . . us[ed] [Plaintiff's] Confidential Information and trade secrets on behalf of [Defendant]," fits this category. ECF No. 20 ¶ 53; _see id._ ¶ 105 ("[Defendant] improperly, unlawfully, and maliciously[,] or in the alternative in bad faith[,] instructed [Ms.] White to use these trade secrets on its behalf with knowledge of its trade secret status."). The only time that Plaintiff alleges this occurred was when Mr. Register allegedly directed Ms. White to solicit Plaintiff's customers. _See id._ ¶¶ 83, 94. However, this occurred before Ms. White was employed

to the presumption of truth." _Wikimedia Found. v. Nat'l Sec. Agency_, 857 F.3d 193, 208 (4th Cir. 2017) (quoting _SD3, LLC v. Black & Decker (U.S.) Inc._, 801 F.3d 412, 422 (4th Cir. 2015)). Several facts convince the court that Plaintiff's allegations fail under this standard.

As the court has noted, "in the event of a conflict between the bare allegations in the complaint and any exhibit attached, the exhibit prevails." _Wells_, 126 F.4th at 896 (quoting _Goines_, 822 F.3d at 166). With this principle in mind, it is significant that Ms. White's declaration makes no mention of her alleged use or disclosure of Plaintiff's trade secrets while she was employed at Defendant. _See_ ECF No. 21-1 at 2-6. Given that Plaintiff filed this exhibit, one would expect that Plaintiff would have sought for Ms. White to include this information in her declaration if it were indeed so.[4] This conspicuous absence makes an inference that Ms. White "used" or "disclosed" Plaintiff's trade secrets while employed with Defendant less reasonable, not more reasonable. This matter then comes down to the allegations in the Amended Complaint

---

at Defendant, and thus Defendant cannot be held vicariously liable. _See infra_ Section IV.A.2. Thus, to the extent the allegations contained in paragraphs fifty-three (53) and one hundred and five (105) of Plaintiff's Amended Complaint assert that Ms. White used Plaintiff's trade secrets at another time, this is merely a "naked assertion[] devoid of further factual enhancement" that is "not entitled to the presumption of truth."

[4] Ms. White's declaration was filed at the behest of Plaintiff with the Amended Complaint, which did not name her as a defendant, as she had been in the initial Complaint.

12

vis-à-vis the allegations in the Response. Compare ECF No. 20, with ECF No. 26. At this juncture, the allegations in the Amended Complaint prevail.

The timeline of events also weakens Plaintiff's proposed inference. According to Ms. White's declaration, she downloaded Plaintiff's alleged trade secrets on October 16, 2024. ECF No. 21-1 ¶ 11. Two days later, on October 18, 2024, Plaintiff sent Ms. White and Defendant cease and desist letters demanding the return on its information. See ECF No. 20-4 at 2-4, 9-11. Upon receipt of the letter "on or around October 18, 2024," Ms. White "immediately gave the thumb drive to [Defendant's] legal department." ECF No. 21-1 ¶ 16 (emphasis added). Even assuming that Ms. White began her employment with Defendant on the earliest date of October 17, 2024, the day after she resigned from Plaintiff, this would have given her at most two days to use or disclose Plaintiff's trade secrets during her employment with Defendant.[5] Such a short time frame weakens an inference of use or disclosure claimed in the Response, contrary to the allegations in the Amended Complaint.

Third, and finally, when a court infers that a former employee used or disclosed its former employer's trade secrets at their new employer, that inference is often supported by circumstantial

---

[5] Plaintiff fails to allege when Ms. White began her employment with Defendant, but the court gives Plaintiff the benefit of this earliest date.

evidence. For example, in <u>Marsteller v. ECS Federal, Inc.</u>, the employer argued that the court should infer that its former employee used its "ISO[6] management system documents," which it alleged were trade secrets, at her new employer. 2013 WL 4781786, at *5 (E.D. Va. Sept. 5, 2013) (Cacheris, J.). The court found that this inference was "reasonable," because eight (8) months after the employee joined her new company, that company received ISO certification. <u>Id.</u> In contrast, there is no circumstantial evidence in this case suggesting that Ms. White used or disclosed Plaintiff's trade secrets while employed at Defendant. Neither her declaration nor the Amended Complaint support such an inference. These pleadings erode Plaintiff's argument that the court should draw such an inference.

### 2. Vicarious Liability

Plaintiff alleges that Defendant misappropriated trade secrets, "at least in that [Mr.] Register asked [Ms. White] to direct [Plaintiff's] customers to apply for a mortgage with him." ECF No. 20 ¶ 83; <u>see id.</u> ¶ 94. Here, Plaintiff actually alleges that Ms. White used the information, not merely that the court can draw a "reasonable inference" of use. <u>See</u> ECF No. 20 ¶ 94 ("[T]he

---

[6] "ISO" is an acronym for the International Organization of Standardization. ISO, https://www.iso.org/home.html (last visited May 19, 2025). The ISO maintains certification standards for various industries. <u>Id.</u> Companies in these industries derive value from their "ISO Certification." <u>See, e.g.</u>, <u>Marsteller</u>, 2013 WL 4781786, at *2.

customer information that [Ms.] White utilized at the direction of [Mr.] Register to move customers to [Defendant] also constitutes trade secret information.") (emphasis added). While this is an actual allegation of "use," Ms. White was still employed at Plaintiff when this occurred. See ECF No. 21-1 ¶ 14 ("Before I resigned from [Plaintiff], I got a link for Mr. Register from [Defendant's] website, emailed my [Plaintiff] clients, and directed them to submit their applications to Mr. Register at [Defendant]."). Since Ms. White was not yet Defendant's employee, Defendant cannot be held vicariously liable for this conduct. Cf. Weeks v. Sands, 2021 WL 5828043, at *4 (W.D. Tenn. Dec. 8, 2021) (finding that "general common law agency principles" do not support the application of vicarious liability for the actions of a prospective employee).

Mr. Register was Defendant's employee when this occurred. See ECF No. 20 ¶ 3. Thus, Defendant can be held vicariously liable for his conduct committed "within the scope of his employment." Garnett v. Remedi Seniorcare of Virginia, LLC, 892 F.3d 140, 145 (4th Cir. 2018) (citation omitted); see Peloton Interactive, Inc. v. iFIT Inc., 2022 WL 1523112, at *2 n.1 (D. Del. May 13, 2022) ("[M]any federal district courts have held that the DTSA allows for respondeat superior liability.") (collecting cases). However, Plaintiff does not allege that Mr. Register himself misappropriated trade secrets, but merely that he "direct[ed]"

15

Ms. White to do so. ECF No. 20 ¶ 83; see id. ¶ 94. This is a crucial distinction, as the DTSA does not recognize a cause of action for aiding and abetting the misappropriation of trade secrets. See Aarow Elec. Sols. v. Tricore Sys., LLC, 2025 WL 660227, at *3 (D. Md. Feb. 28, 2025) (collecting cases). As another court has noted, "secondary liability under the DTSA is not available as a private right of action, and thus a plaintiff must show that each defendant individually misappropriated at least one trade secret." Hedgeye Risk Mgmt., LLC v. Dale, 2023 WL 6386845, at *7 (S.D.N.Y. Sept. 29, 2023) (emphasis added) (citations and internal quotation marks omitted). Accordingly, Defendant cannot be held vicariously liable for Mr. Register's "direct[ion]" of Ms. White, since that conduct does not constitute "misappropriation" under the DTSA.

For the reasons stated above, Plaintiff has not plausibly alleged a violation of the DTSA. Defendant's Motion to Dismiss Counts One is therefore **GRANTED**.

### B. Subject-Matter Jurisdiction over State Law Claims

The Amended Complaint alleges state law claims on all remaining counts. Count Two alleges a violation of the Virginia Uniform Trade Secrets Act, under Virginia Code § 59.1-336. ECF No. 20 ¶¶ 111-123. Count Three alleges Aiding and Abetting a Breach of Fiduciary Duty, or in the alternative, Joint Tortfeasor Liability, both under Virginia law. Id. ¶¶ 124-132. Count Four

alleges Tortious Interference with Prospective Business Relationships, a state law claim. Id. ¶¶ 133-141. Count Five alleges conspiracy under Virginia Code § 18.2-500. Id. ¶¶ 142-149. Lastly, Count Six alleges civil conspiracy, also referred to as common law conspiracy, a state law claim. Id. ¶¶ 150-154.

Plaintiff asserts that the DTSA gives this court subject-matter jurisdiction over this action. See ECF No. 20 ¶ 8. Since the court has dismissed this claim, the court now addresses sua sponte how this dismissal affects its subject-matter jurisdiction. See, e.g., Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) ("[Q]uestions of subject-matter jurisdiction may be raised at any point during the proceedings and may []or, more precisely, must[] be raised sua sponte by the court." (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986))). That neither party raised this issue is not dispositive, as "[s]ubject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties." Id. (citing United States v. Cotton, 535 U.S. 625, 630 (2002)).

Original subject-matter jurisdiction generally takes one of two forms: federal question jurisdiction, pursuant to 28 U.S.C. § 1331; or diversity jurisdiction, pursuant to 28 U.S.C. § 1332. If the court has federal question jurisdiction over at least one claim, the court may exercise supplemental jurisdiction over state

17

claims which "are so related to claims within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

In this case, Plaintiff alleges that the court has subject-matter jurisdiction "pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because this action arises under the Defend Trade Secrets Act, 18 U.S.C. § 1831 _et_ _seq._, as well as supplemental jurisdiction over [Plaintiff's] state law causes of action under 28 U.S.C. § 1367." ECF No. 20 ¶ 8. Plaintiff is correct, that if properly pleaded, its DTSA claim would grant federal question jurisdiction under 28 U.S.C. § 1331, since a federal statute supplies the cause of action. See Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 26 (2025). The court would also have jurisdiction under 18 U.S.C. § 1836(c), as this provision of the DTSA provides that "district courts of the United States shall have original jurisdiction of civil actions brought under this section." 18 U.S.C. § 1836(c). This provision would allow the court to exercise supplemental jurisdiction over Plaintiff's state law claims, assuming they are "so related [to Plaintiff's DTSA claim] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). For the purposes of this analysis, the court so assumes this relationship.

However, the court has decided that Plaintiff's DTSA claim, the only claim over which it has original jurisdiction,[7] should be dismissed. See supra Section IV.A. Under 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction," when the "court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The "court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). In making this determination, the court considers "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of

---

[7] As pleaded, diversity jurisdiction does not support Plaintiff's claims. Diversity jurisdiction requires: (1) complete diversity, meaning that no plaintiff has the same citizenship as any defendant, and (2) that the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a). Plaintiff has not met its burden to show that the first requirement is met. See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) ("The plaintiff has the burden of proving that subject matter jurisdiction exists.") (citation omitted). Plaintiff is a Virginia Limited Liability Company ("LLC"), and Defendant is a Delaware Limited Liability Corporation. See ECF No. 20 ¶¶ 6-7. An LLC takes on the citizenship of each of its members. See Capps v. Newmark S. Region, LLC, 53 F.4th 299, 302 (4th Cir. 2022); Cliffs Nat. Res. Inc. v. Seneca Coal Res. LLC, 2018 WL 2012900, at *1 (D. Del. Apr. 30, 2018) (applying the same rule to a Delaware Limited Liability Corporation). Plaintiff has not pleaded the citizenship of its or Defendant's members and therefore the court cannot conclude that there is complete diversity based on the facts alleged in the Amended Complaint.

judicial economy." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (citations omitted).

At this juncture, the factors support the dismissal, without prejudice, of Plaintiff's state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). This case is still in the pleading phase and the parties have not conducted discovery. At such an early juncture, declining to exercise supplemental jurisdiction is neither inconvenient nor unfair to the parties, nor is it an inefficient use of judicial resources. Cf. Ketema v. Midwest Stamping, Inc., 180 F. App'x 427, 428 (4th Cir. 2006) ("We find that it would be a waste of judicial resources to require [the plaintiff] to refile a suit that has been pending for a lengthy period of time and has progressed through the discovery stage."). Additionally, the remaining state law claims do not concern issues of federal policy. These claims lie squarely within the bailiwick of Virginia's state courts and comity supports their dismissal. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the

parties, by procuring for them a surer-footed reading of applicable law.").

Accordingly, for the reasons stated above, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, Defendant's Motion to Dismiss is **GRANTED** as to Counts Two, Three, Four, Five, and Six.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 17, is **MOOT**, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 22, is **GRANTED**. Accordingly, Count One: Violation of the Federal Defend Trade Secrets Act, is **DISMISSED WITH PREJUDICE**. Counts Two, Three, Four, Five, and Six, the state law claims, are **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

May 20, 2025